**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | Case No. |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**STUDENT RESOURCE CENTER LLC'S MOTION FOR A PRELIMINARY
INJUNCTION**

Plaintiff Student Resource Center, LLC ("SRC") hereby moves for a preliminary

injunction against Eastern Gateway Community College ("EGCC") to (1) prevent EGCC from

wrongfully terminating the Collaboration Agreement dated June 30, 2017, as amended on or

around October 2019 and February 1, 2021 (collectively "the Agreement"); and (2) prevent

EGCC from continued breach of the non-competition provisions under Section 8 (as amended by

Amendment No. 1) of the Agreement by setting up and running a competing business.

Accordingly, for the reasons stated more fully in the accompanying brief and supporting

affidavits, SRC respectfully requests that this Court set a hearing on its Motion for Preliminary

Injunction within a reasonable amount of time before July 11, 2022, and after such hearing, enter

a preliminary injunction enjoining EGCC from: (1) terminating the Agreement dated June 30,

2017, as amended on or around October 2019 and February 1, 2021; and (2) breaching the

Agreement's non-competition provisions under Section 8 (as amended by Amendment No. 1) by setting up and running a competing business. A proposed order is attached hereto as Exhibit A.

Dated: June 30, 2022                                    Respectfully submitted,

                                                       */s/ Robert C. Folland*
                                                       C. David Paragas (0043908)
                                                       Robert C. Folland (0065728) (Trial Attorney)
                                                       David M. DeVillers (0059456)
                                                       Michelle M. Nicholson (0099833)
                                                       Jeff A. Bartolozzi (0095664)
                                                       BARNES & THORNBURG LLP
                                                       41 S. High Street, Ste. 3300
                                                       Columbus, Ohio 43215-6104
                                                       Telephone: (614) 628-1401
                                                       David.Paragas@btlaw.com

                                                       *Attorneys for Plaintiff Student Resource
                                                       Center, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | Case No. |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**STUDENT RESOURCE CENTER LLC'S BRIEF IN SUPPORT OF MOTION**
**FOR A PRELIMINARY INJUNCTION**

1

## INTRODUCTION

Immediate injunctive relief is necessary in this case because the defendant, Eastern Gateway Community College ("EGCC") has wrongfully engaged in conduct aimed to improperly cut SRC out of their contractually defined business relationship, threatening to cause irreparable harm and an incalculable amount of damages to SRC.

SRC and EGCC entered into a Collaboration Agreement (dated June 30, 2017, as amended on or around October 2019 and February 1, 2021, "the Agreement") in order to  As part of the collaboration, SRC partners with unions and other professional associations to provide education programs offered by EGCC on a free or heavily-discounted basis. Ex. C, ¶ 3. Now that the collaboration has been up and running for almost five years and EGCC has become familiar with SRC's services and connections, EGCC has decided that it wants to start a competing business and no longer needs SRC, attempting to terminate the Agreement with false allegations of material breach of contract. *Id.*, ¶ 14. EGCC has withheld funds owed to SRC under the Agreement in a misguided attempt to induce SRC's consent to its improper termination and

*Id.*, ¶ 14. As EGCC is its primary partner and accounts for 95% of its revenue,

In sum, SRC requests that the Court hold EGCC to the Agreement as written and order EGCC to cease its improper attempts to terminate the Agreement

███████████████████████████ SRC is likely to prevail on the merits of these claims because the facts are clear: SRC has at all times complied with the Agreement and has helped EGCC expand its enrollment to tens of thousands of students, and SRC has afforded those students an opportunity to receive a high-quality education without incurring significant amounts of debt.  EGCC, however, has engaged in conduct explicitly violating various provisions of the Agreement; and should EGCC's conduct be permitted to continue, SRC would, suffer immediate, irreparable, and incalculable harm.  Under these circumstances, SRC respectfully requests a preliminary injunction to prevent the irreparable damage to its business that will occur unless EGCC's conduct is enjoined.  SRC further requests that the hearing on this Motion occur before July 11, 2022 – the date upon which the Agreement will terminate absent intervention from this Court.

