IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) |
| | ) JUDGE ALGENON L. MARBLEY |
| *Plaintiff*, | ) |
| | ) |
| v. | ) MAGISTRATE JUDGE CHELSEY M. |
| | ) VASCURA |
| EASTERN GATEWAY COMMUNITY | ) |
| COLLEGE. | ) CASE NO. 2:22-CV-2653 |
| | ) |
| *Defendant*. | ) |

**<u>DEFENDANT EASTERN GATEWAY COMMUNITY COLLEGE'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Now comes Defendant, Eastern Gateway Community College ("EGCC"), by and through undersigned counsel, and hereby submits its Brief in Opposition to Student Resource Center, LLC's ("Plaintiff" or "SRC') Motion for Preliminary Injunction (the "Motion"). Plaintiff's Motion should be denied for the reasons set forth below, including, but not limited to, the fact that Plaintiff cannot establish a substantial likelihood of success on the merits, Plaintiff has an adequate remedy at law in the form of monetary damages, and there is no imminent threat of irreparable harm.

**I. INTRODUCTION**

This case involves a business divorce. EGCC and Plaintiff entered into a Collaboration Agreement ("Agreement") with one another in 2017 and, while beneficial to both parties for several years thereafter, the nature of the collaboration has since materially changed to the point that Plaintiff has failed to perform at a level equal to its prior performance, causing EGCC to terminate Plaintiff according to the terms of the Agreement.

1

In response, Plaintiff filed a lawsuit for breach of contract.[1] In addition, however, Plaintiff also seeks an order from this Court enjoining EGCC from terminating the Agreement (an improper use of an equitable remedy) and breaching the Agreement's noncompetition provision (which EGCC has not breached). While Plaintiff may be entitled to its day in court on its breach of contract and declaratory judgment claims, as is EGCC on its putative counterclaims, the classic remedy for breach of contract is an action at law for damages. This case is no different from the classic case. Aside from the fact that Plaintiff cannot prove by clear and convincing evidence that it has a substantial likelihood of success on the merits, or satisfy the other elements of the test, there is no risk of irreparable harm.

"The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937 (1974). Here, the Collaboration Agreement includes a formulaic payment mechanism to determine the amount of fees payable to Plaintiff. *See* Collaboration Agreement, Ex. B. Moreover, Plaintiff has agreed to waive punitive, exemplary, special, consequential and indirect damages. *See* Collaboration Agreement, Section 13.2. Thus, the calculation of Plaintiff's damages in the event of a breach by EGCC is simple and straight forward. Even assuming all of Plaintiff's allegations to be true, which they are not, Plaintiff has an adequate remedy at law in the form of money damages which precludes a grant of injunctive relief. The extraordinary remedy that Plaintiff seeks – which, here, would amount to forcing the parties to remain wed together by contract – is legally inappropriate.

---

[1] In doing so, Plaintiff violates Section 13.4 of the Collaboration Agreement by disregarding the requirement that the parties submit any disputes to confidential third-party mediation before initiating litigation. EGCC reserves its rights in this regard.

Additionally, there is no actual or threatened breach of the Agreement's noncompetition provision to warrant equitable relief. Plaintiff reads the noncompetition provision much too broad. It does not prohibit EGCC "from taking any action that is competitive with the educational programs offered by the collaboration to union members." Pl.'s Motion at 15. Instead, the provision prohibits EGCC from collaborating with a new joint venture partner to replace Plaintiff. *See* Agreement at § 8. EGCC is not replacing Plaintiff. Based on the failure of the collaboration, EGCC plans to perform Plaintiff's functions in-house, without further collaboration and without a new joint venture partner. Since Plaintiff's sale to a private equity firm and the termination and/or resignation of its senior management (and primary collaborators with EGCC), EGCC has no confidence in the continued collaboration with Plaintiff, which has failed in its material purpose.

**FACTUAL BACKGROUND**[2]

**A. The Collaboration**

On June 30, 2017, Plaintiff and EGCC entered into a Collaboration Agreement, which was subsequently amended on or around October 2019 and February 1, 2021 (collectively, the "Agreement"). Pl.'s Compl. at Ex. A. The purpose of the Collaboration was to develop, market and offer online courses and programs to members of unions. *See* Agreement at 1.

