IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STUDENT RESOURCE CENTER, LLC, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>EASTERN GATEWAY COMMUNITY )<br>COLLEGE, )<br>)<br>*Defendant*. )<br>)<br>)<br>)<br>)<br>) | **DEMAND FOR JURY TRIAL**<br><br>Case No. 2:22-cv-2653 |

**COMPLAINT**

Plaintiff Student Resource Center, LLC (the "Plaintiff") brings this action against Defendant Eastern Gateway Community College (the "Defendant").

**INTRODUCTION**

1. This action is brought by Plaintiff Student Resource Center, LLC ("SRC" or the "Company") to hold Defendant Eastern Gateway Community College ("EGCC") accountable for its breach under their Collaboration Agreement dated June 30, 2017, as amended on or around October 2019 and February 1, 2021 (collectively, the "Collaboration Agreement"), which remains in force until at least June 30, 2027. *See* **Exhibit A**.

2. SRC's mission aims to provide support to students in order to attain their educational goals through an online curriculum with little to no student debt. To accomplish this goal, SRC partners with higher education institutions in the development and marketing of online courses and programs for unions and other professional associations in light of the substantial

costs and debt burden associated with traditional four-year degrees.

3. Student Resource Center's primary institutional partner is presently EGCC, which represents approximately 95% of SRC's revenue as of June 1, 2022.

4. As part of the Collaboration Agreement, SRC assists EGCC, among other things (a) to develop and market high quality online courses and programs to members of unions and professional association members; (b) to identify courses and programs not currently available to EGCC students; (c) to administer the educational benefit programs offered to unions and professional associations; and (d) to support students with coaching and other services.

5. As a result of SRC's efforts through the Collaboration Agreement, EGCC's enrollment has grown from approximately 5,549 students in Fall 2016 and to over 42,500 students in Fall Semester 2021.

6. EGCC breached the Collaboration Agreement by issuing a notice dated May 10, 2022 but served on or around May 12, 2022 asserting that SRC materially breached the Collaboration Agreement. *See* **Exhibit B** (referred to herein as the "Notice").

7. EGCC's Notice concocts a misleading and false argument that SRC materially breached the Collaboration Agreement by removing Michael Perik as SRC's CEO and replacing him with Phillip Braithwaite, a highly qualified executive. SRC's actions were both appropriate and expressly permitted under the plain terms of the Collaboration Agreement. As explained below, Perik and others were replaced because they engaged in fraudulent conduct, including making several material false representations regarding EGCC's accreditation status.

8. Contrary to EGCC's claims, however, EGCC further breached the Collaboration Agreement by failing to pay SRC over $2,657,153.08 owed under the Collaboration Agreement, which amount is now past due.

9. Upon information and belief, EGCC's bad-faith breach had been planned by EGCC's president, Michael J. Geoghegan (referred herein as "Geoghegan") and others at his direction.

10. In fact, despite SRC's successful and collaborative efforts to support EGCC's current and prospective students and SRC's financial investment in the development of EGCC's programs, EGCC has decided to undermine and circumvent SRC refusing to pay SRC amounts previously owed under the Collaboration Agreement and by soliciting SRC's employees and union partners upon information and belief, and curtailing SRC employee access to various information needed for SRC to carry out the Collaboration Agreement.

11. EGCC's actions violate the non-competition provision in Section 8 of the Collaboration Agreement:

> During the Term, neither SRC nor EGCC shall take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members; <u>provided however</u>, that once EGCC passes through an enrollment threshold of twenty-three thousand (23,000) or more Iniative Students, SRC may enter into arrangements similar to, or the same as, the Collaboration with other existing colleges if SRC, in its sole discretion, determines that such arrangements are necessary to (a) comply with state regulatory requirements or (b) ensure regional diversity. For the avoidance of doubt, if the number of EGCC-enrolled Initiative Students should be reduced below twenty-three thousand (23,000) after such additional arrangements have been entered into by SRC, those additional arrangements shall survive such reduction and shall not terminate merely as a consequence of such reduction.

(Exhibit A, Section 8).

