**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | Case No. 2:22-cv-2653 |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**STUDENT RESOURCE CENTER LLC'S MOTION FOR A PRELIMINARY
INJUNCTION**

Plaintiff Student Resource Center, LLC ("SRC") hereby moves for a preliminary

injunction against Eastern Gateway Community College ("EGCC") to (1) prevent EGCC from

wrongfully terminating the Collaboration Agreement dated June 30, 2017, as amended on or

around October 2019 and February 1, 2021 (collectively "the Agreement"); and (2) prevent

EGCC from continued breach of the non-competition provisions under Section 8 (as amended by

Amendment No. 1) of the Agreement by setting up and running a competing business.

Accordingly, for the reasons stated more fully in the accompanying brief and supporting

affidavits, SRC respectfully requests that this Court set a hearing on its Motion for Preliminary

Injunction within a reasonable amount of time before July 11, 2022, and after such hearing, enter

a preliminary injunction enjoining EGCC from: (1) terminating the Agreement dated June 30,

2017, as amended on or around October 2019 and February 1, 2021; and (2) breaching the

Agreement's non-competition provisions under Section 8 (as amended by Amendment No. 1) by setting up and running a competing business. A proposed order is attached hereto as Exhibit A.

Dated: June 30, 2022

Respectfully submitted,

/s/ Robert C. Folland
C. David Paragas (0043908)
Robert C. Folland (0065728) (Trial Attorney)
David M. DeVillers (0059456)
Michelle M. Nicholson (0099833)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | Case No. |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**STUDENT RESOURCE CENTER LLC'S BRIEF IN SUPPORT OF MOTION**
**FOR A PRELIMINARY INJUNCTION**

## INTRODUCTION

Immediate injunctive relief is necessary in this case because the defendant, Eastern Gateway Community College ("EGCC") has wrongfully engaged in conduct aimed to improperly cut SRC out of their contractually defined business relationship, threatening to cause irreparable harm and an incalculable amount of damages to SRC.

SRC and EGCC entered into a Collaboration Agreement (dated June 30, 2017, as amended on or around October 2019 and February 1, 2021, "the Agreement") in order to develop, market, and offer online courses to members of unions and professional associations. Ex. B, The Agreement, Ex. C, Declaration of Phillip W. Braithwaite, ¶¶ 3, 8. As part of the collaboration, SRC partners with unions and other professional associations to provide education programs offered by EGCC on a free or heavily-discounted basis. Ex. C, ¶ 3. Now that the collaboration has been up and running for almost five years and EGCC has become familiar with SRC's services and connections, EGCC has decided that it wants to start a competing business and no longer needs SRC, attempting to terminate the Agreement with false allegations of material breach of contract. *Id.*, ¶ 14. EGCC has withheld funds owed to SRC under the Agreement in a misguided attempt to induce SRC's consent to its improper termination and corresponded with the very unions and professional associations in partnership with SRC in order to establish direct channels with the students and cut SRC out of the equation. *Id.*, ¶ 14. As EGCC is its primary partner and accounts for 95% of its revenue, if EGCC is successful in terminating the Agreement and establishing direct connections with SRC's union contact, SRC's business will be devastated and it very likely will not be able to recover. *Id.*, ¶ 31.

In sum, SRC requests that the Court hold EGCC to the Agreement as written and order EGCC to cease its improper attempts to terminate the Agreement in violation of Sections 10 and 13.4 and its attempts to establish direct arrangements with SRC's union partners in violation of

Section 8 (as amended by Amendment No. 1). SRC is likely to prevail on the merits of these claims because the facts are clear: SRC has at all times complied with the Agreement and has helped EGCC expand its enrollment to tens of thousands of students, and SRC has afforded those students an opportunity to receive a high-quality education without incurring significant amounts of debt. EGCC, however, has engaged in conduct explicitly violating various provisions of the Agreement; and should EGCC's conduct be permitted to continue, SRC would, suffer immediate, irreparable, and incalculable harm. Under these circumstances, SRC respectfully requests a preliminary injunction to prevent the irreparable damage to its business that will occur unless EGCC's conduct is enjoined. SRC further requests that the hearing on this Motion occur before July 11, 2022 – the date upon which the Agreement will terminate absent intervention from this Court.

