# EXHIBIT C – DECLARATION OF PHILLIP W. BRAITHWAITE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| STUDENT RESOURCE CENTER, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>EASTERN GATEWAY COMMUNITY COLLEGE,<br><br>    *Defendant*. | **DEMAND FOR JURY TRIAL**<br><br>Case No. |

**DECLARATION OF Phillip W. Braithwaite**

STATE OF TEXAS

                         : ss.

COUNTY OF TRAVIS

I, Phillip W. Braithwaite, being first duly sworn, deposes and states as follows:

    1.    I am an individual currently residing in the State of Texas and am over the age of 18 years. I have personal knowledge of the facts stated herein and am competent to testify with respect to them.

    2.    I submit this affidavit in support of Student Resource Center, LLC's ("SRC") Motion for a Preliminary Injunction filed with the Court in this case.

    3.    I have read, and I am familiar with the Collaboration Agreement dated June 30, 2017, as amended on or around October 2019 and February 1, 2021 (collectively, the "Agreement"), which remains in force until at least June 30, 2027. A copy of the Agreement is attached to the brief in support of the motion as Exhibit B.

1

4. SRC's mission is to provide support to students in order to attain their educational goals through an online curriculum with little to no student debt.  To accomplish this goal, SRC partners with higher education institutions in the development and marketing of online courses and programs for unions and other professional associations in light of the substantial costs and debt burden associated with traditional four-year degrees.

5. More specifically, SRC provides a number of services to partnering schools, including: (i) helping schools accelerate the growth of online offerings tailored to adult learners; (ii) identifying courses and programs which may meet the unmet needs of adult learners; (iii) assisting with awareness and enrollment efforts of the educational benefit program; and (iv) providing non-academic coaching and other student support services to improve student persistence and completion outcomes.

6. SRC also partners with unions and other professional associations to provide the educational programs offered by SRC's partnering schools on a free or heavily discounted basis as a benefit of union or association membership.  Further, if a union or association member is interested in one of the educational programs offered by a collaborating school, SRC provides that prospective student with guidance and support during the application and enrollment processes, as well as ongoing mentoring and other services post-enrollment.  SRC's services and relationships with union partners significantly reduce the cost barriers to traditional education offerings and enable EGCC's students to complete their degrees with little to no debt.

7. EGCC is an Ohio-based, public-institution of higher learning founded in 1968.  EGCC offers associate degrees and certificates in numerous areas, and it conducts classes online and in person in its Youngstown, Ohio and Steubenville, Ohio campuses.

8. SRC and EGCC entered into the Agreement in order to develop, market, and offer online courses to members of unions and professional associations. As part of the collaboration, SRC partners with unions and other professional associations to provide education programs offered by EGCC on a free or heavily-discounted basis.

9. As a result of SRC's efforts through the Agreement, EGCC's enrollment has grown from approximately 5,549 students in Fall Semester 2016 to over 42,500 students in the Fall Semester 2021. As a result of the collaboration's success, and through its contractual arrangements with EGCC, SRC has generated millions of dollars in revenue while simultaneously promoting access to higher education for tens of thousands of students.

10. EGCC is currently SRC's primary institutional partner, which represents 95% of SRC's revenues as of June 1, 2022.

11. In March of 2022, SRC terminated its CEO, Michael Perik for engaging in questionable conduct related to the sale of SRC (effective April 1, 2022). Further SRC put executives Nicole Rowe Colclasure, John Hasley, and Daniel Jones on probation. Shortly thereafter, those executives resigned.

12. SRC chose me to replace Mr. Perik. I am an experienced, multi-time CEO. I have extensive experience in managing education (and more specifically online education aimed at non-traditional learners) and technology-enabled businesses.

13. SRC quickly hired other highly qualified executives to support SRC's operations. For example, SRC hired Cecilia Retelle Zywicki as SRC's Chief of Staff. Ms. Retelle Zywicki previously worked as the Chief Operating Officer at PresenceLearning, a leading provider of live online special education-related services. SRC hired Pete Schatschneider as SRC's Senior Vice President of Marketing. Mr. Schatschneider had

previously worked for over 15 years at Bisk Education designing infrastructure solutions to online higher-education institutions. In addition, SRC hired Erika Kotterer as SRC's Vice President of Student Operations. Ms. Kotterer worked previously as the Assistant Vice President of Admissions at Southern New Hampshire University. SRC also hired Cecil Banhan as SRC's Vice President of Partnership Development. Mr. Banhan previously worked in that same role for All Campus.

14. On May 12, 2022, EGCC, served a notice on SRC (the "Notice," incorrectly dated May 10, 2022) falsely claiming that SRC was in material breach of the Agreement because of "unilateral decisions regarding [SRC's] executive management team." I have read, and I am familiar with the Notice – a copy of which is attached to the brief in support of the motion as Exhibit D. Specifically, EGCC took issue with SRC's decision to terminate Perik and claimed that his termination "led to the departure of other leadership team members" who resigned shortly after Perik's termination. It even went so far as to claim that "SRC unilaterally removed these individuals…" and claimed that SRC was in material breach as a result.

