# EXHIBIT E – RESPONSE



41 S. High Street, Suite 3300
Columbus, OH 43215-6104 U.S.A.
(614) 628-0096
Fax (614) 628-1433

www.btlaw.com

C. David Paragas
(614) 628-1407
david.paragas@btlaw.com

May 20, 2022

**VIA U.S. Mail and Electronic Mail**

Victoria Ferrise
Brennan Manna Diamond
250 Civic Center Drive, Suite 300
Columbus, Ohio 43215
vlferrise@bmdllc.com
330-374-5184

Re: *Eastern Gateway Community College Correspondence Dated May 10, 2022*

Dear Ms. Ferrise:

Please find this letter in response to the correspondence from Michael Geoghegan on behalf of your client, Eastern Gateway Community College ("EGCC"), which was dated May 10, 2022. Student Resource Center, LLC ("SRC") remains just as committed today to assist in the development and marketing of high-quality online courses and programs to members of unions, as well as providing support services to students, just as much as it did when the Parties entered into the Agreement[1] on June 30, 2017. As you likely know, EGCC is in arrears over $2.2 million under the Agreement, and that balance will continue to grow. Should the Agreement terminate and that balance remain, EGCC will be in default and accrue interest on that amount. Moreover, SRC has not breached, let alone materially breached the Agreement. In fact, the Agreement's plain and unambiguous terms entitle SRC (and SRC alone) to manage its staff as it deems fit. Therefore, EGCC fails to purport any breach by SRC.

EGCC's correspondence claims that SRC "is in material breach of the Agreement because of its unilateral decision to terminate members of its management team who were intimately familiar with the Collaboration." The correspondence also claims that "[i]t is reasonable for EGCC to view this as a material change to the nature of the Collaboration[.]" Neither of EGCC's assertions are properly based in law or fact.

Under Section 10.2, the Agreement may be terminated prior to the end of the Initial Term either (a) upon the mutual written agreement of the Parties, or (b) by either Party "for *material breach* of any of the terms hereof by the other party if such breach shall not have been cured within sixty (60) calendar days after written notice of breach is delivered to the defaulting party[.]"

---

[1] Capitalized terms that are undefined will adopt the same meaning from EGCC's May 10, 2022 correspondence.

Atlanta  Boston  California  Chicago  Delaware  Indiana  Michigan  Minneapolis  New York  Ohio  Raleigh  Salt Lake City  Texas  Washington, D.C.

Victoria Ferrise
May 20, 2022
Page 2

(Emphasis added). Pursuant to Section 10.1 of Amendment No. 1 to Collaboration Agreement, the Initial Term of the Agreement remains in full force and effect until June 30, 2027. Although the Agreement does not define "material breach," courts generally interpret that term to mean "a party's failure to perform an element of the contract that is so fundamental to the contract that the single failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *O'Brien v. Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶ 56, quoting 23 WILLISTON ON CONTRACTS, Section 63:3; *see also* Agreement, Section 14.14 (indicating that Ohio law governs the interpretation of the Agreement). The determination of whether a party's breach of a contract was a "material breach" is generally a question of fact. *Id.* at ¶ 11.

Here, EGCC contends that SRC's decision to remove one of ***its own*** employees, Michael Perik, from the position of CEO constitutes a material breach of the Agreement. The retention of Mr. Perik as CEO, however, was never "an element of the [Agreement]" let alone one that was "so fundamental to the contract" that his removal "defeats the essential purpose of the contract or makes it impossible for the other party to perform." *See O'Brien*, ¶ 56. On the contrary, Mr. Perik's replacement, Phillip W. Braithwaite, holds extensive prior experience as an executive and SRC continues to meet its duties under the Agreement.

In fact, the Agreement implies the opposite of what EGCC claims was a "material breach." Under Section 2.5, "[e]ach Party shall have responsibility for and ***complete discretion with respect to supervision and management of its employees*** and third-party contractors providing the Collaboration Activities." (Emphasis added). Thus, removing Mr. Perik as SRC's CEO not only fails to meet the standard required by Ohio law for a "material breach," the Agreement expressly provides that SRC retains "complete discretion" with its staffing when carrying out the Collaboration Activities under the Agreement. Thus, EGCC mistakenly relies on Section 2.4 to purport SRC breached the Agreement by claiming SRC required written consent from the Operating Committee to remove Mr. Perik.

Moreover, the Collaboration, as defined and described in the Agreement, makes no mention of or reference to Mr. Perik or any other employee of SRC. Therefore, the nature of the Collaboration has not changed by and EGCC suffered no harm from SRC's removal of Mr. Perik from his prior position as SRC's CEO.

Based on the above, EGCC does not have a basis for claiming SRC materially breached the Agreement because of SRC's decision to remove Mr. Perik from his prior position as SRC's CEO. I look forward to working with you to resolve this matter.

Very truly yours,

*C. David Paragas*

C. David Paragas

cc: Phillip Braithwaite, CEO, Student Resource Center, LLC