**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

STUDENT RESOURCE CENTER,     )
LLC,                         )
                             )
     *Plaintiff*,              )
                             )   **Case No. 2:22-cv-2653**
v.                           )
                             )   **Chief Judge Algenon L. Marbley**
EASTERN GATEWAY COMMUNITY    )
COLLEGE,                     )
                             )   **Magistrate Judge Chelsey M.**
     *Defendant*.              )   **Vascura**
                             )
                             )
                             )
                             )


**PLAINTIFF'S MOTION FOR DEFENDANT TO SHOW CAUSE FOR VIOLATING,**
**AND TO EXPAND, THE COURT'S JULY 11, 2022 ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**


      Student Resource Center, LLC ("SRC") respectfully requests that the Court  issue an

Order to Show Cause why Defendant Eastern Gateway Community College ("EGCC") should

not be held in contempt and sanctioned for violating the Court's July 11, 2022 Order (the

"Order") granting SRC's Motion for Preliminary Injunction by continuing to compete with SRC

in violation of the Agreement[1]. Additionally, SRC requests that the Court expand its Order to

(1) enjoin EGCC from continuing to wrongfully withhold profit-sharing payments owed to SRC

in the amount of $2,357,153.08 for semesters that ended prior to December 2021; (2) ordering

the immediate payment of the same by August 19, 2022; (3) enjoin immediate future wrongful

---

[1] Capitalized terms left undefined will carry the same meaning as defined in SRC's Motion for Preliminary Injunction (ECF No. 2).

withholding and require EGCC to submit payment of any undisputed profit-sharing payment due for the spring 2022 and summer 2022 semesters on or before September 30, 2022; and (4) to require EGCC to immediately allow SRC to perform an audit of the Collaboration, which the Collaboration Agreement permits under Section 7.4. *See* (ECF No. 11, Ex. A., PAGEID# 176-77). For the reasons explained in the accompanying brief and affidavits in support of this motion, SRC respectfully requests that the Court set a hearing on this motion within a reasonable amount of time before August 19, 2022 so that the Court may enter an Order requiring EGCC to make payment to SRC by August 19, 2022, with any opposition to this motion required to be filed before that hearing, and after such hearing, enter an expanded preliminary injunction and order of sanctions against EGCC for violating the Court's Order. A proposed order is attached hereto as Exhibit 1.

Dated: August 12, 2022

Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) Trial Attorney
David M. DeVillers (0059456)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | Case No. |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF STUDENT RESOURCE CENTER LLC'S BRIEF IN SUPPORT OF
MOTION FOR DEFENDANT TO SHOW CAUSE FOR VIOLATING, AND TO
EXPAND, THE COURT'S JULY 11, 2022 ORDER GRANTING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

## I.     INTRODUCTION

Undeterred by the Court's July 11, Order (the "Order") granting SRC's Motion for Preliminary Injunction, EGCC continues to wage its campaign to squeeze out and compete with SRC. In its latest and, to date, most blatant action, EGCC has hired and refused to terminate the employment of Brittani Gassner. Ms. Gassner recently resigned from SRC and is now performing substantially identical job duties for EGCC as she performed for SRC. EGCC is also still improperly withholding payment in the amount of $2,357,153.08 due under its Agreement with SRC for profit-sharing reimbursement corresponding to the summer and fall 2021 enrollment period, completed prior to December 31, 2021. Although this motion partially seeks a monetary remedy, immediate injunctive relief is necessary because EGCC's dilatory tactics deprive SRC of what the Court described as SRC's "lifeblood" as a business, and set SRC "on a clear path to insolvency," which will cause an incalculable amount of damages to SRC and constitutes irreparable harm. (ECF No. 14, PAGEID# 289).[2]

## II.    STATEMENT OF FACTS

The Court previously made several relevant findings of fact in its Order, which SRC reincorporates here by way of citation. *See generally* (ECF No. 14). Moreover, the Court enjoined EGCC from "starting and operating a competing business while the Agreement remains in effect." (*Id.*)

The following additional facts, occurring both before and after the Court's Order, are relevant to this motion. The Agreement calls for two categories of payments owed by EGCC to SRC: operational-expense reimbursements (ECF No. 11, Ex. A, Paragraph 2 of Ex. B of the Agreement) and profit-sharing payments (ECF No. 11, Ex. A, Paragraph 3 of Ex. B of the

---

[2] See (ECF No. 1 ¶ 16 n.1) (Noting that SRC may be required to separately seek injunctive relief for the immediate repayment of profit-sharing payments in the future).

