UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-2653** |
| | : | |
| v. | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| EASTERN GATEWAY COMMUNITY | : | **Magistrate Judge Chelsey M. Vascura** |
| COLLEGE, | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Motion for Defendant to Show Cause for Violating, and to Expand, the Court's July 11, 2022 Preliminary Injunction Order. The Court held a Local Rule 65.1 Conference on August 17, 2022, and resolved to adjudicate Plaintiff's Motion on the papers. For the reasons that follow, Plaintiff's Motion (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART.** Specifically, the request for an Order to Show Cause is **DENIED**; the request to expand the preliminary injunction is **GRANTED** as to past-due profit-share payments; and all further relief is **DENIED.**

### I.  BACKGROUND

This is a contract case brought by Student Resource Center ("SRC"), a private educational services company, against Eastern Gateway Community College ("EGCC" or the "College"), a public two-year college based in Steubenville, Ohio. The parties entered a Collaboration Agreement in June 2017, the purpose of which is "to develop, market, and offer online courses to members of unions and professional associations"—which they have implemented via the Free College Benefit Program. (ECF No. 2-3, Braithwaite aff., ¶ 8).

1

On SRC's Motion, the Court entered a preliminary injunction on July 11, 2022. (ECF No. 14). The preliminary injunction prohibits EGCC from "(1) terminating the Agreement as set in motion by the Notice of May 12, 2022; and (2) breaching the Agreement's non-competition provisions by starting and operating a competing business while the Agreement remains in effect." (*Id.* at 15–16).

The statement of facts contained in that Opinion & Order is incorporated by reference. Subsequent developments in the U.S. Department of Education's ("DOE's") investigation of EGCC deserve separate mention. On July 18, 2022, one week after the Court entered its preliminary injunction, DOE instructed EGCC to cease and desist from administering the Collaboration in its existing form, which DOE believes is in violation of Title IV. (ECF No. 20 at 5 (citing Geoghegan decl.)).[1] Later, DOE placed the College on "Heightened Cash Monitoring 2," which restricts EGCC's use of Pell Grant funds, and required EGCC to enter into a "teach-out agreement" for students currently enrolled in the Free College Benefit Program. (*Id.* at 6 (citing Geoghegan decl.)). EGCC anticipates these measures will culminate in the repayment of Pell Grant funds from past semesters and "the end [of] the Collaboration." (*Id.* at 7 (citing Geoghegan decl.)).

---

[1] DOE explained the violation as follows:

> EGCC is merely waiving/writing off all non-Pell/state grant charges on student accounts, and falsely making it appear that the students are being funded by outside entities. Essentially, under [the Free College Benefit] program, students who receive Pell funding are being charged for the program, but students not receiving Pell are not. This is in direct violation of the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. (Title IV).
>
> . . .
>
> [T]he Department has consistently stated that a recipient of Title IV assistance cannot be assessed charges that are higher than what is charged to a student not receiving Title IV aid. See *2021-2022 Student Financial Aid Handbook, Vol. 3 at 56.* As set forth above, Title IV recipients enrolled under the Free College Benefit Program are charged more than non-Title IV recipients enrolled under the same program. Consequently, this model violates the Title IV statute, and therefore, it cannot be used by EGCC as currently implemented.

(ECF No. 20-4, DOE letter, at 1–2).

## II.   REQUEST FOR ORDER TO SHOW CAUSE

SRC now alleges that EGCC is in contempt of the Court's preliminary injunction Order—specifically, the portion concerning non-competition—for "willfully choosing to hire and then continuing to employ one of SRC's high-level executives, Ms. Gassner." (ECF No. 18 at 10). Ms. Gassner, formerly SRC's Vice President of Partner Operations, began working as the College's Associate Vice President for Enrollment Services in late June or early July 2022. (*Id.* at 8; ECF No. 20 at 3).[2] SRC claims this is part of the College's ongoing "transition" to move academic advisors and admissions counselors in-house "in order to compete with SRC." (ECF No. 18 at 7–8). SRC sent demand letters to the College, which have gone unanswered. (*Id.* at 9). Furthermore, SRC alleges that Ms. Gassner's employment is in violation of the "Restricted Units Agreement" which Ms. Gassner signed with SRC. (*Id.* at 8–9).[3]