## STATEMENT OF FACTS

This case concerns a breach of contract by EGCC.  As a pretext, EGCC alleges that SRC materially breached the Agreement by terminating its former CEO and seeks to terminate the Agreement on that basis.  *Id.*, ¶ 14, Ex. D, Notice of Material Breach from EGCC to SRC dated May 12, 2022.  SRC disputes that the termination of its own CEO is a breach of the Agreement and, instead, alleges numerous contractual violations on the part of EGCC, including improper termination under Sections 10 of the Agreement, failure to pay amounts owed under Exhibit B of the Agreement, and breach of non-competition provisions under Section 8 of the Agreement (as amended by Amendment No. 1).  Ex. C, ¶¶ 16, 18; Ex. E, SRC's Response dated May 20, 2022.

**Student Resource Center's Business Supports Students.**

SRC's mission is to provide support to students in order to attain their educational goals

through an online curriculum with little to no student debt. To accomplish this goal, SRC partners with higher education institutions in the development and marketing of online courses and programs for unions and other professional associations in light of the substantial costs and debt burden associated with traditional four-year degrees. Ex. C, ¶ 4.

More specifically, SRC provides a number of services to partnering schools, including:



SRC also partners with unions and other professional associations to provide the educational programs offered by SRC's partnering schools on a free or heavily discounted basis as a benefit of union or association membership. Further, if a union or association member is interested in one of the educational programs offered by a collaborating school, SRC provides that prospective student with guidance and support during the application and enrollment processes, as well as ongoing mentoring and other services post-enrollment. SRC's services and relationships with union partners significantly reduce the cost barriers to traditional education offerings and enable EGCC's students to complete their degrees with little to no debt. *Id*., ¶ 6.

**SRC Entered into a Collaboration Agreement with EGCC.**

EGCC is an Ohio-based, public-institution of higher learning founded in 1968. EGCC offers associate degrees and certificates in numerous areas, and it conducts classes online and in person in its Youngstown, Ohio and Steubenville, Ohio campuses. *Id*., ¶ 7.

EGCC is currently SRC's primary institutional partner, which represents 95% of SRC's revenues as of June 1, 2022.  *Id.*, ¶ 10.

The terms of the Agreement at issue in this matter include, but are not limited to, the following:

- ███████████████████████████████████████
  ███████████████████████████████████████
  ████████████████████████

- ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████████████████████

- ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████████████

- ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████████████



As a result of SRC's efforts through the Agreement, EGCC's enrollment has grown from approximately 5,549 students in Fall Semester 2016 to over 42,500 students in the Fall Semester 2021. As a result of the collaboration's success, and through its contractual arrangements with EGCC, SRC has ████████████████████████ while simultaneously promoting access to higher education for tens of thousands of students. Ex. C, ¶ 9.

**EGCC's Allegations of Material Breach of the Agreement are a Red Herring.**

In March of 2022, SRC terminated its CEO, Michael Perik for engaging in questionable conduct related to the sale of SRC (effective April 1, 2022). Further, SRC put executives Nicole Rowe Colclasure, John Hasley, and Daniel Jones on probation. Shortly thereafter, those executives resigned. *Id.*, ¶ 11.

SRC replaced Mr. Perik with Phillip Braithwaite. Mr. Braithwaite is an experienced, multi-time CEO. He has extensive experience in managing education (and more specifically online education aimed at non-traditional learners) and technology-enabled businesses. *Id.*, ¶ 12.

SRC further hired an experienced Chief of Staff, Senior Vice President of Marketing, Vice President of Student Operations, and Vice President of Partnership Development. *Id.*, ¶ 13.