The Collaboration was facilitated and managed through an Operating Committee that met at least monthly and sometimes as much as four times in a month. *See* Agreement at §2.6. Plaintiff's designated representatives to the Operating Committee were Michael Perik, CEO, Nicole Rowe Colclasure, Daniel Jones and John Haseley. EGCC's designated representatives included EGCC President Michael Geoghegan, COO Bob Roeschenthaler, Chief Academic Officer Dr. John Crooks and Chief Student Affairs Officer Christina Wanat. While others'

---

[2] The factual assertions made herein will be supported by the testimony of EGCC President Michael Geoghegan at the preliminary injunction hearing set for July 7, 2022.

attendance at Operating Committee meetings varied, Mr. Perik's and Mr. Geoghegan's attendance at the meetings were nearly a certainty for every meeting.

While the parties were free to change their designated representatives, they were required to do so with proper advance notice and the replacements were required to "have appropriate credentials, experience, knowledge, and ongoing familiarity with the Collaboration." Agreement at § 2.6(a).

The last time the Operating Committee met was on March 14, 2022. Thereafter, without notice to EGCC, Plaintiff fired Mr. Perik as its CEO for engaging in questionable conduct related to the sale of Plaintiff to a private equity firm with no known prior experience with a collaboration like the one at issue in this case. Plaintiff also put Operating Committee designees, Nicole Rowe Colclasure, Daniel Jones and John Haseley on probation. Shortly, thereafter, they each resigned leaving Plaintiff without any representatives on the Operating Committee.

Plaintiff never designated replacement representatives for the Operating Committee and the Operating Committee has not met since March 14, 2022. Since this time, and after the terminations and resignations of EGCC's key collaborators, the governance and operation of the Collaboration has fallen solely to EGCC.

### B. EGCC's Termination of SRC.

On May 10, 2022, EGCC sent a written notice to Plaintiff stating that it was in material breach of the Agreement as a result of its termination of Mr. Perik and the subsequent resignations of all other SRC representatives on the Operating Committee. *See* Pl.'s Compl., at Ex. B.

On May 20, 2022, Plaintiff disagreed that it was in material breach of the Agreement; relying on the fact that it had complete discretion to terminate Mr. Perik and that the nature of the Collaboration had not changed as a result of Mr. Perik's termination. No efforts, however, were

4

made to designate new representatives for the Operating Committee with the appropriate credentials, experience, knowledge, and ongoing familiarity with the Collaboration.

### C. The Litigation.

On July 1, 2022, Plaintiff filed a complaint against EGCC in the United States District Court for the Southern District of Ohio, Case No. 2:22-CV-2653, alleging causes of action for (1) declaratory judgment that SRC has not breached the Agreement; (2) breach of contract for EGCC's alleged failure to pay amounts owed; and (3) breach of contract for EGCC's alleged failure to abide by the Agreement's non-competition provisions under Section 8 of the Agreement. On the same day, Plaintiff filed its Motion for and Brief in Support of a Preliminary Injunction.

## II. LAW AND ARGUMENT

### A. Standard of Review.

In considering whether to issue a preliminary injunction, the moving party must establish an entitlement for injunctive relief based on the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *City of Pontiac Retired Employees Ass'n v. Schimmell*, 751 F.3d 427, 430 (6th Cir. 2014).

"The burden is on Plaintiff to demonstrate entitlement to preliminary injunctive relief, and it is a heavy one." *McClafferty v. Portage County Bd. of Elections*, 661 F.Supp.826, 832 (N.D. Ohio 2009). Preliminary injunctive relief is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Because the relief sought is

so extraordinary, a party seeking an "injunction must establish its case by clear and convincing evidence." *Honeywell, Inc. v. Brewer–Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998).

### B. **Plaintiffs Cannot Establish Irreparable Harm Because There is an Adequate Remedy at Law.**

"To demonstrate irreparable harm, the plaintiffs must show that ... they will suffer actual or imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). To be sure, the injury that would result in the absence of an injunction must be irreparable, not merely substantial. *Cellnet Comm. v. New Par, d/b/a Verizon Wireless*, 291 F.Supp.2d 565 (E.D. Mich. 2003). An injury that can be cured by an award of monetary damages fails to qualify as irreparable harm at the preliminary injunction stage. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

It is evident from Plaintiff's Complaint and Motion for Preliminary Injunction that this case is really only about money. However, as the Supreme Court stated in *Sampson*:

> "the key word in this consideration is irreparable. Mere injuries, however, substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson*, 415 U.S. at 90, 94 S.Ct. 937 (emphasis in original, internal quotation and citation omitted).