12. Recently, Geoghegan announced during all-EGCC employee meetings that EGCC plans to terminate the Collaboration Agreement with SRC, regardless of SRC's actions, and upon information and belief, EGCC plans to pursue a similar collaboration directly with SRC's union partners without the support of SRC.

13. Upon information and belief, EGCC's agents and representatives have already

begun to contact SRC's union partners advising of the termination of the Collaboration Agreement and EGCC's apparent intent to enter into new relationships, with SRC's union partners without SRC.

14. In fact, on our around June 28, 2022, three of SRC's union partners have replaced the SRC subdomain pages and links on their websites to recently created websites controlled by EGCC. These actions demonstrate EGCC's direct contact with SRC's union partners and EGCC's attempt to compete with SRC in clear violation of the Collaboration Agreement, which remains in full force and effect.

15. EGCC's and Geoghegan's attempts to cut out SRC (1) undermines SRC's ability to offer high-quality service to the union members by stripping away SRC's advising and coaching functions and its efforts to provide evidence-based student success tracking; and (2) wrongfully denies SRC of the financial opportunity contemplated by the Collaboration Agreement's profit share, which based on current demand forecasts measures well over $50,000,000.

16. In addition to damages associated with EGCC's breach of the Collaboration Agreement[1], SRC requests relief (a) declaring that SRC has not breached the Collaboration Agreement; (b) declaring that EGCC is in breach of the Collaboration Agreement; (c) enjoining EGCC from soliciting SRC employees and curtailing SRC employee access to various systems and data sets required by SRC employees to carry out the Collaboration Agreement and to support students prior to their enrollment for the Fall 2022 Semester; and (d) enjoining EGCC from further damage to SRC's reputation due to breach of the non-competition, termination, and

---

[1] Although injunctive relief is not presently sought for the repayment of funds due and owed to SRC, should EGCC's egregious conduct continue, SRC may be required to separately seek injunctive relief for the immediate repayment of those funds in the future.

3

confidentiality provisions of the Collaboration Agreement.

## THE PARTIES

17. Plaintiff SRC is a Delaware limited liability company, with its principal place of business in Chicago, Illinois.

18. SRC's sole member is SRC Intermediate Holdings, Inc. SRC Holdings, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business also in Chicago, Illinois.

19. Defendant EGCC is a corporation, not for profit, incorporated under the laws of the state of Ohio. EGCC is a two-year public comprehensive community college that exists under the authority of R.C. 3354.24, and EGCC is a political subdivision of the state of Ohio. At all times relevant to this Complaint, EGCC has operated a community college branch in Steubenville, Ohio.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

21. SRC and EGCC have a contractual relationship as set forth in the Collaboration Agreement that calls for the application of Ohio law and selects the federal courts for Ohio or state courts as the exclusive forum for any disputes. Section 14.14 of the Collaboration Agreement states the following:

> 14.14  Governing Law and Forum Selection. This Agreement is governed by and construed and enforced in accordance with the laws of the State of Ohio without regard to the conflict of law provisions thereof, and each Party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in the United States District Court for the State of Ohio, or in the state courts of the State of Ohio, if the legal action, suit or proceeding lacks the subject matter jurisdiction to be brought in the United States District Court for the District of Ohio and irrevocably accepts and submits to the sole and exclusive jurisdiction of the aforesaid courts in person, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other Party.

(Exhibit A, Section 14.14).

22. This Court has personal jurisdiction over EGCC because it consented to personal jurisdiction in this Court pursuant to Section 14.14 of the Collaboration Agreement. Further, this Court also has personal jurisdiction over the Defendant as a citizen of the state of Ohio.

23. Venue in this Court is proper pursuant 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims involved in this case occurred within Jefferson County, Ohio. Venue in this Court is also proper pursuant 28 U.S.C. § 1391(b)(3) because the Defendant is subject to this Court's personal jurisdiction.