## STATEMENT OF FACTS

This case concerns a breach of contract by EGCC. As a pretext, EGCC alleges that SRC materially breached the Agreement by terminating its former CEO and seeks to terminate the Agreement on that basis. *Id.*, ¶ 14, Ex. D, Notice of Material Breach from EGCC to SRC dated May 12, 2022. SRC disputes that the termination of its own CEO is a breach of the Agreement and, instead, alleges numerous contractual violations on the part of EGCC, including improper termination under Sections 10 of the Agreement, failure to pay amounts owed under Exhibit B of the Agreement, and breach of non-competition provisions under Section 8 of the Agreement (as amended by Amendment No. 1). Ex. C, ¶¶ 16, 18; Ex. E, SRC's Response dated May 20, 2022.

**Student Resource Center's Business Supports Students.**

SRC's mission is to provide support to students in order to attain their educational goals

through an online curriculum with little to no student debt. To accomplish this goal, SRC partners with higher education institutions in the development and marketing of online courses and programs for unions and other professional associations in light of the substantial costs and debt burden associated with traditional four-year degrees. Ex. C, ¶ 4.

More specifically, SRC provides a number of services to partnering schools, including: (i) helping schools accelerate the growth of online offerings tailored to adult learners; (ii) identifying courses and programs which may meet the unmet needs of adult learners; (iii) assisting with awareness and enrollment efforts of the educational benefit program; and (iv) providing non-academic coaching and other student support services to improve student persistence and completion outcomes. *Id*., ¶ 5.

SRC also partners with unions and other professional associations to provide the educational programs offered by SRC's partnering schools on a free or heavily discounted basis as a benefit of union or association membership. Further, if a union or association member is interested in one of the educational programs offered by a collaborating school, SRC provides that prospective student with guidance and support during the application and enrollment processes, as well as ongoing mentoring and other services post-enrollment. SRC's services and relationships with union partners significantly reduce the cost barriers to traditional education offerings and enable EGCC's students to complete their degrees with little to no debt. *Id*., ¶ 6.

**SRC Entered into a Collaboration Agreement with EGCC.**

EGCC is an Ohio-based, public-institution of higher learning founded in 1968. EGCC offers associate degrees and certificates in numerous areas, and it conducts classes online and in person in its Youngstown, Ohio and Steubenville, Ohio campuses. *Id*., ¶ 7.

EGCC is currently SRC's primary institutional partner, which represents 95% of SRC's revenues as of June 1, 2022. *Id*., ¶ 10.

The terms of the Agreement at issue in this matter include, but are not limited to, the following:

- "Each Party shall have responsibility for and complete discretion with respect to supervision and management of its employees and third-party contractors providing the Collaboration Activities." Ex. B, **Section 2.5**.

- "This Agreement shall be terminated prior to expiration of the Term as follows: by either Party for material breach of any of the terms hereof by the other party if such breach shall not have been cured within sixty (60) calendar days after written notice of breach is delivered to the defaulting party…" *Id*., **Section 10.2(b)**.

- "[A]ll information exchanged by the Parties pursuant to and in execution of their obligations and in exercise of their rights under this Agreement shall be deemed confidential. Disclosure of confidential and proprietary information hereunder, whether orally or in written form, shall be made available only to the receiving Party's employees or other agents who have a need to know such information for purposes of performing the Party's obligations, or for purposes of exercising the Party's rights, under this Agreement and such employees or other agents shall have a legal obligation to the employer or principal, as applicable, not to disclose such information to third parties." *Id*., **Section 12**.