15. If EGCC is permitted to terminate the Agreement under the terms of the Notice, the Agreement will expire July 11, 2022.

16. On May 20, 2022, SRC responded to the Notice explaining that Perik's removal as CEO could not constitute a breach of the Agreement ("the Response"). I have read, and I am familiar with the Response – a copy of which is attached to the brief in support of the motion as Exhibit E. After SRC served the Reponse, EGCC's president, Michael J. Perik, contacted union leaders to indicate EGCC's intent to terminate the Agreement with SRC.

4

17. Since serving the Notice on SRC on May 12, 2022, and further since SRC's response thereto, EGCC has made no efforts to resolve the dispute as required under Section 13.4.  SRC has received no Section 13.4 Notice, no negotiations took place between the Parties' Coordinators or CEOs, and no third party mediation has taken place.

18. EGCC has withheld both reimbursements for operating expenses and SRC's share of the surplus of the Collaboration Account under Exhibit B of the Agreement.

19. SRC provided EGC invoices for its operating expenses on each of May 5, 2022 (for $55,000), May 19, 2022 (for $55,000), June 3, 2022 (for $55,000), and June 22, 2022 (for $135,000) totaling an unpaid balance of $300,000, yet no payment was made.

20. The summer 2021 Semester ended on August 1, 2021, and the fall 2021 semester ended on December 12, 2021, yet SRC has not received a formal reconciliation on which both parties signed off for either semester.

21. Furthermore, I am familiar with SRC's and EGCC's process for reconciliation, and based on SRC's calculations, EGCC owes $2,357,153.08 in past due profit share payments to SRC related to prior terms.

22. All told, EGCC has wrongfully withheld payments of over $2,650,000 due and owed to SRC under the Agreement in order to induce SRC's consent to its wrongful termination attempts.

23. Through its counsel, SRC reached out to EGCC about the missing funds and other issues on May 26, 2022, June 10, 2022, and June 17, 2022.  To date, SRC has received no payment of those funds.  EGCC does not dispute that it owes funds for the summer and fall 2021 terms to SRC.

24. It is my belief that EGCC's refusal to pay the funds owed to SRC is intended to induce SRC to consent to EGCC's improper attempts to terminate the Agreement and, ultimately, part of EGCC's scheme to usurp SRC business opportunities under the Agreement by setting up a new partnership directly with SRC's union partners.

25. Recently, I learned that Geoghegan announced during all-EGCC employee meetings that EGCC plans to terminate the Agreement with SRC. Furthermore, I have reason to believe that EGCC plans to pursue a similar collaboration directly with SRC's union partners without the support of SRC.

26. Despite the fact that the Agreement remains in full force and effect, EGCC has begun to limit access to information required to be provided to SRC under the Agreement and that SRC employees rely on to assist prospective students who require referral to financial aid information made available by EGCC (or generally available to the public) as well as to EGCC financial aid personnel for financial aid processing. Without access to this information, the student members of SRC's union partners risk losing the ability to enroll in college for the upcoming fall semester.

27. On June 10, 2022, I was informed via email that certain SRC employees had lost access to their Microsoft accounts linked through EGCC.

28. On our around June 28, 2022, three of SRC's union partners replaced the SRC subdomain pages and links on their websites to recently created websites controlled by EGCC. These actions demonstrate EGCC's direct contact with SRC's union partners and EGCC's attempt to compete with SRC in clear violation of the Agreement, which remains in full force and effect.

29. It is my belief that EGCC has withheld the funds owed to SRC under the

Agreement in a misguided attempt to induce SRC's consent to its improper termination and to correspond with the very unions and professional associations in partnership with SRC in order to establish direct channels with the students and cut SRC out of the equation. As EGCC is its primary partner and accounts for 95% of its revenue, timely payments from EGCC are needed to sustain SRC's business operations.

30. EGCC's actions have already caused incalculable harm to SRC's business relations with union partners. In June of 2022, after Geoghegan contacted SRC's union partners, certain of those partners made SRC aware of their possible need to permit their union members to enroll directly through EGCC without SRC's involvement if the Agreement is no longer enforceable based on EGCC and Geoghegan's false representations and unwillingness to engage on a careful transition timetable.

31. If SRC's union partners are forced to permit their members to enroll directly with EGCC without SRC's involvement based on EGCC's and Geoghegan's false claims that SRC breached the Agreement, SRC will face devastating disruption to its business operations and even greater damage to the enterprise value of its business. If EGCC is able to cut SRC out of the Agreement and establish relationships direct with SRC's union partners, the value of SRC as a going concern will plummet.

32. Perhaps most importantly, EGCC's attempts to cut out SRC in violation of the Agreement undermines the Collaboration's ability to service the union members and students in a high-quality manner by stripping away SRC's advising and coaching functions and attempts at evidence-based student success tracking.

33. I reviewed the Brief in Support of SRC's Motion for a Preliminary Injunction and as the factual matters set forth in the Brief, those matters are true and accurate to the best

7

of my belief.

**FURTHER DECLARANT SAYETH NOT.**

/s/ Phillip W. Braithwaite
Phillip W. Braithwaite