4

Agreement). The thrust of this motion does not center on the operational-expense reimbursements currently owed to SRC. Rather, the focus of this motion centers on the undisputed amount owed to SRC for profit-sharing payments of $2,357,153.08 representing the profit-sharing payments for semesters that ended prior to December 31, 2021. The next profit-sharing payment deadline is September 30, 2022 for the spring and summer 2022 semesters, which SRC calculates to be $8,359,643, if EGCC does not submit the $2,357,153.08 payment beforehand.

### a. The Agreement Requires EGCC to Submit Profit-Sharing Payments for the Semesters Ending Before December 31, 2021.

Paragraph 3 of the Agreement provides: "[w]ithin thirty (30) days of the end of the summer and fall semesters, EGCC will provide SRC with a semester reconciliation of the Revenue Collected and Operating Expenses paid in each such semester… EGCC will distribute the Surplus from the Collaboration Account as follows: 50% to SRC and 50% to EGCC. SRC is entitled to 50% of the surplus of funds remaining in the Collaboration Account as shown in the semester reconciliation." (ECF No. 11, Ex. A, Paragraph 3 of Ex. B of the Agreement). The summer 2021 semester ended on August 1, 2021 and fall 2021 semester ended on December 13, 2021 yet SRC has not received any profit-sharing payment for either semester. (ECF No. 12, Ex. C, ¶¶ 20). According to SRC's calculations, which are based on EGCC's financial statements, the outstanding unpaid balance is $2,357,153.08 for all semesters ending prior to December 31, 2021. (*Id.* at ¶ 21; ECF No. 12, Ex. F, ¶ 7; ECF No. 16, PAGEID# 345).

### b. SRC Provided EGCC Notice of the $2,357,153.08 Owed on Multiple Occasions.

SRC has made several attempts to collect payment for the profit-sharing payments corresponding to the semesters ending prior to December 2021. *See e.g.*, Declaration of Phillip Braithwaite, attached hereto as Exhibit 2, Ex. 2-A, ¶¶ 3-11, (5/20/2022 correspondence to EGCC);

Braithwaite Dec., Ex. 2-B (6/10/2022 correspondence to EGCC); Braithwaite Dec., Ex. 2-C (7/18/2022 correspondence to EGCC); Braithwaite Dec., Ex. 2-D (8/1/2022 correspondence). Moreover, SRC's CFO, Aimee Leishure, testified during the preliminary injunction hearing that prior to Michael Perik's removal as CEO of SRC, EGCC had been submitting contributions to SRC's entitled profit share twice a month. (ECF No. 16, PAGEID# 345). Ms. Leisure also testified that by the time of the preliminary injunction hearing, she had not received any communication from EGCC regarding the $2,357,153.08 owed to SRC. (*Id*., at PAGEID# 345-46).

### c. EGCC Does Not Dispute It Owes SRC Profit-Sharing Payments.

Despite an opportunity to cross-examine Ms. Leishure and an opportunity to elicit testimony from EGCC's president, Mr. Geoghegan, EGCC offered no testimony to dispute the amount of profit share owed to SRC under the Collaboration Agreement. *See generally* (ECF No. 16, PAGEID# 365-417). Instead, Mr. Geoghegan mentioned only that he, on behalf of EGCC, disputes the operational-expense reimbursements (*i.e.*, ECF No. 11, Ex. B to the Agreement, Paragraph 2) and not the profit-sharing payments (*i.e.*, ECF No. 11, Ex. A, Paragraph 3). In fact, on July 11, 2022, Ms. Leishure submitted an account statement to EGCC representing the profit-sharing amounts owed based on the EGCC enrollments for semesters completed prior to December 31, 2021. *See* (Declaration of Aimee Leishure, attached hereto as Exhibit 3, Leishure Dec., ¶ 4). The amount demanded was $2,357,153.08 and was supported by EGCC's April 30, 2022 financial statements. *See* (Leishure Dec., ¶ 4).