EGCC responds that Ms. Gassner's hiring and continued employment do not violate the Court's Order. First, EGCC notes, it hired Ms. Gassner before the Court held its preliminary injunction hearing or announced a ruling. (ECF No. 20 at 3). EGCC claims it "did not recruit her or otherwise ask her to apply"; rather, Ms. Gassner applied to an open job posting on her own initiative. (*Id.* (citing Gassner decl., Geoghegan decl.)). Additionally, EGCC argues that Ms. Gassner's role "has little overlap with her prior job duties at SRC," as her new position "focuses on general enrollment, admission and retention goals and strategies at EGCC." (*Id.* at 4 (citing Geoghegan decl.)). "Most of her job functions," EGCC continues, "do not involve collaborating

---

[2] The precise dates are unclear, but inconsequential. By SRC's account, Ms. Gassner ended her employment with SRC on June 29, 2022, and was hired by the College "on or around July 7, 2022." (ECF No. 18 at 8 (citing Braithwaite decl.)). By EGCC's account, Ms. Gassner accepted employment with the College "on or about June 19, 2022, and started work on or about June 28, 2022." (ECF No. 20 at 3 (citing Geoghegan decl.)).

[3] The Restricted Units Agreement is a different type of non-competition agreement, limiting Ms. Gassner's ability to accept employment in a similar line of work following her departure from SRC. (*See id.* at 9 (citing Restricted Units Agreement)). Whether Ms. Gassner's conduct has violated the Restricted Units Agreement is, or shortly may be, the subject of collateral litigation in another court.

with SRC on the Free Benefit College Program or marketing the Free Benefit College Program to union members and their families." (*Id.* (citing Geoghegan decl.)). Such competition would be "impossible," since DOE forbade the College "from enrolling any students in the Free College Benefit Program after July 18, 2022." (*Id.* at 9). Finally, EGCC avers that Ms. Gassner resigned from SRC prior to the vesting period of her Restricted Units Agreement, rendering that non-competition restriction "a nullity." (*Id.* at 3 (citing Gassner decl.)).

Having considered these arguments, the Court concludes that EGCC's hiring of Ms. Gassner is not in violation of the preliminary injunction Order. The preliminary injunction enforced the contract's non-competition clause, covering "any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members." (ECF No. 2-2 Amend. No. 1 ¶ (c)). On the evidence now before the Court, the hiring of Ms. Gassner is not *for the purpose of* competing with the Collaboration. SRC might have a case if EGCC had hired Ms. Gassner to perform in-house union outreach, thus cutting SRC out of the referral process. The evidence, however, tells that Ms. Gassner is performing general administrative work across the College. Such work would not have the "purpose" of competing with the Collaboration.

SRC's arguments to the contrary are not availing. The core concern SRC raised at the Local Rule 65.1 Conference is that Ms. Gassner now serves as the College's liaison to SRC and purportedly is using her insider knowledge to SRC's detriment. Yet, the contract does not prohibit Ms. Gassner from serving in such a role, so long as EGCC is not competing with the Collaboration. In arguing otherwise, SRC is attempting to read a general "no-poach" clause into the contract. The Court previously rebuffed EGCC's attempt "to graft a term into a seemingly unambiguous provision" (ECF No. 14 at 12); and that principle operates both ways. Lastly, any potential breach

4

of the Restricted Units Agreement by Ms. Gassner is not a basis for contempt, as the College is

not a party to that contract. Nothing in the Court's preliminary injunction ruling purported to bind

EGCC to any contract other than the Collaboration Agreement.

Thus, EGCC is not in contempt by hiring Ms. Gassner, and it will not be ordered to show

cause. On this request, Plaintiff's Motion is **DENIED.**

### III.  EXPANSION OF PRELIMINARY INJUNCTION

SRC also seeks to expand the Court's preliminary injunction in four related ways:

> (1) [to] enjoin EGCC from continuing to wrongfully withhold profit-sharing
> payments owed to SRC in the amount of $2,357,153.08 for semesters that ended
> prior to December 2021; (2) ordering the immediate payment of the same by August
> 19, 2022; (3) [to] enjoin immediate future wrongful withholding and require EGCC
> to submit payment of any undisputed profit-sharing payment due for the spring
> 2022 and summer 2022 semesters on or before September 30, 2022; and (4) to
> require EGCC to immediately allow SRC to perform an audit of the Collaboration,
> which the Collaboration Agreement permits under Section 7.4.