On May 12, 2022, EGCC, served a notice on SRC (the "Notice," incorrectly dated May 10, 2022) falsely claiming that SRC was in material breach of the Agreement because of "unilateral decisions regarding [SRC's] executive management team." The Notice, Exhibit C. Specifically, EGCC took issue with SRC's decision to terminate Perik and claimed that his termination "led to the departure of other leadership team members" who resigned shortly after Perik's termination. *Id.* It even went so far as to claim that "SRC unilaterally removed these individuals…" and claimed that SRC was in material breach as a result. *Id.*, ¶ 14; Ex. D.

The retention of Mr. Perik as CEO or of any other member of the leadership team, however, were not terms of the Agreement.  Ex. B.  Furthermore, at no point did EGCC give notice of the dispute in an attempt to resolve the issue as required under Section 13.4 of the Agreement.  Ex. C, ¶ 16.

On May 20, 2022, SRC responded to the Notice ("the Response") explaining that Perik's removal as CEO was not a material breach of the Agreement.  The Response, Exhibit D.  After SRC served the Response, EGCC's President, Michael J. Geoghegan ("Geoghegan"), contacted union leaders to indicate EGCC's intent to terminate the Agreement with SRC.  *Id.*, Ex. C, ¶ 16.

If EGCC is permitted to terminate the Agreement under the terms of the Notice, the Agreement will expire July 11, 2022.  Ex. C, ¶ 15.

**EGCC's Breaches of the Agreement.**

*Improper Termination*

███████████████████████████████████████████████████████████

████████████████████████████████████████

*Failure to Make Payments Owed*

Furthermore, EGCC has wrongfully withheld payments of over ██████████ due and owed to SRC under the Agreement in order to induce SRC's consent to its wrongful termination attempts.  Ex. C, ¶ 22.

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████  The summer 2021 Semester ended on August 1, 2021, and the fall 2021 semester ended on December 12, 2021, yet SRC has not received a formal reconciliation on which both parties signed off for either semester.  Ex. C, ¶ 20. ██████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

████  ██████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████  SRC provided EGC invoices for its operating expenses on each of May 5, 2022 ██████████ May 19, 2022 ██████████ June 3, 2022 (██████ and June 22, 2022 ██████████ totaling an unpaid balance of ██████, yet no payment was made.  Ex. C, ¶ 19; Ex. F, ¶ 6. ██████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████

*EGCC's Attempts to Establish Competing Arrangements Direct with Union Partners*

EGCC's refusal to pay the funds owed to SRC is intended to induce SRC to consent to EGCC's improper attempts to terminate the Agreement and, ultimately, part of EGCC's scheme to usurp SRC business opportunities under the Agreement by setting up a new partnership directly with SRC's union partners. Ex. C, ¶ 24.

Recently, Geoghegan announced during all-EGCC employee meetings that ████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

**SRC Has Suffered and Will Continue to Suffer Irreparable Harm Due to EGCC's Actions.**

EGCC's actions have already caused incalculable harm to SRC's business relations with

union partners. ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████

If SRC's union partners are ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

Perhaps most importantly, ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████

11

**ARGUMENT**

Rule 65 of the Federal Rules of Civil Procedure permits this Court to issue injunctive relief. *See* FRCP 65. In determining whether to grant or deny injunctive relief, a Court must consider the following factors: (1) whether the movant has a likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31272, at *10-11 (S.D. Ohio Mar. 13, 2015) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)).

"The decision whether to issue a temporary restraining order or preliminary injunction falls within the sound discretion of the district court. Ultimately, '[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" *Marshall*, 2015 U.S. Dist. LEXIS 31272, at *11 (quoting *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998)). Here, SRC seeks a preliminary injunction to preserve the status quo by preventing EGCC's breaches of the Agreement.

## I.     SRC is likely to succeed on the merits of its claims.

To show a likelihood of success on the merits, a plaintiff must demonstrate more than a mere possibility of success, but it need not " 'prove [its] case in full.' " *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)).