Plaintiff's request for preliminary injunction in this case is similar to plaintiff's request in *Cellnet*, which was denied. In *Cellnet*, plaintiff sought to enjoin defendants from terminating a contract and to require them to provide service to plaintiff's customers. *Cellnet* at 566. The plaintiff argued that it would suffer irreparable injury if a preliminary injunction did not issue because it would lose customers, suffer a decline it its ability to compete for new customers, and lose its customers' goodwill. *Id.* at 569. Plaintiff also argued that the special features of the certain reseller

6

agreement at issue would make it difficult or impossible to calculate monetary damages for those injuries. *Id.*

After considering plaintiff's arguments, which are similar to the arguments made by SRC in this case, the district court determined that plaintiff failed to establish irreparable harm. In so holding, the court found that "although the injury might be substantial and the damages difficult to calculate, the injury is not irreparable." *Id.* at 570.

The same analysis follows here, although the facts make it an even easier determination. In the event Plaintiff prevails on its claims in a final adjudication, it is possible to award damages in an amount that would make Plaintiff whole. The parties have already agreed in the Collaboration Agreement to a mechanism and process for payment of Plaintiff's fees. *See* Collaboration Agreement, Ex. B. Thus, corrective relief is available to Plaintiff in the ordinary course of this litigation.

Moreover, Plaintiff's argument that it will suffer irreparable harm if EGCC works directly with the unions it serves is also misplaced. *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at p. 18. There is no evidence that EGCC has started a competing business in violation of the non-compete provision. Section 8 of the Agreement states in pertinent part:

> "During the Term, neither SRC nor EGCC shall take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members…"

Thus, the prohibition on the parties of Section 8 is that they refrain from entering into a "joint venture", "collaboration", or other "similar arrangement" – i.e., an operation or business with another *third-party* to do the same work as the collaborative. Nothing about Section 8, or any other provision of the Collaboration Agreement prohibits EGCC from working directly with the unions, the members of which form the very constituency that the College serves.

Plaintiff cites to several distinguishable cases as authority for its unavailing argument. First, in *Basicomputer Corp. v. Scott*, the record contained "ample evidence" that defendants breached the non-competition provision and confidentiality covenants of their agreement by working for a rival corporation. *Basicomputer Corp.*, 973 F.2d at 512. Here, however, Plaintiff has offered no evidence that EGCC has taken "any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration."

Second, Plaintiff cites to *Avery Dennison Corp. v. Kitsonas* in arguing that "the failure to enforce a valid restrictive covenant can constitute irreparable harm. *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at p. 18. However, the restrictive covenant contemplated in *Avery* included a trade secret provision, and the court concluded that there was evidence that the defendant was in possession of trade secrets that were either misappropriated or were threatened to be misappropriated through defendant's employment with a competitor. Such is not the case here.

Third, Plaintiff cites to *Dayton Superior Corp. v. Yan* in arguing that "[s]ome courts have even held that a mere violation of a covenant not to compete is an irreparable harm." *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at p. 18. However, the nature of the irreparable harm found in Dayton Superior had more to do with evidence of defendant's threat of disclosure or misappropriation of plaintiff's trade secrets. Again, such is not the case here.

Plaintiff's citations to distinguishable case law do little to establish that Plaintiff faces imminent irreparable harm due to EGCC's alleged breach of Section 8 of the Agreement—especially in light of the fact that Plaintiff offers no evidence that EGCC has established a joint venture, collaboration, or similar arrangement in violation of Section 8.

8

Plaintiff finally argues that its financial hardship would be so severe that it would cause Plaintiff to be "completely wiped out," thereby rendering "a later judgment on the merits meaningless." *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at p. 18. Plaintiff relies on *Stenberg v. Cheker Oil Co.*, in making this argument. However, Plaintiff's reliance on *Stenberg* is misplaced because it is distinguishable from the facts at hand. *Stenberg* explicitly contemplated a franchisee relationship. *See Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978) ("It is our further conclusion that irreparable harm may be established by a franchisee, or one situated as Stenberg, by proof of financial losses from withholding or revoking a franchise or lease."). The relationship, and facts, are much different here. Plaintiff is already in the process of collaborating with other educational partners to earn additional revenue. As such, Plaintiff has not established by clear and convincing evidence an imminent threat to irreparable harm based on its conclusory and unsupported allegations that its financial hardship would cause Plaintiff's business to be "completely wiped out."