## FACTS

### I. Student Resource Center's Business Supports EGCC Students.

24. SRC partners with EGCC in the development and marketing of online courses and programs to union and professional association members, and supports students with coaching and other services. More specifically, through the Collaboration Agreement, the Company supports EGCC by, among other things: (a) conducting market research; (b) understanding the academic and training needs of union groups and employers hiring union members; (c) identifying prospective adjunct faculty and subject matter experts; (d) supporting prospective students by encouraging and providing guidance, when requested, through EGCC's enrollment and on-boarding process; (e) assisting students with requesting prior transcripts and answer

questions about Free College; (f) conducting surveys throughout the year for students; (g) conducting online and in-person informational sessions regarding EGCC and its services; (h) proving information to prospective students about programs and career pathways; (i) assisting students with Learning Management System ("LMS") navigation, student portal navigation, and connecting students to the IT Help Desk; (j) accelerating the growth of online offerings tailored to adult learners; (k) identifying courses and programs not currently available in EGCC's market which may meet the unmet needs of adult learners; (l) assisting with awareness and enrollment efforts of the educational benefit program; and (m) providing non-academic coaching and other student support services to improve student persistence and completion outcomes.

25. SRC also partners with unions and other professional associations to make available the educational programs offered by EGCC on a free or heavily discounted basis as a benefit of union or association membership. Further, if a union or association member is interested in one of the educational programs offered by EGCC, SRC provides that prospective student with guidance and support during the application and enrollment processes, as well as ongoing mentoring and other services post-enrollment.

26. SRC's services and relationships with union partners significantly reduce the cost barriers to traditional education offerings and enable EGCC's students to complete their degrees with little to no debt.

27. EGCC is the Company's primary partner. EGCC is an Ohio-based, public institution of higher learning founded in 1968. EGCC offers associate degrees and certificates in numerous disciplines, and it conducts classes online and in person at its Youngstown, Ohio and Steubenville, Ohio campuses.[2]

---

[2] *See* Eastern Gateway Community College, "Who We Are," https://egcc.edu/about-us/institution/who-we-are/.

28. Through its collaboration with EGCC, SRC has facilitated the enrollment of tens of thousands of students and significantly increased college participation numbers of union members thereby substantially improving the financial well-being of EGCC.

29. For instance, in 2019, SRC helped EGCC enroll or continue to enroll 22,879 students for the school's Fall Semester. In the fall of 2021, that figure increased to over 42,500 students.

30. As a result of the collaboration's success, and through its contractual arrangements with EGCC, SRC has generated millions of dollars in revenue for EGCC while simultaneously promoting affordable access to higher education for tens of thousands of students.

31. SRC took on significant financial risk to support EGCC through the formation of the Collaboration Agreement, investing millions of dollars to help EGCC develop course content, and underwriting EGCC's startup costs. As a result, SRC's efforts significantly reduced the per-unit cost of EGCC's academic offerings.

32. The exclusivity of the agreement was paramount in SRC's decision to enter into the Agreement; and without it, SRC would have established other partnerships sooner and sent students elsewhere to diversify. For EGCC to ignore that provision now is disastrous and unconscionable.

33. Because of SRC's success, in October 2019, EGCC's Board of Trustees extended the Collaboration Agreement for seven years until at least June 30, 2027. (Exhibit A, Amendment No. 1).

II. **The Higher Learning Commission Puts EGCC On Probation For Failing To Comply With Accreditation Criteria Jeopardizing EGCC's Enrollment and the Collaboration Agreement.**

34. As a community college in Ohio, EGCC's accrediting body is the Higher

Learning Commission (the "HLC" or "Commission"). The HLC periodically conducts reviews to ensure accreditation compliance.

35. On November 9, 2021, the HLC announced that on November 8, 2021 it had placed EGCC on probation, finding that the institution was "out of compliance with the Criteria for Accreditation."

36. Probation is a public sanction by the HLC that indicates that the institution is no longer in compliance with one or more Criteria for Accreditation and/or is not in compliance with other HLC requirements which, if not resolved by the end of the period of probation, could result in the revocation of the institution's accreditation.

37. The HLC specifically found that EGCC did not meet five "Core Components" for accreditation; met six other "Core Components," but "with concerns"; and was "out of conformity with" six "Assumed Practices" promulgated by the HLC. These findings were significant in that as a condition to HLC accreditation, an institution must meet each of the Criteria for Accreditation, and the Core Components comprising them, in addition to other HLC requirements.