- **Section 13.4** sets out certain steps to be taken in the event that any controversy or claim arises out of the Agreement, including a 10 day period for each party's Coordinator to attempt to resolve the issue, a 15 day period for each party's CEO

to attempt to resolve the issue, and confidential third party mediation. This section specifically provides that it does not limit a party's ability to seek interim equitable relief to protect its rights and interests. *Id*., **Section 13.4**

- "SRC will invoice the Collaboration for its Operating Expenses incurred in the previous month. SRC will be paid by the Collaboration from the Collaboration Account within five (5) days of the receipt of the monthly deposit of Revenue from the EGCC for all open invoices…" *Id*., **Exhibit B, Paragraph 2**.

- "Within thirty (30) days of the end of the Summer and Fall Semesters, EGCC will provide SRC with a semester reconciliation of the Revenue collected and Operating Expenses paid in each such semester ("Semester Reconciliation")… If there is a surplus of funds remaining in the Collaboration Account as shown by the Semester Reconciliation ("Surplus"), EGCC will distribute the Surplus from the Collaboration Account as follows: 50% to SRC and 50% to EGCC." *Id*., **Exhibit B, Paragraph 3**.

- "During the Term, neither SRC nor EGCC shall take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Education Programs provided by the Collaboration to union members; provided however, that once EGCC passes through an enrollment threshold of twenty-three thousand (23,000) or more Initiative Students, SRC may enter into arrangements similar to, or the same as, the Collaboration with other existing colleges…" *Id*., **Amendment No. 1 to the Agreement, Part (c).**

- "Term will be modified to remain in full force and effect to June 20th, 2027." *Id*., **Amendment No. 1 to Agreement, Part (d)**.

As a result of SRC's efforts through the Agreement, EGCC's enrollment has grown from approximately 5,549 students in Fall Semester 2016 to over 42,500 students in the Fall Semester 2021. As a result of the collaboration's success, and through its contractual arrangements with EGCC, SRC has generated millions of dollars in revenue while simultaneously promoting access to higher education for tens of thousands of students. Ex. C, ¶ 9.

**EGCC's Allegations of Material Breach of the Agreement are a Red Herring.**

In March of 2022, SRC terminated its CEO, Michael Perik for engaging in questionable conduct related to the sale of SRC (effective April 1, 2022). Further, SRC put executives Nicole Rowe Colclasure, John Hasley, and Daniel Jones on probation. Shortly thereafter, those executives resigned. *Id.*, ¶ 11.

SRC replaced Mr. Perik with Phillip Braithwaite. Mr. Braithwaite is an experienced, multi-time CEO. He has extensive experience in managing education (and more specifically online education aimed at non-traditional learners) and technology-enabled businesses. *Id.*, ¶ 12.

SRC further hired an experienced Chief of Staff, Senior Vice President of Marketing, Vice President of Student Operations, and Vice President of Partnership Development. *Id.*, ¶ 13.

On May 12, 2022, EGCC, served a notice on SRC (the "Notice," incorrectly dated May 10, 2022) falsely claiming that SRC was in material breach of the Agreement because of "unilateral decisions regarding [SRC's] executive management team." The Notice, Exhibit C. Specifically, EGCC took issue with SRC's decision to terminate Perik and claimed that his termination "led to the departure of other leadership team members" who resigned shortly after Perik's termination. *Id.* It even went so far as to claim that "SRC unilaterally removed these individuals…" and claimed that SRC was in material breach as a result. *Id.*, ¶ 14; Ex. D.

The retention of Mr. Perik as CEO or of any other member of the leadership team, however, were not terms of the Agreement. Ex. B. Furthermore, at no point did EGCC give notice of the dispute in an attempt to resolve the issue as required under Section 13.4 of the Agreement. Ex. C, ¶ 16.

On May 20, 2022, SRC responded to the Notice ("the Response") explaining that Perik's removal as CEO was not a material breach of the Agreement. The Response, Exhibit D. After SRC served the Response, EGCC's President, Michael J. Geoghegan ("Geoghegan"), contacted union leaders to indicate EGCC's intent to terminate the Agreement with SRC. *Id.*, Ex. C, ¶ 16.