Moreover, on July 20, 2022, EGCC conducted a meeting of its Board of Trustees, and during that meeting, EGCC's own accounting department acknowledged its current liabilities of approximately $2,500,000 due and owed to SRC under the Agreement for the profit-sharing payment. *See* Leishure Dec., ¶ 5. Finally on August 2, 2022, EGCC sent correspondence to SRC's

counsel, which addressed several points of contention between the parties but failed to explain why EGCC has not paid any amount of profit-sharing payments to SRC for the summer and fall 2021 semesters, and indeed did not deny that EGCC owed profit-sharing payments to SRC which had not been paid. (Leishure Dec., ¶ 8).[3] Given EGCC's track record, SRC expects that EGCC will also wrongfully withhold SRC's profit-sharing payments for the semesters ending after December 2021, which SRC calculates will be approximately $8,359,643 if the $2,357,153.08 amount is left unpaid, and it will be due by September 30, 2022. (Leishure Dec., ¶ 10).

> **d. EGCC's Failure to Make the Profit-Sharing Payments Owed to SRC Will Force SRC to Reduce Its Staffing By 35 Employees.**

Because of EGCC's failure to submit the profit-sharing payment of $2,357,153.08, SRC will not be able to sustain its current level of operational expenses. (Leishure Dec., ¶ 11). If SRC does not receive the $2,357,153.08 profit-sharing payment by August 19, 2022, SRC will need to terminate approximately 35 employees as part of a reduction in force to keep SRC sustainable. (Braithwaite Dec., ¶ 14). Although difficult to predict, a reduction in force will likely be delayed and not be as broad if EGCC submits the $2,357,153.08 profit-sharing payment by August 19, 2022 *and* if EGCC timely tenders SRC's profit-sharing payment of approximately the difference between $2,357,153.08 and $8,359,643, which is due by September 30, 2022. (Braithwaite Dec., ¶ 14; Leishure Dec., ¶ 10).

> **e. EGCC Continues to Compete With SRC in Violation of the Order By Hiring SRC's Former Employee, Brittani Gassner.**

As admitted by Mr. Geoghegan during the preliminary injunction hearing, EGCC used SRC's removal of Perik as SRC's CEO as a pretext for wrongfully attempting to terminate the agreement in order to compete with SRC by hiring academic advisors and admissions counselors

---

[3] The letter from opposing counsel is not attached hereto because it was purportedly sent pursuant to Fed. R. Evid. 408.

in-house through what he described as a "big shift" transition. (ECF No. 16, PAGEID# 386-89). To effectuate that transition, EGCC began hiring several SRC call center employees prior to the preliminary injunction hearing to align with its strategy to wrongfully withhold profit-sharing payments. (*Id.*) By withholding payments to SRC, EGCC incentivized SRC's employees to transition their employment to EGCC in order to conduct the same work given SRC's heavy reliance on the Agreement with EGCC, its primary partner. (ECF No. 12, Ex. C, ¶ 10). As a result, EGCC's actions stymie SRC's ability to carry out its duties under the Agreement and accelerates the rate at which SRC will need to unwind its affairs should it become insolvent. (Braithwaite Dec., ¶¶ 13-14, 17).

The Court's Order, however, aims to prevent that irreparable harm to SRC by prohibiting EGCC from competing with SRC. Nevertheless, EGCC disregarded the Court's Order and continues to compete with SRC. Specifically, on or around July 7, 2022, EGCC hired Ms. Brittani Gassner. Up until June 29, 2022, Ms. Gassner was SRC's VP of Partner Operations. (Braithwaite Dec., ¶¶ 19-23). She had worked for SRC for a number of years and provided a critical component of SRC's daily operations including responsibility over the collaboration's marketing and management of SRC's call center. (Braithwaite Dec., ¶¶ 19-21). She also previously acted as SRC's VP of Student Services. (Braithwaite Dec., ¶¶ 19-21). In both roles, Ms. Gassner worked with SRC's academic advisors and admissions counselors to help serve EGCC's student body and was one of only four Vice Presidents at the time of her departure. (Braithwaite Dec., ¶ 22). In her new role at EGCC, Ms Gassner provides the same job functions as she did while she was employed by SRC. (Braithwaite Dec., ¶ 25).