(ECF No. 18 at 1–2).

For the Court to expand its preliminary injunction, SRC again must demonstrate that its

requested relief is warranted under the four traditional factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether
> the movant would suffer irreparable injury without the injunction; (3) whether
> issuance of the injunction would cause substantial harm to others; and (4) whether
> the public interest would be served by the issuance of the injunction.

*Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012).

### A.  Past-Due Profit Sharing

The profit-sharing payments are a matter that SRC reserved in its Complaint and did not

pursue in its prior Motion. (*See* ECF No. 1 ¶ 16 n.1). The applicable clause provides:

> Within thirty (30) days of the end of the Summer and Fall Semesters, EGCC will
> provide SRC with a semester reconciliation of the Revenue collected and Operating
> Expenses paid in each such semester . . . . EGCC will distribute the Surplus from
> the Collaboration Account as follows: 50% to SRC and 50% to EGCC.

(ECF No. 2-2, Ex. B ¶ 3). Spring semester profit-share payments are made on a separate schedule, due "promptly after the receipt of final numbers generated as part of EGCC's audit statements, but no later than September 30th of the following Fiscal Year." (*Id.*). The parties have referred to this auditing window at the end of the fiscal year as the "true-up" period.

SRC states it has made repeated demands for $2,357,153.08 in profit-share payments from the fall 2021 semester and earlier, which now are long overdue. (ECF No. 18 at 5–6 (citing Braithwaite decl., Leishure decl.)). According to SRC, the College recognized these liabilities in financial reports presented to its Board of Trustees. (*Id.* at 15 (citing Leishure decl.)). SRC believes the College is withholding these payments in bad faith, as part of "an attempt to squeeze out SRC's ability to survive." (*Id.* at 16). If the past-due profit-share payments are not received by the end of this month, SRC represents it will have "no other choice but to significantly reduce its staffing to continue its operations," by "terminating approximately 35 employees." (*Id.* at 17–18 (citing Braithwaite decl.)).[4]

EGCC responds that the profit-share amounts are the subject of a continuing dispute, occasioned by the DOE investigation and its own audits. (ECF No. 20 at 5–8, 12–13). At the Local Rule 65.1 Conference, EGCC explained that DOE likely will order a clawback of previous Pell funding, making it imprudent to distribute Collaboration funds. Additionally, EGCC reported that current profit-share payments could be subject to offset against overallocations made in prior semesters, when the Collaboration improperly received credit for on-campus enrollment. In the briefing, EGCC clarifies that its acknowledgement of potential liabilities was "nothing more than an estimate provided to the Board of Trustees based on SRC's July 11, 2022 demand," and was

---

[4] SRC's Motion originally reported these terminations would have to occur August 19, 2022, unless the Court intervened sooner. At the Local Rule 65.1 Conference, SRC revised its estimate to the end of the month based on its current cash-on-hand.

not an admission of sums due and owing. (*Id.* at 5–6 (citing Geoghegan decl.)). Separately, EGCC notes it has "continue[d] to make timely bi-weekly operating expense payments" to SRC, meant "to cover SRC's salaries, wages, and other reimbursable expenses like marketing and IT costs." (*Id.* at 4–5 (citing Geoghegan decl.)). These payments, which are governed by a separate provision of the contract, have totaled over $2 million since April 2022. (*Id.* (citing Geoghegan decl.)). Thus, EGCC reasons, "SRC continues to have funds available to pay its employees." (*Id.* at 5).

SRC's arguments are well taken. First, SRC is likely to show the College breached its contract by withholding these profit-share payments many months past the due date. EGCC's belatedness is not saved by its claim that past overallocations might offset some of its current liabilities. At the Conference, EGCC could not give a certain calculation of the alleged overpayments, explaining that the issue had arisen only recently and would need to be confirmed through audits. These profit-share payments came due in January 2022 and earlier, months before the overallocation issue arose. Likewise, the possibility of future DOE fines does not entitle the College to withhold payments from 2021 and earlier. At the Conference, the parties represented to the Court that past payments to SRC are not currently within the purview of DOE's investigation. Again, these profit-share payments would have delivered to SRC months ago but for the College's delay. Neither rationale can explain why the College would be in arrears for past semesters, nor why the College could withhold funds unilaterally without invoking the contract's dispute resolution mechanism. On the evidence now before the Court, the College's reasoning appears pretextual, which gives SRC a strong likelihood of success on the merits.