SRC asserts that EGCC's efforts to terminate the Agreement, its failure to pay funds due and owed, and its efforts to circumvent SRC and cut it out of the Agreement are all in breach of

the Agreement. To establish a breach of contract claim under Ohio law, SRC must show: (1) that a contract existed; (2) that SRC performed under that contract; (3) that EGCC breached that contract; and (4) that SRC suffered damages as a result of that breach. *Pavlovich v. National City Bank*, 435 F.3d 560,565 (6th Cir. 2006).

### A.     The Existence of the Agreement

There is no dispute that SRC and EGCC entered into the Agreement on June 30, 2017 – which they later amended on or around October 2019 and on February 1, 2021. *See* Ex. B; Ex. C, ¶ 3.

### B.     EGCC's Breaches of the Agreement

#### 1.     EGCC's Continued Non-Payment of Owed Funds



EGCC failed to reimburse SRC for ▇▇▇▇ worth of operating expenses that were invoiced to EGCC on May 5, 2022, May 19, 2022, June 3, 2022, and June 22, 2022. Ex. C, ¶ 19; Ex. F, ¶ 6.

13

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ The summer 2021 semester ended on

August 1, 2021 and fall 2021 semester ended on December 13, 2021 ██████████████

████████████████████████████████████████ Ex. C, ¶¶ 20-1.

According to SRC's calculations, the outstanding unpaid balance is ██████████ Ex. C, ¶ 21;

Ex. F, ¶ 7.

EGCC does not dispute that it owes over ██████████ to SRC.  Ex. C, ¶ 22; Ex. F, ¶ 8.

Instead of paying SRC the funds owed to it, EGCC has elected to use the funds as leverage to

induce SRC into complying with its misguided efforts to terminate the Agreement.  Ex. C, ¶ 22.

### 2. EGCC's Efforts to Terminate the Agreement

At issues is SRC's performance under the Agreement – specifically whether SRC's

termination of its CEO was a material breach of the Agreement as asserted by EGCC.  This

allegation is simply meritless. ████████████████████████████████

██████████████████████████████████████████████████

██████████

Even if EGCC's claim of material breach was reasonable, ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████ EGCC

immediately served a notice of material breach and intent to terminate.  Ex. D.  ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Also at issue is whether EGCC's notice of material breach and intent to terminate breached the Agreement. Simply put, the answer is yes. ██████████████████████████

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
participating in good faith negotiations or otherwise.

████████████████████████████████ Even if one were to assume that the May 10, 2022 notice of material breach was also a notice of dispute as required under Section 13.4, no negotiations took place ████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████

### 3. EGCC's Failure to Abide by Non-Competition Provisions

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████

Geoghegan announced during all-EGCC employee meetings that ██████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

### C.     SRC's Performance of the Contract

EGCC's contention that SRC's termination of its former CEO was a material breach of the

Agreement is patently false ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

"Contractual language is ambiguous ... where its meaning cannot be determined from the

four corners of the agreement or where the language is susceptible of two or more reasonable

interpretations." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting

*Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186 (2003)).  There is no ambiguity here.

████████████████████████████████████████████████████████

████████

### D.     Damages

The damages resulting from EGCC's breaches of the Agreement are overwhelming.  In

addition to the more than ████████ in payments owed currently outstanding under the

Agreement, if SRC's union partners are forced to permit their members to enroll directly with

EGCC without SRC's involvement based on EGCC's and Geoghegan's false claims that SRC

breached the Agreement, ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

## II.     SRC will suffer irreparable harm if injunctive relief is not granted.

"To demonstrate irreparable harm, the plaintiffs must show that ... they will suffer actual or imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  Harm is irreparable if it cannot be fully compensated by monetary damages.  *Overstreet v. Lexington-Fayetee Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