In conclusion, Plaintiff's alleged damages are monetary in nature; and therefore, do not constitute irreparable harm.

### C. **Plaintiff cannot establish a substantial likelihood of success on the merits of its breach of contract claims against EGCC.**

"To establish a likelihood of success, a plaintiff cannot prevail by showing that success on the merits is merely possible*, Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261, n.4 (6th Cir. 1977), but instead must demonstrate that it is a 'strong' or 'substantial' likelihood." *McClafferty*, 661 F.Supp.2d at 832, citing *Summit County Democratic Cent. & Executive Comm. v Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). To establish a substantial likelihood of success on the merits of its breach of contract claims under Ohio law, Plaintiff must show: (1) that a contract existed; (2) that SRC performed under that contract; (3) that EGCC breached that contract; and (4)

9

that SRC suffered damages as a result of that breach. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

There is no dispute that EGCC and Plaintiff entered into the Agreement on June 30, 2017, which they amended on or around October 2019 and on February 1, 2021. *See* Pl.'s Compl. at Ex. B; Ex. C, ¶ 3. As discussed more fully below, however, Plaintiff has failed to establish a substantial likelihood that EGCC breached the Agreement, or that Plaintiff properly performed.

### 1. **SRC Has Failed to Perform Under the Agreement.**

SRC cannot establish by a substantial likelihood that it will prevail because SRC has breached the Agreement by: (1) failing to give prompt notice to EGCC of any fact, event, or change within the Collaboration Agreement that could reasonably be expected to cause reputational harm to the Collaboration; (2) failing to obtain prior written consent of each member of the Operating Committee before making a material change in the nature of the Collaboration and Collaboration Activities; (3) unilaterally disbanding the Operating Committee and gutting the Collaboration of its governing body; (4) failed to perform activities at a performance level equal to the same level at which Plaintiff previously performed such activities; and (5) attempting to establish competing joint ventures in violation of Amended Section 8 of the Agreement.

Sections 7.8(d) and 2.4(e) of the Agreement, read together, require that a Party give prompt notice to the other Party of any fact, event, or change within the Agreement that could reasonably be expected to cause reputational harm to the Collaboration, and obtain prior written consent of each member of the Operating Committee before taking action that could constitute a material change in the nature of the Collaboration. Plaintiff did neither of these things before terminating its prior CEO and allowing other leadership team members to depart.

This unilateral action led directly to a violation of Section 2.5 of the Collaboration Agreement and a Collaboration without an Operating Committee. While Plaintiff points to Section 2.5 of the Agreement for the proposition that each Party is permitted to manage its own employees at its discretion, Plaintiff notably omits reference to the first sentence of Section 2.5:

> 2.5 Level of Service. Each of the Parties agrees that, in performing the Collaboration Activities under this Agreement, it shall (i) allocate to the performance of such activities sufficient personnel with appropriate experience, knowledge and competence, and (ii) perform such Collaboration Activities at a performance level equal to the level at which each Party is then providing such Collaboration Activities (or the same or similar services) with respect to its own business operations.

While Plaintiff may enjoy discretion with respect to its own employees, it is not permitted to make institutional changes that would effectively disband the Collaboration's governing body and cause its performance to suffer, which it most certainly has. This is the very reason why EGCC put Plaintiff on notice of a breach and why EGCC is forced to terminate the Agreement. Simply put, Plaintiff has not allocated personnel with the requisite level of experience, knowledge and competence to the performance of its duties under the Collaboration, and EGCC is being harmed as a result because the collaboration originally bargained for has ceased to exist.

Plaintiff is also in violation of the Agreement by engaging in discussions with Acadeum and Brazosport College (and likely others) for the purpose of entering into a competing joint agreement with by providing the same services Plaintiff provides to EGCC. These actions further constitute a material breach of the Agreement.

      **2.**      **EGCC Has Performed its Obligations – and More – Under the Collaboration Agreement.**

Plaintiff advances three arguments in its Brief in Support of its Motion for Preliminary Injunction as to why it believes EGCC breached the Agreement: (1) EGCC failed to reimburse

SRC for funds allegedly owed to SRCE; (2) EGCC failed to follow the Agreement's dispute resolution provision in terminating the Agreement; and (3) EGCC failed to abide by the Agreement's non-competition provisions. *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at pp. 13-16. As described more fully below, Plaintiff cannot sufficiently establish that EGCC breached the Collaboration Agreement. And as such, this Court should deny Plaintiff's Motion for a Preliminary Injunction.