38. As a result of these findings, EGCC was ordered to publicly disclose its accreditation probation, and it "is required to host a comprehensive evaluation no later than April 2023 to determine whether [it] has ameliorated the findings that led to the imposition of the [Probation] sanction." HLC will then announce in November 2023 whether EGCC will be taken off probation or further sanctioned, including by potentially losing its accreditation.

39. The HLC's decision to place EGCC on probation—and the sheer number of non-compliance violations—sent shockwaves through the entire higher education community. It not only represented a public shaming of EGCC, it also tarnished the reputation and credibility of

8

SRC by association.

40. EGCC's own actions and inactions resulted in its probation status. Nevertheless SRC has taken great pains in assisting EGCC in addressing HLC's concerns – even while it received unfavorable media attention. EGCC's enrollment had consistently increased since the inception of the Collaboration Agreement until HLC put EGCC on probation.

### III. SRC Replaces Its CEO, Michael Perik, with Philip Braithwaite Due to Perik's Failure to Disclose the Extent of His Knowledge of the HLC's Mid-Cycle Accreditation Review.

41. At the time of HLC's decision to place EGCC on probation, Michael Perik was the Chief Executive Officer and Co-Founder of Student Resource Center, LLC.

42. Also around the time of HLC's Mid-Cycle Accreditation Review – the period leading up to HLC's final decision, Perik and others were in the process of selling SRC to Sterling Small Market Education Fund, L.P. and SRC Intermediate Holdings, Inc. (collectively "Sterling") pursuant to a Unit Purchase Agreement entered on June 25, 2021.

43. Following the public release of the HLC probation letter, Sterling instituted an investigation into the matter and discovered email communications that showed that Perik had engaged in fraudulent conduct.

44. As a result of Sterling's discovery, SRC removed Perik as CEO and replaced him with Phillip Braithwaite in March of 2022. Further, SRC put executives Nicole Rowe Colclasure, John Hasley, and Daniel Jones on probation. On June 15, 2022, Sterling and SRC Intermediate Holdings, Inc. sued Perik and others for fraud. That lawsuit is currently pending in the United States District Court for the District of Delaware, Case No. 22-cv-00790-RGA. The allegations in that lawsuit, including that Perik and others knew approximately six months before closing their deal with Sterling that EGCC was out of compliance with HLC's accreditation and was

9

headed toward probation, relate to Perik's removal.

45. Prior to his termination, Perik already intended to step down from his role as CEO of SRC. EGCC was aware of this fact and never informed SRC of any objections thereto during meetings with Mr. Braithwaite on or around March 29, 2022 and April 1, 2022.

46. Mr. Braithwaite was a natural fit to replace Perik as CEO. For example, Mr. Braithwaite has extensive experience in higher education and more specifically online education aimed at non-traditional learners. Mr. Braithwaite was the prior President and CEO of Teachers of Tomorrow.

47. In addition to Mr. Braithwaite, SRC hired other highly qualified executives to support SRC's operations whom had extensive experience in higher education and online learning. For example, SRC hired Cecilia Retelle Zywicki as SRC's Chief of Staff. Ms. Retelle Zywicki previously worked as the Chief Operating Officer at PresenceLearning, a leading provider of live online special education-related services. SRC hired Pete Schatschneider as SRC's Senior Vice President of Marketing. Mr. Schatschneider had previously worked for over 15 years at Bisk Education designing infrastructure solutions to online higher-education institutions. In addition, SRC hired Erika Kotterer as SRC's Vice President of Student Operations. Ms. Kotterer worked previously as the Assistant Vice President of Admissions at Southern New Hampshire University. SRC also hired Cecil Banhan as SRC's Vice President of Partnership Development. Mr. Banhan previously worked in that same role for All Campus.

48. EGCC nevertheless had already begun to carry out its campaign to compete and interfere with SRC's contractual rights directly because on March 23, 2022, EGCC President, Geoghegan somehow knew, *even before SRC*, that SRC employees Nicole Rowe Colclasure, John Haseley, and Daniel Jones had resigned.