If EGCC is permitted to terminate the Agreement under the terms of the Notice, the Agreement will expire July 11, 2022. Ex. C, ¶ 15.

**EGCC's Breaches of the Agreement.**

*Improper Termination*

In the event of a dispute between the parties, Section 13.4 requires (1) notice; and (2) "the immediate referral to each Party's Coordinator for resolution." During the ten day period after the notice, the Coordinator for each Party is to "meet and negotiate in good faith to resolve the dispute." In the event that the Coordinators are unable to resolve the dispute, the matter shall be referred to the CEOs of each party who shall meet and negotiate in good faith during the fifteen day period after the expiration of the coordinator period. In the event that the CEOs are unable to resolve the dispute, then the parties are obligated to make good faith efforts to settle the dispute by confidential third party mediation. Nothing in Section 13.4 exempts a party from the obligations thereunder upon a belief that cure to the breach is unlikely. Since serving the Notice on SRC on

May 12, 2022, and further since SRC's response thereto, EGCC has made no efforts to resolve the dispute as required under Section 13.4  Ex. B, Section 13.4.

*Failure to Make Payments Owed*

Furthermore, EGCC has wrongfully withheld payments of over $2,650,000 due and owed to SRC under the Agreement in order to induce SRC's consent to its wrongful termination attempts.  Ex. C, ¶ 22.

Per Exhibit B, Paragraph 3 of the Agreement, within 30 days of the end of the summer and fall semesters, EGCC is to provide SRC a semester reconciliation of the revenue collected and operating expenses paid in each semester and to pay SRC 50% of the surplus from the collaboration account (SRC's profit share).  Under this provision, SRC is entitled to 50% of the surplus of funds remaining in the Collaboration Account as shown in the semester reconciliation.  Ex. B, Exhibit B, Paragraph 3.  The summer 2021 Semester ended on August 1, 2021, and the fall 2021 semester ended on December 12, 2021, yet SRC has not received a formal reconciliation on which both parties signed off for either semester.  Ex. C, ¶ 20.  Furthermore, by SRC's calculations, EGCC owes $2,357,153.08 in past due profit share payments to SRC related to prior terms that have yet to be paid.  Ex. C, ¶ 21; Ex. F, Declaration of Aimee Leishure, ¶ 7.

Under Exhibit B, Paragraph 2 of the Agreement, EGCC must reimburse SRC for its operational expenses. The Agreement states, in relevant part, that "SRC will be paid by the Collaboration for the Collaboration Account within five (5) days of the receipt of the monthly deposit of Revenue from the EGCC for all open invoices…"  Ex. B, Exhibit B, Paragraph 2.  SRC provided EGC invoices for its operating expenses on each of May 5, 2022 (for $55,000), May 19, 2022 (for $55,000), June 3, 2022 ($55,000), and June 22, 2022 (for $135,000) totaling an unpaid balance of $300,000, yet no payment was made.  Ex. C, ¶ 19; Ex. F, ¶ 6.  Through its counsel, SRC

reached out to EGCC about the missing funds and other issues on May 26, 2022, June 10, 2022, and June 17, 2022.  To date, SRC has received no payment of those funds.  Ex. C, ¶ 23.

EGCC does not dispute that it owes funds for the summer and fall 2021 terms to SRC.  Ex. C, ¶ 23; Ex. F, ¶ 8.

*EGCC's Attempts to Establish Competing Arrangements Direct with Union Partners*

EGCC's refusal to pay the funds owed to SRC is intended to induce SRC to consent to EGCC's improper attempts to terminate the Agreement and, ultimately, part of EGCC's scheme to usurp SRC business opportunities under the Agreement by setting up a new partnership directly with SRC's union partners.  Ex. C, ¶ 24.