Ms. Gassner's work on behalf of EGCC is in violation of the Court's Order as well as a Restricted Units Agreement (the "Employment Agreement") that she executed with SRC in

August 2021. (Braithwaite Dec., ¶¶ 16-18, Ex. 2-E). Among other provisions, the Employment Agreement prohibits Ms. Gassner, for a period of time post-employment, from "participat[ing] in any way" in an entity that, among other things, engages in "the sale of educational products to members of state and national labor organizations, professional organizations and other employers and their family members (collectively, the *"Applicable Students"*), recruitment and enrollment of Applicable Students, services to support the success of Applicable Students, such as mentoring and online tutoring…" *See* (Braithwaite Dec., ¶¶ 16-18, Ex. 2-E). SRC notified EGCC of this violation on August 5, 2022. *See* (Braithwaite Dec., ¶¶ 27-28, Ex. 2-F). That letter asked EGCC to immediately terminate its employment of Ms. Gassner and so certify to SRC in writing, which EGCC has ignored to date. (*Id.*)

### III.   LAW AND ARGUMENT

#### a.   This Court's Contempt Power

Federal law grants to federal courts the power to punish and hold in contempt persons who violate court orders. 18 U.S.C. § 401. "Civil contempt . . . is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). A district court "may fashion the remedy for civil contempt and many remedies are available including the doing of specified acts, incarceration and fine." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2008 U.S. Dist. LEXIS 57825, *10 (S.D. Ohio July 29, 2008) (citing *United States v. Conces*, 507 F.3d 1028, 1043-44 (6th Cir. 2007)). The power of district courts to punish for contempt "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911). In the Sixth Circuit, the order violated must be "definite and specific."

*Conces*, 507 F.3d at 1041. This Court's Order is unequivocal and clear: "the Court ENJOINS Defendant EGCC, preliminarily, from … breaching the Agreement's non-competition provisions by starting and operating a competing business while the Agreement remains in effect." (ECF No. 14, PAGEID# 290-91). Defendant has not asked for any further clarification of the Order it has violated.

The test for whether an order of the court has been violated is an objective standard that asks whether the alleged contemnor has failed to take all reasonable steps within its power to comply with the court's order. *Nettis Environmental Ltd. v. IWI, Inc.*, 46 F. Supp.2d 722, 726 (N.D. Ohio 1999). There is no "subjective good faith standard," and the moving party need not demonstrate willfulness to establish civil contempt. *Id.*

### b. Defendant EGCC Blatantly Violated the Court's Injunctive Order.

EGCC failed to comply with the Court's Order by willfully choosing to hire and then continuing to employ one of SRC's high-level executives, Ms. Gassner. This action was taken as part of a direct campaign to compete with SRC by bringing SRC's functions in-house. This violates the plain terms of the Agreement.

As the Court is already aware, Section 8 of the Agreement bars EGCC from engaging in "*any action* for the purpose of entering into *any* joint venture, collaboration or similar arrangement that is competitive with the Education Programs provided by the Collaboration to union members." (ECF No. 14, PAGEID# 287) (emphasis in original). At the time of EGCC's hire of Ms. Gassner, EGCC knew that she was SRC's former VP of Partner Operations and that she had worked for SRC for a number of years and provided a critical component of SRC's daily operations. (Braithwaite Dec., ¶¶ 19-21). In fact, Ms. Gassner regularly communicated and worked with EGCC staff given the fact that EGCC remains SRC's primary partner. (Braithwaite Dec., ¶ 22).

Given these facts, as well as the fact that Ms Gassner is performing nearly identical job functions as she did while she was employed by SRC, EGCC took no reasonable steps to verify whether Ms. Gassner's Employment Agreement contained a non-competition provision or to seek approval from SRC to hire Ms. Gassner. (Braithwaite Dec., ¶¶ 17-18). EGCC hired Ms. Gassner at or around the time of the Court's Order. The Court should make a finding of contempt against EGCC unless and until Ms. Gassner's employment is terminated  and issue an order granting SRC the relief sought in this motion.