The remaining preliminary injunction factors continue to favor SRC. As the Court held previously, "severe financial hardship" can suffice for irreparable injury if it would "completely 'wipe[] out'" a movant, such that a delay in relief "would render a later judgment on the merits

7

meaningless." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978). The Court specifically identified "the estimated \$2.65 million purportedly withheld by EGCC" as making SRC's financial hardship "even more immediate." (ECF No. 14 at 13).[5] The College's payment of operational expenses does not cure its withholding of profit-share payments. On the current evidence, operational expenses are not sufficient for SRC to pay its overhead, meet its debt service obligations, and otherwise avoid the "clear path to insolvency" that the preliminary injunction sought to avoid. (*Id.* at 14). The Court's analysis of third-party harms and the public interest remains unchanged. "[T]he Court sees no inequity in requiring EGCC to honor its contractual obligations," and the public interest neither favors nor disfavors injunctive relief in this "private contractual dispute." (*Id.* at 15).

In a final argument, EGCC contends that injunctive relief will disrupt the status quo, whereas the object of a preliminary injunction generally is to maintain it. *See Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016). *Stenberg* considered this argument and rejected it head-on:

> It is often loosely stated that the purpose of a preliminary injunction is to preserve the status quo. . . . It must not be thought, however, that there is any particular magic in the phrase "status quo." The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. [It] often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.

---

[5] \$2.65 million is the approximate sum of \$2,357,153.08 in past-due profit-share payments and \$300,000 in past-due operating expenses. (*See* ECF No. 1 ¶¶ 76–83). If any operating expenses remain owed, they are not at issue in this Motion.

573 F.2d at 925 (internal citations omitted). Here, too, it is a state of wrongful *inaction* that threatens to cause irreparable harm. It is within the Court's equitable powers to compel action—specifically, adherence to the contract—that will preserve the Court's ability to render a meaningful judgment on the merits.

Accordingly, the Court will expand its preliminary injunction to prohibit EGCC from continuing to withhold profit-share payments for semesters that ended prior to December 31, 2021. EGCC shall deliver payment in the amount of $2,357,153.08, not later than August 31, 2022. On these requests, Plaintiff's Motion is **GRANTED.** If the evidence later reveals an overpayment—whether due to enrollment misallocations in previous semesters, DOE fines, or otherwise—EGCC may pursue appropriate recoupment via a counterclaim or through the contract's dispute resolution clause.

## B. Further Relief

In addition to immediate payment of past-due profit-share amounts, SRC makes two forward-looking requests. It asks that the preliminary injunction be extended to prohibit wrongful withholding of profit-share payments for the spring 2022 and summer 2022 semesters, coming due September 30, 2022; and to require EGCC to submit to an immediate audit by SRC. (ECF No. 18 at 1–2). EGCC disputes the profit-sharing calculation, though final numbers are not yet available. (ECF No. 20 at 12). EGCC also reports that it has begun to produce documents on a rolling basis in response to the audit request. (*Id.* at 7–8 (citing Geoghegan decl.)).

Given how the posture of this case has developed over the preceding month, there is a high likelihood of intervening factual developments before additional profit-share payments come due on September 30, 2022. It appears to the Court that efforts are underway to "true-up" Fiscal Year 2022 figures and respond to audit requests. To the extent SRC speculates otherwise, its request for

relief is premature. Without greater certainty of impending irreparable harm, the Court will not expand the preliminary injunction any further at this time. SRC's requests to enjoin withholding of profit-share payments after September 30, and to compel an audit of EGCC's financial records, are **DENIED** without prejudice. The Court expects the parties will keep it apprised of factual developments and will engage Court-supervised discovery in the event either party resists or delays responding to audit requests and document productions.

## IV.   CONCLUSION

For the reasons stated, Plaintiff's Motion (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART.** The request for an Order to Show Cause is **DENIED**; the request to expand the preliminary injunction is **GRANTED** as to past-due profit-share payments; and all further relief is **DENIED.**

Accordingly, Defendant EGCC is **ENJOINED** from continuing to withhold profit-share payments for semesters ending prior to December 31, 2021. Payment for the same, in the amount of **$2,357,153.08,** shall be tendered to SRC no later than **August 31, 2022.** Plaintiff will not be required to post an additional security under Fed. R. Civ. P. 65(c).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 23, 2022**