The facts here are as follows:  (1) EGCC is breaching the Agreement in an attempt to unilaterally and prematurely terminate the Agreement ███████████████████████████ ███████████████████ (2) SRC derives 95% of its revenue from the Agreement and stands to lose not only the value of its bargain over the next five years if EGCC is allowed to terminate the Agreement, but, also, more importantly, its value as a going concern.  Ex. C. ██████████████ ████████████████████████████████████████████████████████ ████████████████████████

### A.     Irreparable Damages

Ohio courts have held that an injury is not fully compensable by money damages if the nature of Plaintiff's loss would make damages difficult to calculate.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992).  In this case, not only it is impossible to calculate the value of SRC's portion of the Agreement and SRC's relationships with the unions, but it is impossible to

measure ███████████████████████████████████████████████████

*Id.*, ¶ 30.

Simply put – starting a competing business in violation of a non-compete provision is a damage that, once enacted, cannot be undone, with monetary damages or otherwise. The Sixth Circuit has held that the breach of a non-compete agreement and the unauthorized solicitation of customers constitutes irreparable injury. *See Basicomputer Corp. v. Scott*, 937 F.2d 507, 512 (6th Cir. 1992). And this Court has found that the failure to enforce a valid restrictive covenant can constitute irreparable harm. *See Avery Dennison Corp. v. Kitsonas,* 118 F. Supp. 2d 848, 855 (S.D. Ohio 2000). Some courts have even held that a mere violation of a covenant not to compete is an irreparable injury. *See Dayton Superior Corp. v. Yan*, No. 3:12-cv-380, 2012 WL 5497804, at *8 (S.D. Ohio Nov. 13, 2012).

Geoghegan announced in all-EGCC meetings ████████████████████████



**B.**     **"Completely [W]iped [O]ut"**

Furthermore, courts have recognized that the irreparable harm element of the equitable relief framework may be satisfied on a showing that where, as here, financial hardship would be so severe that it would cause the moving entity to be "completely wiped out," thereby rendering "a later judgment on the merits meaningless." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978). SRC derives 95% of its revenue from its relationship with EGCC, and much of its value as a going concern is a result of its relationships with its union partners. Ex. C, ¶¶ 10, 31. EGCC

18



## III.    Third Party Harm and Public Interest

Under the Agreement as it currently stands, SRC and EGCC working in concert are enabling over 40,000 students to receive free or reduced cost secondary education. *Id.*, ¶ 9. EGCC's attempts to cut out SRC in violation of the Agreement undermine SRC's ability to service union members and students in a high-quality manner by stripping away SRC's advising and coaching functions and attempts at evidence-based student success tracking. *Id.*, ¶ 32.

While EGCC will certainly claim that upholding the Agreement would be to their detriment, there can be very little harm to it, and ultimately the public interest will be served, by preserving the status quo for the time necessary to adjudicate the merits of this dispute.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Court should grant the motion for a preliminary injunction and prohibit EGCC from: (1) terminating the Agreement dated June 30, 2017, as amended on or around October 2019 and February 1, 2021; and (2) breaching the Agreement's non-competition provisions under Section 8 (as amended by Amendment No. 1) by starting and operating a competing business.

19

Dated: June 30, 2022

Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) (Trial Attorney)
David M. DeVillers (0059456)
Michelle M. Nicholson (0099833)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*

## CERTIFICATE OF SERVICE

I certify that I am an attorney at law in the State of Ohio and a member of the Bar of this Court, and that on this date, I caused the foregoing **MOTION FOR PRELIMINARY INJUNCTION** to be served upon counsel of record listed below via Fedex and electronic mail.

BRENNAN MANNA DIAMOND
Victoria Ferrise
250 Civic Center Drive, Suite 300
Columbus, Ohio 43215
Email: vlferrise@bmdllc.com

Dated: June 30, 2022                    Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) (Trial Attorney)
David M. DeVillers (0059456)
Michelle M. Nicholson (0099833)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*