Plaintiff argues that EGCC has failed to reimburse Plaintiff for fees and operating expenses allegedly due under Exhibit B of the Agreement. *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at pp. 13-14. As the testimony at the preliminary injunction hearing will establish, these monies are not properly due and payable to Plaintiff under the terms of the Agreement. Moreover, Plaintiff's material breaches suspends EGCC's obligation to perform.

Equally important, though, is the fact that Plaintiff has historically only been permitted to receive payment under this Agreement due to the "bundled services exception" to the prohibitions against incentive compensation under Section 487(a)(2) of the Higher Education Act. Plaintiff does not provide student career counseling, and since March, EGCC has been providing the majority of the enrollment application assistance for its students. Plaintiff's failure or inability to provide these services may take it outside the bundled services exception such that it would not be permissible to pay Plaintiff under the terms of the Agreement. This issue is being evaluated and provides yet another reason for the parties to unwind their collaboration.

Plaintiff also argues that EGCC failed to undertake the agreed upon dispute resolution provisions when it terminated the Agreement. Specifically, Plaintiff states that, "[t]here is no indication in [EGCC's May 10, 2022 Written Notice of Material Breach and Intention to Terminate the Collaboration Agreement] that it was also intended to serve as the notice required under 13.4,

12

and none of the required negotiations have taken place since Plaintiff's receipt of said notice." *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at p. 14. If this is true, however, it highlights Plaintiff's failure to follow the agreed upon process, not EGCC.  The dispute resolution provision serves as a condition precedent to initiating litigation. EGCC did not file suit; Plaintiff did. There is nothing more EGCC could have done to indicate that its May 10, 2022 written notice was made pursuant to the Agreement's dispute resolution clause.

Finally, Plaintiff argues that EGCC has failed to abide by the Agreement's non-competition provisions because "EGCC plans to terminate the Agreement with SRC and plans to pursue a similar collaboration directly with SRC's union partners without SRC." *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at pp. 15-16. However, EGCC's actions do not constitute a breach of the Agreement's non-competition provisions, as EGCC is not creating a competitive joint venture, collaboration, or similar arrangement to that of the Collaboration. By its express terms, Section 8 of the Agreement only prohibits the parties from "taking any action for the purpose of" partnering with a third party via "joint venture, collaboration or a similar arrangement" to provide competitive courses to union members. There is no restriction on either party competing as long as it does so by itself.  It is expected that EGCC would have direct contacts with union representatives as the stakeholders of the very constituency EGCC serves.

### 3.      SRC's Alleged Damages.

In Ohio, "a party seeking damages for breach of contract must present sufficient evidence to show entitlement to damages in an amount which can be ascertained with reasonable certainty. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 475, 2007-Ohio-6948, 880 N.E.2d 420 (2007). Plaintiff argues in its Brief in Support of its Motion for a Preliminary Injunction that, in addition to payments allegedly due, "SRC will face devastating disruption to its business operations given

its expense obligations to its workforce and its debt service obligations to its lender." *See* Pl.'s Br. In Support of Motion for a Preliminary Injunction at p. 17. Not only is it impossible to ascertain these alleged damages with reasonable certainty, but Plaintiff is expressly precluded from such damages pursuant to the Agreement.

Per the Agreement, the Parties expressly and mutually agreed to waive any and all claims for consequential and indirect damages. Specifically, Section 13.2 of the Agreement provides:

> NO PARTY WILL BE LIABLE TO ANY OTHER PARTY (NOR TO ANY PERSON CLAIMING RIGHTS DERIVED FROM ANY OTHER PARTY'S RIGHTS) FOR PUNITIVE, EXEMPLARY, SPECIAL, CONSEQUENTIAL OR INDIRECT DAMAGES OF ANY KIND AS A RESULT OF BREACH OF ANY TERM OF THIS AGREEMENT.