**IV.    EGCC Retaliates Against SRC for SRC's Removal of Perik as CEO and the Resignation of other Executives.**

49.    On or around May 12, 2022, Geoghegan, purportedly acting on behalf of EGCC, served a notice (the "Notice") falsely claiming that SRC was in material breach of the Collaboration Agreement because of "unilateral decisions regarding [SRC's] executive management team." In particular, Geoghegan was angry that SRC terminated Michael Perik, declaring in the Notice that SRC's decision constituted a "material breach of the Agreement[.]" Geoghegan also claimed that his termination "led to the departure of other leadership team members" who resigned shortly after Perik's termination. He even went as far as to wrongfully claim that "SRC unilaterally removed these individuals…" and claimed that SR was in material breach of the Collaboration Agreement as a result. (Exhibit B).

50.    The executive team added by SRC consisting of Ms. Retelle Zywicki, Mr. Schatschneider, Ms. Kotterer, and Mr. Banhan seamlessly continued SRC's day-to-day operations and support of the Collaboration Agreement.

51.    Under Section 2.5 of the Collaboration Agreement, however, "[e]ach Party shall have responsibility for and ***complete discretion with respect to supervision and management of its employees*** and third-party contractors providing the Collaboration Activities." (Exhibit A, Section 2.5) (Emphasis added).

52.    At no point, has SRC breached the Collaboration Agreement with EGCC either because of its removal of Perik as CEO or otherwise.

53.    Nevertheless, EGCC has fabricated this misleading claim of material breach to wrongfully withhold payments of over $2,657,153.08 due and owed to SRC under the Collaboration Agreement in retaliation for the termination of Perik and as a means of avoiding the payment of what will likely be over $50,000,000 over the next five years under the current

11

term of the Collaboration Agreement.

54. EGCC does not dispute that it currently owes over $2,657,153.08 to SRC.

55. EGCC's and Geoghegan's actions constitute bad faith since EGCC and Geoghegan acted despite knowing that SRC had and continues to fully support the Collaboration Agreement with high-quality service and a highly qualified executive team.

56. Furthermore, EGCC and Geoghegan entered into a scheme to usurp SRC business opportunities under the Collaboration Agreement by setting up a new partnership directly with SRC's union partners and by poaching and soliciting SRC's employees.

57. Recently, Geoghegan announced during an all-EGCC employee meeting that EGCC plans to terminate the Collaboration Agreement with SRC, regardless of SRC's actions, and upon information and belief, EGCC plans to pursue a similar collaboration directly with SRC's union partners without the support of SRC.

58. Upon information and belief, EGCC and its agents and representatives have already begun to contact SRC's union partners advising them of EGCC's baseless plans to terminate the Collaboration Agreement and enter into new relationships with SRC's union partners without SRC.

59. EGCC's actions have already caused incalculable harm to SRC's business relations with union partners. Upon information and belief, in June of 2022, EGCC contacted SRC's union partners stating that they made SRC aware of their possible need to permit their union members to enroll directly through EGCC without SRC's involvement if the Collaboration Agreement is no longer enforceable based on EGCC and Geoghegan's false representations and unwillingness to engage on a careful transition timetable. Moreover, on or around June 28, 2022, EGCC coordinated with SRC's union partners to replace the SRC subdomain pages and links on

SRC's union partner websites with recently created websites controlled by EGCC. These actions are in clear violation of the Collaboration Agreement, which remains in full force and effect.

60. If SRC's union partners are forced to permit their members to enroll directly with EGCC without SRC's involvement based on EGCC's and Geoghegan's false claims that SRC breached the Collaboration Agreement, SRC will face devastating disruption to its business operations given its expense obligations to its workforce and its debt service obligations to its lender. Further, students will be left without a careful transition plan and left without the same level of coaching and advising support.

61. To help carry out their plan to interfere with SRC's business relations and to compete with SRC, EGCC and Geoghegan began a campaign to solicit and poach SRC's employees including Monica Allison, Cassandra Balvin, Chelsey Balvin, Amy Barcus, Zachary Burns, Hank Clegg, Katherine Corcoran, Cassandra Cornell, Breanna Gassner, Nyasha Jones, Katie Mattern, Lindsey Mattern, Crissie Moran, Donna Singh, and John Ward.