Recently, Geoghegan announced during all-EGCC employee meetings that EGCC plans to terminate the Agreement with SRC.  *Id.*, ¶ 25. Furthermore, on our around June 28, 2022, three of SRC's union partners replaced the SRC subdomain pages and links on their websites to recently created websites controlled by EGCC. These actions demonstrate EGCC's direct contact with SRC's union partners and EGCC's attempt to compete with SRC in clear violation of the Agreement, which remains in full force and effect.  *Id.*, ¶ 28.

EGCC's scheme to establish programs directly with union partners is prohibited by Section 8 of the Agreement (as amended by Amendment No. 1).  Under Section 8, EGCC shall not "take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members[.]"  Ex. B, Section 8 (as amended by Amendment No. 1).  Despite the fact that the Agreement remains in full force and effect, EGCC has begun to limit access to information required to be provided to SRC under the Agreement and that SRC employees rely on to assist prospective students who require referral to financial aid information made available by EGCC (or

generally available to the public) as well as to EGCC financial aid personnel for financial aid processing.  Ex. C, ¶ 26.  Without access to this information, the student members of SRC's union partners risk losing the ability to enroll in college for the upcoming fall semester.  EGCC's students are collateral damage in EGCC's wrongful efforts to terminate the Agreement without cause.  *Id.*

**SRC Has Suffered and Will Continue to Suffer Irreparable Harm Due to EGCC's Actions.**

EGCC's actions have already caused incalculable harm to SRC's business relations with union partners.  In June of 2022, after Geoghegan contacted SRC's union partners, certain of those partners made SRC aware of their possible need to permit their union members to enroll directly through EGCC without SRC's involvement if the Agreement is no longer enforceable based on EGCC and Geoghegan's false representations and unwillingness to engage on a careful transition timetable.  *Id.*, ¶ 30.

If SRC's union partners are forced to require their members to enroll directly with EGCC without SRC's involvement based on EGCC's and Geoghegan's false claims that SRC breached the Agreement, SRC will face devastating disruption to its business operations and even greater damage to the enterprise value of its business.  If EGCC is able to cut SRC out of the Agreement and establish relationships direct with SRC's union partners, the value of SRC as a going concern will plummet.  *Id.*, ¶ 31.

Perhaps most importantly, EGCC's attempts to cut out SRC in violation of the Agreement undermines SRC's ability to service the union members and students in a high-quality manner by stripping away SRC's advising and coaching functions and attempts at evidence-based student success tracking.  *Id.*, ¶ 32.

**ARGUMENT**

Rule 65 of the Federal Rules of Civil Procedure permits this Court to issue injunctive relief. *See* FRCP 65.  In determining whether to grant or deny injunctive relief, a Court must consider the following factors:  (1) whether the movant has a likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.  *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31272, at \*10-11 (S.D. Ohio Mar. 13, 2015) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)).

"The decision whether to issue a temporary restraining order or preliminary injunction falls within the sound discretion of the district court.  Ultimately, '[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'"  *Marshall*, 2015 U.S. Dist. LEXIS 31272, at \*11 (quoting *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998)).  Here, SRC seeks a preliminary injunction to preserve the status quo by preventing EGCC's breaches of the Agreement.

## I.     SRC is likely to succeed on the merits of its claims.

To show a likelihood of success on the merits, a plaintiff must demonstrate more than a mere possibility of success, but it need not " 'prove [its] case in full.' " *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)).

SRC asserts that EGCC's efforts to terminate the Agreement, its failure to pay funds due and owed, and its efforts to circumvent SRC and cut it out of the Agreement are all in breach of

the Agreement. To establish a breach of contract claim under Ohio law, SRC must show: (1) that a contract existed; (2) that SRC performed under that contract; (3) that EGCC breached that contract; and (4) that SRC suffered damages as a result of that breach. *Pavlovich v. National City Bank*, 435 F.3d 560,565 (6th Cir. 2006).

### A. The Existence of the Agreement

There is no dispute that SRC and EGCC entered into the Agreement on June 30, 2017 – which they later amended on or around October 2019 and on February 1, 2021. *See* Ex. B; Ex. C, ¶ 3.