### c.  Applicable Legal Standard for Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure permits this Court to issue injunctive relief. *See* Fed.Civ.R. 65.  In determining whether to grant or deny injunctive relief, a Court must consider the following factors:  (1) whether the movant has a likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31272, at *10-11 (S.D. Ohio Mar. 13, 2015) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). The factors for granting a preliminary injunction are not "prerequisites," but are balanced against one another. *Union Home Mortgage Corp. v. Payne*, No. 1:20-cv-26, 2020 WL 4282309, at *5 (N.D. Ohio Mar. 9, 2020).

"The decision whether to issue a temporary restraining order or preliminary injunction falls within the sound discretion of the district court.  Ultimately, '[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'"  *Marshall*, 2015 U.S. Dist. LEXIS 31272, at *11 (quoting

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998)).

### d. SRC's Requested Injunctive Relief is Appropriate.

SRC seeks, in part, the immediate payment of wrongfully withheld and undisputed profit-sharing payments. Given the factual circumstances before the Court, SRC's requested relief is appropriate since the status quo is "a condition not of rest, but of action." *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982) (quoting in *Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co.*, 54 F. 730, 741 (C.C., N.D. Ohio 1893) ("The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant.... In such a case[,] courts of equity issue mandatory writs before the case is heard on its merits."). "The fact that an injunction may require the payment or expenditure of money does not necessarily foreclose the possibility of equitable relief." *Price*, at 214; *see also Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (Noting that "the purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

The Sixth Circuit previously addressed a similar set of facts in *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995). In that case, the plaintiff sought a preliminary injunction arising from the defendant's nonpayment of royalties owed under a licensing agreement. *Id.* at 1375. Part of the plaintiff's requested relief included the payment of royalties owed. *Id.* at 1377. The plaintiff contended that it would suffer irreparable harm without the royalty payments, namely "the collapse of its business[.]" *Id.* Ultimately, the Sixth Circuit

reversed the district court's decision to deny the plaintiff the preliminary injunction, and directed the lower court to issue an order that would preserve the plaintiff corporation "as an ongoing enterprise" in light of the irreparable harm the plaintiff would sustain absent the payment of the royalties. *Id.* at 1386.

Here, an injunction is necessary to preserve SRC's survival, similar to the plaintiff's survival in *Performance Unlimited*, in the face of EGCC's efforts to squeeze SRC out of existence in order for EGCC to compete with SRC by withholding past profit-sharing payments owed to SRC. (ECF No. 12, Ex. C, ¶ 21; ECF No. 12, Ex. F, ¶ 7; ECF No. 16, PAGEID# 345). Thus, the Court should grant SRC the requested relief it seeks.

> ### e. EGCC Does Not Dispute It Owes SRC Past Profit-Sharing Payments, and Therefore SRC Has a High Likelihood of Success On Count II of the Complaint.

To show a likelihood of success on the merits, a plaintiff must demonstrate more than a mere possibility of success, but it need not "'prove [its] case in full.'" *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)). EGCC's failure to pay profit-sharing payments due and owed and its efforts to circumvent SRC and cut it out of the Agreement by hiring its employees are all in breach of the Agreement.  To establish a breach of contract claim under Ohio law, SRC must show: (1) that a contract existed; (2) that SRC performed under that contract; (3) that EGCC breached that contract; and (4) that SRC suffered damages as a result of that breach. *Pavlovich v. National City Bank*, 435 F.3d 560,565 (6th Cir. 2006).

> ### i. SRC Performed Under the Collaboration Agreement with EGCC.

There is no dispute that SRC and EGCC entered into the Agreement on June 30, 2017 – which they later amended on or around October 2019 and on February 1, 2021.  *See* (ECF No. 11,

Ex. A; ECF No. 12, Ex. C, ¶ 3). At all times past and present, SRC has met its performance obligations under the Agreement. (Braithwaite Dec., ¶ 12). In fact, SRC's efforts have catapulted EGCC's enrollment from approximately 5,549 students in the fall semester 2016 to over 42,500 students in fall semester 2021. *See* (ECF No. 12, Ex. C, ¶ 9). While EGCC previously argued that SRC was in breach of the Agreement, the Court previously rejected that argument. *See* (ECF No. 14, PAGEID# 286). Therefore, SRC has satisfied its performance under the Agreement.