The Ohio Supreme Court has defined consequential damages as those damages which flow from a breach of contract "[a]s may fairly and reasonably be considered either arising naturally, that is, according to the usual course of things, from such breach of contract itself, or where such as may reasonably be supported to have in the contemplation of both parties at the time they made the contract as the probable result of the breach." *See Midvale Coal Co. v. Cardox Corp* (1949), 152 Ohio St. 437, 447 quoting *Hadley v. Baxendale* (1854), 9 Exch. 341. Ohio courts have routinely found that consequential damages include lost profits[3], home office overhead or any form of overhead not directly incurred by the breach[4], wage or salary increases, ripple or delay

---

[3] *See Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, 978 N.E.2d 974, ¶ 66 (holding that "the remedies available for breach of contract include both actual and consequential damages, such as lost future profits.").
[4] *See World Metals, Inc. v. AGA Gas, Inc.*, 142 Ohio App.3d 283, 289, 755 N.E.2d 434, 438 (9th Dist.2001 (holding "[o]utside of the lost-profit setting, while a plaintiff may not recover its total overhead as consequential damages flowing from a breach, it may recover the additional overhead that it incurred due to the breach.").

damages[5], loss of productivity[6], increased costs, lost opportunity to work on other projects, inflation costs of labor[7]; or any other indirect loss arising from the conduct of the parties' contract. Plaintiffs cannot establish a substantial likelihood of success on the merits to support their request for extraordinary injunctive relief. Plaintiffs' Motion for a Preliminary Injunction must be denied.

### D. Issuing an Injunction Carries the Risk of Harming Others and Is Not In the Public Interest

Perhaps lost in some of the legal shuffle is that EGCC has a college to run, and students to serve. Issuing an injunction preventing EGCC from terminating its agreement with Plaintiff, even though Plaintiff has an adequate remedy at law, would be detrimental to EGCC's students and stakeholders. Plaintiff's failure to perform has caused a disruption in services and confusion among EGCC's student-base, applicants and potential applicants. With lower-than-expected enrollment numbers for the fall term, it is imperative that EGCC be permitted to conduct business and operate the College in the way that it sees fit, understanding that both parties are entitled to have their claims heard in the ordinary course of litigation. In the short term, though, EGCC is charged with the important responsibility of providing a range of educational choices to students in all walks of life, and the potential of being forced to contract with Plaintiff threatens its ability to do that.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction must be denied. Plaintiff has not, and cannot, demonstrate a threat of irreparable harm, has an adequate remedy at

---

[5] *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.* (May 25, 2000), Franklin App. No. 98AP-1619, unreported, 2000 WL 674899, appeal not allowed (2000), 90 Ohio St.3d 1442, 736 N.E.2d 904 (holding that unabsorbed office overhead incurred during defendant's delay was recoverable because plaintiff was not able to get replacement work); *see also Sherman R. Smoot Co. v. Ohio Dept. of Adm. Serv.*, 136 Ohio App.3d 166, 182, 736 N.E.2d 69, 81 (10th Dist.2000).
[6] *F.A. Wilhelm Const. Co. v. Kentucky State Dist. Council of Carpenters, AFL-CIO*, 293 F.3d 935, 941 (6th Cir.2002) (holding that damages for lost opportunity revenue may be awarded.); *see also Sherman R. Smoot Co. v. Ohio Dept. of Adm. Serv.*, 136 Ohio App.3d 166, 182, 736 N.E.2d 69, 81 (10th Dist.2000).
[7] *Id.*

15

law for any alleged breach of contract (which it is not substantially likely to win) and EGCC is not in violation of the express terms of the Agreement's noncompetition provision.

                        Respectfully submitted,

                        */s/ Justin M. Alaburda*
                        Justin M. Alaburda (#0082139)
                        Victoria L. Ferrise (#0085012)
                        Adam D. Fuller (#0076431)
                        **BRENNAN, MANNA & DIAMOND, LLC**
                        75 East Market Street
                        Akron, OH 44308
                        Ph: (330) 253-5060 / Fax: (330) 253-1977
                        jmalaburda@bmdllc.com
                        vlferrise@bmdllc.com
                        adfuller@bmdllc.com

                        Marlon A. Primes (#0043982)
                        **BRENNAN, MANNA & DIAMOND, LLC**
                        200 Public Square
                        Huntington Building, Suite 3270
                        Cleveland, OH 44114
                        maprimes@bmdllc.com

                        *Counsel for Defendant Eastern Gateway Community College*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2022, the foregoing *Brief in Opposition* was filed electronically with the Court. Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                        */s/ Justin M. Alaburda*
                        Justin M. Alaburda (#0082139)
                        *Counsel for Defendant Eastern Gateway Community College*

4883-4902-3783, v. 1