62. EGCC's scheme to compete with SRC is prohibited by Sections 8 and 12 of the Collaboration Agreement. Under Section 8, EGCC shall not "take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members[.]" (*See* Exhibit A, Sections 8 & 12). Section 12 provides, in part, that "all information exchanged by the Parties pursuant to and in execution of their obligations and in exercise of their rights under this Agreement shall be deemed confidential." (*Id.*) "Disclosure of confidential and proprietary information hereunder, whether orally or in written form, shall be safeguarded by the recipient…." (*Id.*)

63. EGCC and Geoghegan have taken actions to thwart SRC's ability to operate, and

the students are collateral damage in these wrongful efforts to terminate the Collaboration Agreement without just cause.

64. For example, despite the fact that the Collaboration Agreement remains in full force and effect, EGCC has begun to limit access to information required to be provided to SRC under the Agreement.

65. SRC employees rely on this information to assist prospective students who require referral to financial aid information made available by EGCC (or generally available to the public) as well as to EGCC financial aid personnel for financial aid processing, without access to this information, the student members of SRC's union partners risk losing the ability to enroll in EGCC for the upcoming Fall 2022 Semester.

66. Despite EGCC's and Geoghegan's actions, SRC has repeatedly informed EGCC that SRC intends to continue to operate by the terms of the Collaboration Agreement and has continued to provide high-quality services just as well if not better than SRC's previous management team.

**CLAIMS FOR RELIEF**
**COUNT I - Declaratory Judgment that SRC Has Not Breached the Collaboration Agreement**

67. SRC restates the allegations in the paragraphs set forth above, as if those paragraphs were fully rewritten herein.

68. As set forth above, on or around May 12, 2022, EGCC served the Notice on SRC purporting that SRC materially breached the Collaboration Agreement for removing Perik as its CEO. (*See generally*, Exhibit B).

69. Nevertheless, Section 2.5 of the Collaboration Agreement expressly permits that "[e]ach Party shall have responsibility for and ***complete discretion with respect to supervision***

14

*and management of its employees* and third-party contractors providing the Collaboration Activities." (*See* Exhibit A, Section 2.5) (Emphasis added).

70. On or around May 20, 2022, SRC served a response to EGCC's May 12, 2022 Notice explaining that Perik's removal as CEO could not constitute a breach of the Collaboration Agreement based in Section 2.5 of the Collaboration Agreement.

71. Moreover, any decrease in EGCC's enrollment resulted from HLC's decision to put EGCC on probation.

72. After SRC served its response, EGCC's president, Geoghegan, contacted union leaders to indicate EGCC's intent to terminate the Collaboration Agreement with SRC.

73. Accordingly, an actual, justiciable controversy exists between EGCC and SRC for which SRC has no adequate remedy at law.

74. SRC is entitled to a judgment declaring that SRC's removal of Perik as its CEO did not constitute a material breach of the Collaboration Agreement and that no other material breaches exist at this time.

**Count II - Breach of Contract - Failure to Pay Amounts Owed (Against EGCC)**

75. SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

76. Under Section 2 of the Collaboration Agreement, EGCC must reimburse SRC for its operational expenses. The Collaboration Agreement states, in relevant part, that "SRC will be paid by the Collaboration for the Collaboration Account within five (5) days of the receipt of the monthly deposit of Revenue from the EGCC for all open invoices…" (*See* Exhibit A).

77. EGCC failed to reimburse SRC for $300,000 worth of operating expenses that were invoiced to EGCC on May 5, 2022 ($55,000), May 19, 2022 ($55,000), and June 3, 2022 ($55,000), June 22, 2022 ($135,000).

15

78. Section 3 of the Collaboration Agreement provides that "[w]ithin thirty (30) days of the end of the summer and Fall Semesters, EGCC will provide SRC with a semester reconciliation of the Revenue Collected and Operating Expenses paid in each such semester.... EGCC will distribute the Surplus from the Collaboration Account as follows: 50% to SRC and 50% to EGCC." (*See* Exhibit A).