### B. EGCC's Breaches of the Agreement

### 1. EGCC's Continued Non-Payment of Owed Funds

Under Exhibit B of the Agreement, EGCC is responsible for reimbursing SRC for its operational expenses and distributing to SRC 50% of the Surplus from the Collaboration Account at the end of each semester. Ex. B, Exhibit B.

Exhibit B, Paragraph 2 of the Agreement, entitled "Reimbursement of SRC Operation Expenses," provides: "SRC will be paid by the Collaboration from the Collaboration Account within five (5) days of the receipt of the monthly deposit of Revenue from EGCC for all open invoices…" *Id.*, Exhibit B, Paragraph 2. EGCC failed to reimburse SRC for $300,000 worth of operating expenses that were invoiced to EGCC on May 5, 2022, May 19, 2022, June 3, 2022, and June 22, 2022. Ex. C, ¶ 19; Ex. F, ¶ 6.

Exhibit B, Paragraph 3 of the Agreement provides: "Within thirty (30) days of the end of the summer and fall semesters, EGCC will provide SRC with a semester reconciliation of the Revenue Collected and Operating Expenses paid in each such semester… EGCC will distribute

the Surplus from the Collaboration Account as follow: 50% to SRC and 50% to EGCC." SRC is entitled to 50% of the surplus of funds remaining in the Collaboration Account as shown in the semester reconciliation. Ex. B, Exhibit B, Paragraph 3. The summer 2021 semester ended on August 1, 2021 and fall 2021 semester ended on December 13, 2021 yet SRC has not received a formal reconciliation on which both parties signed off for either semester. Ex. C, ¶¶ 20-1. According to SRC's calculations, the outstanding unpaid balance is $2,357,153.08. Ex. C, ¶ 21; Ex. F, ¶ 7.

EGCC does not dispute that it owes over $2,650,000 to SRC. Ex. C, ¶ 22; Ex. F, ¶ 8. Instead of paying SRC the funds owed to it, EGCC has elected to use the funds as leverage to induce SRC into complying with its misguided efforts to terminate the Agreement. Ex. C, ¶ 22.

### 2. EGCC's Efforts to Terminate the Agreement

At issues is SRC's performance under the Agreement – specifically whether SRC's termination of its CEO was a material breach of the Agreement as asserted by EGCC. This allegation is simply meritless. Section 2.5 of the Agreement specifically grants each party Each Party "complete discretion with respect to supervision and management of its employees." Ex. B, Section 2.5

Even if EGCC's claim of material breach was reasonable, Section 13.4 of the Agreement enumerates certain steps to be taken in the event that a claim arises out of the Agreement, including notice and negotiations within certain designated periods after said notice. *Id.*, Section 13.4. Rather than undertake the agreed upon dispute resolution methods provided in Section 13.4, EGCC immediately served a notice of material breach and intent to terminate. Ex. D. There is no indication in said notice that it was also intended to serve as the notice required under 13.4, and none of the required negotiations have taken place since SRC's receipt of said notice. Ex. C, ¶ 17.

Also at issue is whether EGCC's notice of material breach and intent to terminate breached the Agreement.  Simply put, the answer is yes.  Section 13.4 provides the following:

> 13.4    Dispute Resolution. In the event of any controversy or claim, whether based on contract, tort, statute, or other legal or equitable theory (including any claim of fraud, misrepresentation, or fraudulent inducement), arising out of or related to this Agreement (the "Dispute), arises between the Parties, then either Party may give written notice of such Dispute to the other Party and the matter at issue shall be immediately referred to each Party's Coordinator for resolution. During the ten (10) day period after delivery of such notice (the "Coordinator Resolution Period"), the Coordinator for each Party shall meet and negotiate in good faith to resolve the Dispute. If the Coordinators are unable to resolve the Dispute during Coordinator Resolution Period, then the matter at issue shall be immediately referred to the Chief Executive Officer (or equivalent executive officer) of each of the Parties for resolution. During the fifteen (15) day period after expiration of the Coordinator Resolution Period (the "CEO Resolution Period"), the Chief Executive Officer (or equivalent executive officer) of each of the Parties shall meet and negotiate in good faith to resolve the Dispute. If the Chief Executive Officer (or equivalent executive officer) of each of the Parties is unable to settle the Dispute during the CEO Resolution Period, then the Parties shall make a good faith effort to settle the Dispute by confidential third party mediation within the State of Ohio, with such mediator being chosen by agreement of the Parties, before initiating litigation and the costs of such mediation shall be shared by the parties. Notwithstanding the foregoing, either party may seek interim equitable relief pursuant to Section 13.5 against another party through any court of competent jurisdiction to protect its rights and interests, or to enforce the obligations of the other party while participating in good faith negotiations or mediation.

SRC received no Section 13.4 notice.  *Id.*  Even if one were to assume that the May 10, 2022 notice of material breach was also a notice of dispute as required under Section 13.4, no negotiations took place between the Parties' Coordinators in the ten day period after receipt of the notice, no negotiations took place between the Parties' CEOs in the fifteen days after the ten day coordination resolution period concluded, and no third party mediation took place.  *Id.*

### 3.    EGCC's Failure to Abide by Non-Competition Provisions

Under Section 8 of the Agreement, EGCC is prohibited from taking any action that is competitive with the educational programs offered by the collaboration to union members.  Ex. B, Section 8 (as amended by Amendment No. 1).

Geoghegan announced during all-EGCC employee meetings that EGCC plans to terminate the Agreement with SRC and plans to pursue a similar collaboration directly with SRC's union

partners without SRC. Ex. C, ¶ 25. Three of SRC's union partners have already replaced the SRC subdomain pages and links on their websites to recently created websites controlled by EGCC. *Id.*, ¶ 28. This clearly demonstrate EGCC's direct contact with SRC's union partners and EGCC's attempt to compete with SRC in clear violation of the Agreement. *Id.*

### C. SRC's Performance of the Contract

EGCC's contention that SRC's termination of its former CEO was a material breach of the Agreement is patently false and counter to the plain language of the Agreement. Section 2.5 of the Agreement clearly states: "Each Party shall have responsibility for and complete discretion with respect to supervision and management of its employees and third-party contractors providing the Collaboration Activities." Ex. B, Section 2.5. Furthermore, there is no provision requiring the continued employment of Mr. Perik or any other member of the ERC leadership team. Ex. B.

"Contractual language is ambiguous ... where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186 (2003)). There is no ambiguity here. Section 2.5 of the Agreement specifically allows each party to manage its own employees at its discretion.

### D. Damages

The damages resulting from EGCC's breaches of the Agreement are overwhelming. In addition to the more than $2,650,000 in payments owed currently outstanding under the Agreement, if SRC's union partners are forced to permit their members to enroll directly with EGCC without SRC's involvement based on EGCC's and Geoghegan's false claims that SRC

16

breached the Agreement, SRC will face devastating disruption to its business operations given its expense obligations to its workforce and its debt service obligations to its lender.  Ex. C, ¶ 31. Most importantly, however, if SRC loses its union connections, its enterprise value will plummet making its continued existence extremely unlikely.  *Id.*, ¶ 32.

## II.     SRC will suffer irreparable harm if injunctive relief is not granted.

"To demonstrate irreparable harm, the plaintiffs must show that ... they will suffer actual or imminent harm rather than harm that is speculative or unsubstantiated."  *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  Harm is irreparable if it cannot be fully compensated by monetary damages.  *Overstreet v. Lexington-Fayetee Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).

The facts here are as follows:  (1) EGCC is breaching the Agreement in an attempt to unilaterally and prematurely terminate the Agreement and set up identical collaborations directly with SRC's union partners; (2) SRC derives 95% of its revenue from the Agreement and stands to lose not only the value of its bargain over the next five years if EGCC is allowed to terminate the Agreement, but, also, more importantly, its value as a going concern.  Ex. C.  While technically financially solvent for the time being, if EGCC's conduct is permitted to continue, the value of SRC will be destroyed.  *Id.*, ¶ 31.