> ### ii. EGCC Breached the Agreement By Failing to Submit Profit-Sharing Payments to SRC for Semesters Ending Prior to December 31, 2021 and By Hiring Brittani Gassner.

Under the Agreement, EGCC must reimburse SRC for its operational expenses. (ECF No. 11, Ex. A). The Agreement also requires EGCC to share surplus profits with SRC in at the end of each semester: "Within thirty (30) days of the end of the summer and fall semesters, EGCC will provide SRC with a semester reconciliation of the Revenue Collected and Operating Expenses paid in each such semester… EGCC will distribute the Surplus from the Collaboration Account as follows: 50% to SRC and 50% to EGCC." (*Id.*) SRC is entitled to 50% of the surplus of funds remaining in the Collaboration Account as shown in the semester reconciliation. (*Id.* at Paragraph 3). The summer 2021 semester ended on August 1, 2021 and fall 2021 semester ended on December 13, 2021 yet SRC has not received profit-sharing payments for either semester. (ECF No. 12, Ex. C, ¶ 20).

Prior to Michael Perik's removal, EGCC made pro-rata profit-sharing payments twice a month but EGCC ceased that standard practice after Mr. Perik was removed from his role as SRC's CEO as part of EGCC's campaign to shut down SRC's operations. (ECF No. 16, PAGEIDE# 345). EGCC's refusal to make profit-sharing payments to SRC greatly disrupts SRC's operations since approximately 95% of SRC's revenue comes from EGCC. (ECF No. 12, Ex. C, ¶ 10).

EGCC's own financial records demonstrate that it owes SRC a profit-sharing payment of $2,357,153.08 for semesters ending prior to December 31, 2021. On July 11, 2022, Ms. Leishure submitted an account statement to EGCC representing the profit-sharing amounts owed based on the EGCC enrollments for semesters completed prior to December 31, 2021. (Leishure Dec., ¶¶ 4-5). The amount demanded was $2,357,153.08 and was supported by EGCC's April 30, 2022 financial statements. (Leishure Dec., ¶¶ 4-5). Nevertheless, EGCC has ignored SRC's multiple attempts to collect payment for the profit-sharing payments. *See e.g.*, (Braithwaite Dec., ¶¶ 3-11, Ex. 2-A (5/20/2022 correspondence); Braithwaite Dec., Ex. 2-B (6/10/2022 correspondence); Braithwaite Aff., Ex. 2-C (7/18/2022 correspondence); Braithwaite Dec., Ex. 2-D (8/1/2022 correspondence)).

In addition, EGCC offered no testimony to dispute the profit-sharing payments owed to SRC despite an opportunity to cross-examine Ms. Leishure and an opportunity to elicit testimony from EGCC's president, Mr. Geoghegan. *See generally* (ECF No. 16, PAGEID# 365-417). Instead, Mr. Geoghegan mentioned only that he, on behalf of EGCC, disputes the operational-expense reimbursements (*i.e.,* ECF No. 11, Ex. B to the Agreement, Paragraph 2) but not the profit-sharing payments (*i.e.,* ECF No. 11, Ex. B to the Agreement, Paragraph 3).

Moreover, on July 20, 2022, EGCC conducted a meeting of its Board of Trustees, and during that meeting, EGCC's own accounting department acknowledged its current liabilities of approximately $2,500,000 due and owed to SRC under the Agreement for the profit-sharing payment. *See* (Leishure Dec., ¶ 6). Finally, on August 2, 2022, EGCC sent correspondence to SRC's counsel, which raised several points of contention between the parties but left unaddressed several aspects of EGCC's failure to pay any amount of profit-sharing payments to SRC. *See* (Leishure Dec., ¶¶ 7-8). For example, EGCC's letter (1) did not dispute that it owes SRC profit-

sharing payments; (2) did not explain or demonstrate why SRC's $2,357,153.08 calculation was inaccurate; and (3) identified a substantially smaller "preliminary estimate" of what it does not dispute is owed to SRC but failed to offer any assurance as to when that amount would be paid to SRC. *See* (Leishure Dec., ¶¶ 7-8).