79. Under this provision, SRC is entitled to 50% of the Surplus of funds remaining in the Collaboration Account as shown in the semester reconciliation.

80. SRC has never received the amounts owed to it for past due profit share payments for terms prior to the Spring 2022 term.

81. By SRC's calculations, the outstanding unpaid balance is $2,357,153.08.

82. EGCC failed to reimburse SRC for its 50% allocation of the surplus remaining in the Collaboration Account, which amounts to $2,357,153.08.

83. EGCC breached the Collaboration Agreement by failing to pay SRC the $300,000 amount within the five-day period described in Section 2 of the Collaboration Agreement and EGCC breached the Collaboration Agreement by failing to pay SRC its 50% allocation of $2,357,153.08 for the surplus amounts within the Collaboration Account.

84. As a direct result of EGCC's breach, SRC has suffered damages totaling more than $2,378,621 plus accruing interest.

85. Additionally, EGCC's continued failure to pay SRC the funds owed to it under the Agreement will result in SRC defaulting on its obligations, including debt servicing and payroll, and ultimately failing as a going concern.

**Count III - Breach of Contract - Failure to Abide by Non-Competition Provisions Under Section 8 of the Collaboration Agreement (Against EGCC)**

86. SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

87. Under Section 8 of the Collaboration Agreement, EGCC is prohibited from taking any action that is competitive with the educational programs offered by the collaboration to union members.

88. EGCC, through Geoghegan, has announced during all-EGCC employee meetings that EGCC plans to terminate the Collaboration Agreement with SRC under all circumstances and he has announced that EGCC plans to pursue a similar collaboration directly with SRC's union partners without SRC.

89. EGCC has already begun to contact SRC's union partners about his intent to wrongfully terminate the Collaboration Agreement and his intent to collaborate with those union partners without SRC.

90. As stated above, EGCC has already coordinated with SRC's union partners to replace the SRC subdomain pages and links on SRC's union partner websites with recently created websites controlled by EGCC. These actions are in clear violation of the Collaboration Agreement, which remains in full force and effect.

91. EGCC has knowledge of the non-competition provision in the Collaboration Agreement, and EGCC violated that provision.

92. EGCC staff have begun to eliminate SRC's ability to pull routine reports needed assist students with the enrollment process. Moreover, SRC staff have reported that EGCC has cancelled their Microsoft 360 accounts, which are needed for SRC employee communications and video conferencing through Microsoft Teams.

93. Further, in an effort to circumvent the confidentiality requirements of Section 8, EGCC has begun a campaign to solicit and poach SRC's employees including Monica Allison,

17

Cassandra Balvin, Chelsey Balvin, Amy Barcus, Zachary Burns, Hank Clegg, Katherine Corcoran, Cassandra Cornell, Breanna Gassner, Nyasha Jones, Katie Mattern, Lindsey Mattern, Crissie Moran, Donna Singh, and John Ward.

94.  These actions directly violate Section 8 of the Collaboration Agreement.

95.  As a result of EGCC's breach of the Collaboration Agreement, and the fact that the Collaboration Agreement remains in full force and effect until at least June 30, 2027, SRC has suffered damages in an amount to be determined at trial but will likely be over $50,000,000 based on SRC's conservative estimate.

## DEMAND FOR JURY TRIAL

96.  Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an order awarding them:

a. A judgment against Defendant for all economic damages as requested herein;

b. Pre- and post-judgment interest;

c. A declaration that SRC has not breached the Collaboration Agreement by removing Perik as its CEO or otherwise;

d. Issue a preliminary injunction during the pendency of this case, to be followed by a permanent injunction, restraining and enjoining EGCC from (1) soliciting SRC's employees, (2) soliciting business opportunities directly with unions or other professional organizations in any similar arrangement as the Collaboration Agreement, and (3) entering into a contract substantially similar to the Collaboration Agreement with any third party; and

e. Such other relief as this Court deems just, proper, or necessary.

Dated: June 30, 2022

Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) (Trial Attorney)
David M. DeVillers (0059456)
Michelle M. Nicholson (0099833)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*