### A.     Irreparable Damages

Ohio courts have held that an injury is not fully compensable by money damages if the nature of Plaintiff's loss would make damages difficult to calculate.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992).  In this case, not only it is impossible to calculate the value of SRC's portion of the Agreement and SRC's relationships with the unions, but it is impossible to

measure the damage wrought by a competitor acting in violation of a non-competition provision. *Id.*, ¶ 30.

Simply put – starting a competing business in violation of a non-compete provision is a damage that, once enacted, cannot be undone, with monetary damages or otherwise. The Sixth Circuit has held that the breach of a non-compete agreement and the unauthorized solicitation of customers constitutes irreparable injury. *See Basicomputer Corp. v. Scott*, 937 F.2d 507, 512 (6th Cir. 1992). And this Court has found that the failure to enforce a valid restrictive covenant can constitute irreparable harm. *See Avery Dennison Corp. v. Kitsonas,* 118 F. Supp. 2d 848, 855 (S.D. Ohio 2000). Some courts have even held that a mere violation of a covenant not to compete is an irreparable injury. *See Dayton Superior Corp. v. Yan*, No. 3:12-cv-380, 2012 WL 5497804, at *8 (S.D. Ohio Nov. 13, 2012).

Geoghegan announced in all-EGCC meetings his plans to terminate the Agreement. On the webpages of certain of SRC's union partners, links to SRC's website have already been replaced with links to EGCC. Ex. C, ¶¶ 25, 28. EGCC is acting, in violation of the non-competition provision of the Agreement, to set up a competing business and solicit SRC's partners and causing irreparably injury to SRC as it does so.

### B.     "Completely [W]iped [O]ut"

Furthermore, courts have recognized that the irreparable harm element of the equitable relief framework may be satisfied on a showing that where, as here, financial hardship would be so severe that it would cause the moving entity to be "completely wiped out," thereby rendering "a later judgment on the merits meaningless." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978). SRC derives 95% of its revenue from its relationship with EGCC, and much of its value as a going concern is a result of its relationships with its union partners. Ex. C, ¶¶ 10, 31. EGCC

is high jacking SRC's partners, and should this conduct be allowed to persist even for a short period of time, it is unclear how these relationships will ever be mended.  As explained above, if EGCC is permitted to terminate the Agreement while litigation is ongoing and establish relationships directly with SRC's union partners, SRC will lose not only its main revenue source but also the main source of its value as an enterprise which will threaten its continued existence. *Id*., ¶¶ 30-1.

## III.    **Third Party Harm and Public Interest**

Under the Agreement as it currently stands, SRC and EGCC working in concert are enabling over 40,000 students to receive free or reduced cost secondary education.  *Id.*, ¶ 9. EGCC's attempts to cut out SRC in violation of the Agreement undermine SRC's ability to service union members and students in a high-quality manner by stripping away SRC's advising and coaching functions and attempts at evidence-based student success tracking.  *Id.*, ¶ 32.

While EGCC will certainly claim that upholding the Agreement would be to their detriment, there can be very little harm to it, and ultimately the public interest will be served, by preserving the status quo for the time necessary to adjudicate the merits of this dispute.

### CONCLUSION AND RELIEF REQUESTED

For these reasons, the Court should grant the motion for a preliminary injunction and prohibit EGCC from: (1) terminating the Agreement dated June 30, 2017, as amended on or around October 2019 and February 1, 2021; and (2) breaching the Agreement's non-competition provisions under Section 8 (as amended by Amendment No. 1) by starting and operating a competing business.

Dated: June 30, 2022 Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) (Trial Attorney)
David M. DeVillers (0059456)
Michelle M. Nicholson (0099833)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*

[INSERT CERTIFICATE OF SERVICE]