Under Section 7.4(c) of the Collaboration Agreement, SRC holds the right to, upon "reasonable written notice," to audit EGCC's Controlled Accounts and Records and "supporting documents and materials in the possession of or under the control of EGCC with respect to such matters, at the place or places where such records are normally retained by EGCC." (ECF No. 11, Ex. A, Section 7.4(c)). On multiple occasions, SRC provided written notice to EGCC invoking Section 7.4(c) to avoid any delay. *See e.g.,* (Braithwaite Dec., Ex. 2-B, June 10, 2022 ("In accordance with [Section 7.4(c)], please consider this communication written notice that SRC invokes its right to audit the controlled accounts and records necessary to confirm all amounts owed as detailed herein and such other items as permitted by the Agreement."); (Braithwaite Dec., Ex. 2-C, July 18, 2022)). EGCC waited until August 2, 2022 to respond, and simply indicated it was "assembling responsive documents" but nevertheless has not provided any to SRC to date. *See* (Leishure Dec., ¶ 8).

All of EGCC's actions reflect  a failure by EGCC to address the profit-sharing payments seriously and in good faith, which illustrates EGCC's continued dilatory tactics are an attempt to squeeze out SRC's ability to survive. (Leishure Dec., ¶ 9). Given EGCC's track record, SRC expects that EGCC will also wrongfully withhold SRC's profit-sharing payments for the spring and summer 2022 semesters, which SRC calculates will be approximately $8,359,643 and are due by September 30, 2022 if EGCC fails to pay the $2,357,153.08 amount beforehand. (Leishure Dec., ¶ 10).

EGCC also breached Section 8 of the Agreement by hiring Ms. Gassner. Under Section 8, EGCC shall not "take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members[.]" *See* (ECF No. 11, Ex. A, Section 8). As stated above, Ms. Gassner was, until June 29, 2022, an employee of SRC. Ms. Gassner acted as SRC's VP of Partner Operations and she had worked for SRC for a number of years and held responsibility of several significant aspects of SRC's daily operations such as SRC's call center and program marketing. (Braithwaite Dec., ¶¶ 19-22). These duties included the supervision of admissions counselors, academic advisors, and data-entry clerks. (Braithwaite Aff., ¶ 19). EGCC was keenly aware of Ms. Gassner's position at SRC since she regularly communicated and worked with EGCC staff. (Braithwaite Dec., ¶ 24). In her new role at EGCC, Ms. Gassner will perform nearly identical job functions as she did while she was employed by SRC, which violates Ms. Gassner's non-compete agreement with SRC. (Braithwaite Dec., ¶ 25). EGCC took no reasonable steps to verify whether Ms. Gassner's Employment Agreement contained a non-competition provision and thus has not only taken action to compete with SRC but has also facilitated further damage to SRC's enterprise through the violation of Ms. Gassner's non-compete agreement. EGCC has continued with its wrongful actions despite specifically be notified in writing of its and Ms. Gassner's violations on August 5, 2022. See Braithwaite Dec., ¶¶ 27-28, Ex. 2-F

### iii.  Damages: Without Injunctive Relief, SRC Will Go Out of Business.

Without the immediate payment of the profit-sharing amounts owed, SRC will no longer be able to sustain its current level of operational expenses, it will quickly become insolvent (Leishure Dec., ¶ 11). If EGCC fails to make the profit-sharing payments owed to SRC by August 19, 2022, SRC has no other choice but to significantly reduce its staffing to continue its operations.

(Leishure Dec., ¶ 11). This reduction in force will result in SRC terminating approximately 35 employees. (Braithwaite Dec., ¶ 14). Even if SRC reduces its staff, SRC will not be able to sustain itself past September 30, 2022, which is when EGCC will owe SRC approximately $8,359,643 for all profit-sharing payments for semesters prior to the summer 2022 semesters. (Braithwaite Dec., ¶¶ 14-15; Leishure Dec., ¶10). Aware of the "dire straits" EGCC has put SRC into, EGCC seeks to delay payment to SRC as long as possible in its "own attempts to cut SRC out of the referral pipeline" by putting SRC out of business. *See* (ECF No. 16, PAGEID# 328; ECF No. 14, PAGEID# 286).

### f.  SRC Will Suffer Irreparable Harm if Injunctive Relief is Not Granted.

"To demonstrate irreparable harm, the plaintiffs must show that ... they will suffer actual or imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  Harm is irreparable if it cannot be fully compensated by monetary damages.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Courts have held that an injury is not fully compensable by money damages if the nature of Plaintiff's loss would make damages difficult to calculate.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Furthermore, courts have recognized irreparable harm when a financial hardship would be so severe that it would cause the moving entity to be "completely wiped out," thereby rendering "a later judgment on the merits meaningless." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir.1978); *See also Sisay v. Smith*, 310 F. App'x 832, 851 (6th Cir. 2009) (citing cases); *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982) ("The fact that an injunction may require the payment or expenditure of money does not necessarily foreclose the possibility of equitable relief."); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995).

Here, SRC derives 95% of its revenue from its relationship with EGCC. (ECF No. 12, Ex. C, ¶¶ 10). It is impossible to calculate the value of SRC's ongoing business enterprise and its relationships with its union partners. (Braithwaite Dec., ¶ 26). It is also impossible to measure the damages wrought by EGCC's competition in violation of a non-competition provision by hiring SRC's former VP of Partner Operations and continuing to employ her in light of the Court's Order. (Braithwaite Dec., ¶¶ 19-25). Nevertheless, EGCC's refusal to make the required profit-sharing payment of $2,357,153.08 for semesters ending prior to December 31, 2021 violates the Agreement. As a result of EGCC's breach, SRC will be required to significantly reduce its staff and ultimately will need to dissolve the business without the immediate payment of the past due profit-sharing payments. (Braithwaite Dec., ¶¶ 14-15). Although difficult to predict, a reduction in force will likely be delayed and not be as extensive if EGCC submits the $2,357,153.08 profit-sharing payment by August 19, 2022 **and** if EGCC then timely tenders the remaining portion of the approximately $8,359,643 profit-sharing payment owed. (Braithwaite Dec., ¶ 14; Leishure Dec., ¶ 10).

### IV. Third Party Harm and Public Interest

The public interest will be served if SRC is granted an injunction. Through SRC's efforts, SRC has coached and advised thousands of students and increased EGCC's annual enrollment by tens of thousands more. (Braithwaite Dec., ¶ 12). EGCC's anticompetitive attempts to cut out SRC by withholding profit-sharing payments in violation of the Agreement undermines SRC's high-quality advising and coaching service to union members and students. (ECF No. 12, Ex. C, ¶ 32). As the Court previously noted, however, since this matter relates to a private contractual dispute, the third-party harm and public-interest factors "play a diminished role" in the Court's preliminary-injunction analysis. (ECF No. 14, PAGEID# 290). Further, from the prospective of

the students, "so long as support services are rendered effectively, the provider is immaterial." (ECF No. 14, PAGEID# 290).

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Court should grant the foregoing motion and expand its Order to (1) enjoin EGCC from continuing to wrongfully withhold profit-sharing payments owed to SRC of $2,357,153.08 for semesters that ended prior to December 2021; (2) require EGCC to immediately submit payment of the $2,357,153.08 undisputed profit-sharing payment due for the semesters that ended prior to December 2021; (3) require EGCC to submit payment of any undisputed profit-sharing payment due for the spring 2022 and summer 2022 semesters on or before September 30, 2022; and (4) require EGCC to immediately permit SRC to initiate an audit under Section 7.4(c) of the Collaboration Agreement. Separately, the Court should issue an order requiring EGCC to show cause as to why it should not be found in contempt for hiring SRC's former employee, Brittani Gassner and impose a daily fine unless and until she is terminated from employment by EGCC. For the foregoing reasons, SRC respectfully seeks an order, following a show cause hearing held as soon as the Court's schedule will allow granting the relief requested herein. A proposed order granting the relief sought herein is attached hereto as Exhibit 1.

Dated: August 12, 2022               Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) Trial Attorney
David M. DeVillers (0059456)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com
*Attorneys for Plaintiff Student Resource Center, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, a copy of forgoing was filed electronically via the Court's CM/ECF filing system and served on all counsel of record.

.

/s/ Robert C. Folland
Robert C. Folland