**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| STUDENT RESOURCE CENTER, LLC, | ) ) ) | |
| *Plaintiff,* | ) ) | **Case No. 2:22-cv-2653** |
| v. | ) ) | **Chief Judge Algenon L. Marbley** |
| EASTERN GATEWAY COMMUNITY COLLEGE, | ) ) ) | **Magistrate Judge Chelsey M. Vascura** |
| *Defendant.* | ) | |

<u>**PLAINTIFF'S OBJECTION TO OPINION AND ORDER (ECF No. 58)**</u>

Plaintiff Student Resource Center ("SRC"), pursuant to Federal Rule of Civil Procedure 72(a), hereby files its objection to Magistrate Judge Vascura's Opinion and Order, ECF No. 58, entered July 26, 2023 (the "Order Denying Leave"), denying SRC's Motion for Leave to File Second Amended Complaint, ECF No. 52 (the "Motion for Leave"). The Order Denying Leave is clearly erroneous and contrary to law because it incorrectly finds, contrary to law and fact, that SRC alleged in the First Amended Complaint, ECF No. 28 (the "FAC"), that the Collaboration Agreement (the "Agreement") "must terminate as of no later than October 10, 2022." Order Denying Leave, at 5. This is wrong. SRC was clear in the FAC, and consistently thereafter, that the Agreement remained in effect, and SRC continued performing under the Agreement through May of 2023. Furthermore, this is an issue that is before the Court in the context of a pending motion related to injunctive relief and therefore is not appropriately determined in the context of a motion to amend the pleadings. As further outlined herein, this erroneous finding infects the Order Denying Leave's ultimate determination that SRC lacked good cause to file the Second Amended Complaint, ECF No. 52-1 ("SAC").

## I.     Factual Background

This action concerns the respective obligations and duties of SRC, a private educational services company, and Eastern Gateway Community College ("EGCC"), a public college. Under the Agreement, SRC interfaced with unions, fielded inquiries from union members, advised those members on enrollment, and assisted them with the admissions process. Opinion & Order, ECF No. 14 ("Preliminary Injunction Order"), at 1-2. The term of the Agreement was through June 30, 2027. *Id.* at 2. Issues between SRC and EGCC arose in March 2022, when SRC terminated its CEO, Michael Perik, refused to acquiesce to EGCC President Michael Geoghegan's demand that he be reinstated, and other SRC executives were placed on probation and resigned. *Id.* at 2-3.

On May 12, 2022, EGCC served SRC with a "Written Notice of Material Breach and Intention to Terminate the Collaboration Agreement", claiming certain material breaches of the Agreement by SRC. *Id.* at 3-4. EGCC's stated intent was to terminate the Agreement on July 11, 2022—which was 60 days after service of the May 12, 2022 notice on EGCC, based on the Agreement's cure period. *Id.* at 5.

Seeking to prevent the termination of the Agreement, SRC filed its Complaint and Motion for Preliminary Injunction, ECF Nos. 2, 12 (the "Injunction Motion") on June 30, 2022. *Id.* at 5. Therein, SRC contended that EGCC had breached the Agreement by, among other things, withholding "past-invoiced operating expenses and unreconciled profit share payments" owed to SRC under the Agreement. *Id.* at 5-6. SRC sought injunctive relief to prohibit EGCC for terminating the Agreement and violating the Agreement's non-competition provisions. *Id.* at 6-7.

The Court held a hearing on the Injunction Motion on July 7, 2022 and orally granted the Injunction Motion, as confirmed in the Preliminary Injunction Order. *Id.* at 1. In doing so, the Court found that the Agreement could only be terminated based on the specific purported material

2

breaches identified by EGCC in its May 12, 2022 notice to SRC because, as to any other purported

material breaches, "the mandatory 60-day cure period in Section 10.2(b) has not begun to run." *Id.*

at 9. The Court found that SRC had established a significant likelihood of demonstrating both that

the termination of Perik was not a material breach of the Agreement and that EGCC had breached

the Agreement's non-competition clause. *Id.* at 9-13. After finding the other preliminary injunction

factors also satisfied, the Court granted the Injunction Motion. *Id.* at 13-16.

As noted by the Court, SRC's claims for damages for withheld payments were not at issue

in the Injunction Motion. *Id.* at 13, n. 1. Those damage claims are comprised of two separate

payment streams under the Agreement. These were: (1) profit-sharing payments owed on a

semester-by-semester basis by EGCC to SRC and (2) reimbursements owed by EGCC to SRC for

its "Operating Expenses," for which SRC invoiced EGCC at biweekly intervals. *Id.* at 6.

Subsequent events after the Court granted the Injunction Motion forced SRC to seek

additional preliminary relief from the Court. On July 18, 2022, the U.S. Department of Education

("DOE") instructed EGCC to "cease and desist from administering the Collaboration in its existing

form, which DOE believes is in violation of Title IV." Opinion & Order, Dkt. 23, at 2. As a result,

as of August 23, 2022, EGCC claimed that "these measures will culminate in […] the end of the

Collaboration." *Id.* (internal citation omitted). At the same time, SRC sought to expand the Court's

Preliminary Injunction Order to "enjoin EGCC from continuing to wrongfully withhold profit-

sharing payments owed to SRC in the amount of $2,357,153.08 for semesters that ended prior to

December 2021" and to "enjoin immediate future wrongful withholding and require EGCC to

submit payment of any undisputed profit-sharing payment due for the spring 2022 and summer

2022 semesters on or before September 30, 2022." *Id.* at 5 (internal citation omitted). In response,

EGCC specifically noted that it "has continue[d] to make timely bi-weekly operating expense

payments to SRC," meant to cover SRC's salaries, which had totaled over $2 million since April 2022, and that, as a result, EGCC claimed that "SRC continues to have funds available to pay its employees." *Id.* at 7 (internal citations omitted).

Upon SRC's renewed motion, the Court specifically found that, based on the evidence before it, "operational expenses are not sufficient for SRC to pay its overhead, meet its debt service obligations, and otherwise avoid the clear path to insolvency that the preliminary injunction sought to avoid." *Id.* at 8 (internal citation omitted). The Court noted that any operating expenses that may have remained owed as of that date were not then at issue in the dispute over EGCC's profit-share withholding and ordered EGCC to pay $2,357,153.08 in satisfaction of those amounts not later than August 31, 2022. *Id.* at 8-9, n. 1.

Just days after making that payment, on September 9, 2022, Aimee Leishure of SRC sent EGCC President Geoghegan an email containing both an invoice for a profit sharing request and an invoice for expense reimbursements (dated September 6, 2022). *See* Leishure/Geoghegan Emails, attached hereto as Exhibit 1.[1] Mr. Geoghegan responded that same day "I will pay these last two salaries and expense invoices under protest as we should not have to pay for SRC overhead, admission counselor and academic advisors when there is no enrollment activity taking place under DOE's cease-and desist order." *Id.* However, despite Mr. Geoghegan's above promise to pay, EGCC never did so. On September 28, 2022, Ms. Leishure sent Mr. Geoghegan an additional invoice for expenses reimbursements, while reiterating that the September 6, 2022 invoice for expense reimbursements remained unpaid, meaning a total of $392,070.58 of operating expense reimbursements were owed as of that date. *See* Leishure/Geoghegan Emails, attached hereto as Exhibit 2. EGCC also failed to pay this invoice.

---

[1] The Court can properly consider this evidence because its inherent power extends to taking new evidence in non-dispositive matters after a decision by a magistrate judge. *Banner v. City of Flint*, 99 F.App'x 29, 35 (6th Cir. 2004).

This was the reality of the situation between SRC and EGCC when, on October 10, 2022, SRC filed the FAC. *See* generally FAC. The FAC asserted five claims for relief. First, for a declaratory judgment that SRC did not breach the Agreement by terminating Perik (addressed by the Preliminary Injunction Order). *Id.*, ¶¶ 121-128. Second, for breach of contract based on EGCC's failure to pay amounts owed under the Collaboration Agreement, specifically May and June 2022 operating expenses in the amount of $300,000, and the failure to make profit-sharing payments through December 31, 2021 (partially addressed by the Court's August 23, 2022 order). *Id.*, ¶¶ 129-139. Third, for breach of contract based on EGCC's breach of the Agreement's non-competition provisions. *Id.*, ¶¶ 140-149 (addressed by the Court's July 11, 2023 order). Fourth, for reimbursement for operational expenses owed as of that date, in the amount of $692,070.58 (the $300,000 referenced in Count II as well as the $392,070.58 referenced in Ms. Leishure's September 28, 2022 email), and as "will continue to increase," plus profit-sharing payments owed after December 31, 2021. *Id.*, ¶¶ 150-157. Fifth, for EGCC's breaches of representations and warranties within the Agreement that resulted in the July 18, 2022 cease and desist letter from DOE to EGCC that was then in effect. *Id.*, ¶¶ 158-168.

No fewer than six times, SRC alleged in the FAC that the Agreement remained in effect as of the date of the FAC. *Id.*, ¶¶ 1, 14, 59, 64, 144, 159. In two paragraphs, both specifically referencing the implications of the DOE's cease and desist letter, SRC alleged, as EGCC itself had previously stated, that the Agreement "must be terminated" or that "there is no option but for its termination." *Id.*, ¶¶ 95, 167. Similarly, SRC sought a declaration from the Court "that EGCC has materially breached the Collaboration Agreement and on that basis, it is terminated." Id., Prayer for Relief, (d). In so doing, SRC did not (because it could not under the Agreement and this Court's prior orders) unilaterally terminate the Agreement as of the date of the FAC. Instead, SRC sought

a future declaration from the Court that, based on EGCC's non-compliance with DOE regulations, the Agreement should be terminated by a future Court order.

Following an initial pretrial conference, on October 19, 2022, the Court set a November 30, 2022 deadline to amend the pleadings. Just two days later, on October 21, 2022, a preliminary injunction was granted in favor of EGCC in its litigation against the DOE regarding the DOE's July 18, 2022 cease-and-desist letter to SRC. *See Eastern Gateway Comm. College v. Cardona*, No. 2:22-cv-3326, Opinion and Order, ECF No. 37. Following that, EGCC reached out to SRC to request that SRC resume performance (even though SRC had never ceased performing) under the Agreement, to which SRC's counsel promptly responded with an October 27, 2022 letter. *See* SRC's Reply in Support of Motion for Leave (the "Motion for Leave Reply"), Ex. 1, ECF No. 57-1, PAGE ID #1127. Of course, such an outreach is explicitly inconsistent with EGCC's later wrongful claims that SRC terminated the Agreement as of October 10, 2022.

In the October 27 letter, SRC's counsel noted the increased balance owed for operating expenses to SRC, that EGCC "remains in default" under the Agreement based on its representations and warranties therein related to its compliance with DOE regulations, and sought EGCC's assurances that it was in compliance with DOE regulations. *Id.* Nowhere in that letter did SRC claim that the Agreement had already terminated, but instead that it remained in effect with EGCC in default. EGCC did not substantively respond to the October 27, 2022 letter until December 2, 2022, when its counsel said "[w]ith regard to the October 27, 2022 correspondence notifying EGCC of alleged material breaches of the Collaboration Agreement, EGCC continues to dispute that SRC is owed any additional amounts under the Collaboration Agreement and that the Free College Benefit program – which SRC played a key role [in] implementing – has ever violated Title IV." *See* SRC's Reply in Support of Motion for Leave, Ex. 2, ECF 57-2. Even then, after the

6

deadline to amend the pleadings, there is no indication that EGCC was claiming, or would claim, that the Agreement had been terminated by SRC.

The first indication that EGCC would so contend was its Motion for Relief from Order Pursuant to Rule 60(b), ECF No. 39, filed January 13, 2023 (the "Motion for Relief"). The Motion for Relief asked the Court to undo its July 11, 2023 and August 23, 2023 preliminary orders because EGCC was now claiming that the Agreement had terminated at some prior date (including July 18, 2022, October 21, 2022, or December 30, 2022). *See* Motion for Relief, ECF No. 39, at 7-9. Similarly, EGCC claims that SRC had not performed under the Agreement after October 2022. *Id.* at 8-9. In its response, filed February 3, 2023, SRC noted that the FAC did not terminate the Agreement and noted once again, as it had repeatedly in the FAC, that "the Agreement remains in effect by fact and by law" and submitted evidence in support of that position. SRC's Response to EGCC's Motion for Relief from Order Pursuant to Rule 60(b), ECF No. 43, at 3; *see generally* Braithwaite Decl., ECF No. 43-1. Briefing on the Motion for Relief, which remains pending, continued into March 2023, with SRC seeking leave to file a sur-reply, which EGCC opposed. [2]

SRC also explored how to most efficiently raise with the Court the issues of EGCC's ongoing failure to reimburse operating expenses, along with the related issue of EGCC's continued acceptance of SRC's services under the Agreement, while both claiming that the Agreement had terminated and refusing to pay for those services. Following discussions with EGCC's counsel, SRC filed a Motion for Status Conference on May 17, 2023, seeking to raise this issues. *See* Motion for Status Conference, ECF No. 48. When that was denied the next day (*see* ECF No. 49) SRC filed a motion to motion to reset certain upcoming case deadlines on June 1, 2023, followed by the

---

[2] The Motion for Relief remains pending before the Court. Among other pending motions are EGCC's Motion to Strike and Dismiss, in Part, SRC's First Amended Complaint (ECF No. 33) and SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34).

Motion for Leave on June 20, 2023. *See* Joint Motion to Modify Preliminary Pretrial Order, ECF No. 50; Motion for Leave. It also determined that it could no longer continue to provide services under the Agreement after May 2023 given EGCC's continued refusal to pay for the same.

The Motion for Leave sought leave to file the SAC. *See generally* Motion for Leave. The SAC added two counts to the counts that had previously been asserted in the FAC, counts VI and VII. *See generally* SAC. Count VI was for breach of contract for EGCC's failure to reimburse operating expenses. The invoices at issue included the September 6, 2022 and September 28, 2022 invoices for which SRC had specifically asserted claims in the FAC, along with invoices thereafter dated October 14, 2022-May 17, 2023 (all after the filing of the FAC) representing in greater detail the additional amounts owed for future reimbursements sought by SRC through Count IV of the FAC. SAC, ¶ 177. The SAC also added a count for unjust enrichment, based on EGCC's assertion, made for the first time in January 2023 as outlined above, "that the Collaboration Agreement terminated at the end of 2022." *Id.*, ¶ 183. The briefing on the Motion for Leave concluded on July 25, 2023 and the Order Denying Leave was entered on July 26, 2023.

## II.     Applicable Legal Standard

District judges reviewing magistrate judges' orders on non-dispositive motions, such as the Order Denying Leave, "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Objections are timely if made within 14 days of the order at issue. *Id.*

The clearly erroneous standard applies to factual findings. *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992). On the other hand, legal conclusions are reviewed "under the more lenient contrary to law standard." *Id.* (internal citation omitted). A review under the contrary to law standard is "plenary" and a court may "overturn any conclusions of law which contradict or

ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id.* (internal citation omitted). In doing so, the Court "must exercise its independent judgment with respect to a Magistrate Judge's legal conclusions." *Id.* Ultimately, a magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F.Supp.3d 830, 833 (M.D. Tenn. 2018) (internal citation omitted); *see also Verhovec v. City of Trotwood*, No. 3:14-cv-363, 2015 WL 13021484, at *6 (S.D. Ohio Sept. 25, 2015) (internal citation omitted).

When deciding whether a factual finding is clearly erroneous, "the test is whether there is evidence in the record to support the [] finding, and whether its construction of that evidence is a reasonable one." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). A factual finding, including one by a magistrate judge on a non-dispositive motion is "clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *LaFountain v. Martin*, No. 1:07-cv-76, 2010 WL 1526304, at *1 (W.D. Mich. Apr. 15, 2010) (internal citation omitted).

### III. Law and Argument

#### a. The Determination that SRC Alleged in the FAC that the Agreement Terminated in October 2022 is Clearly Erroneous and Contrary to Law

Making clearly erroneous factual findings is an abuse of discretion, and occurs when a court "ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1546 (11th Cir. 1996) (internal citation omitted); *see also Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. 559, 563, n. 2 (2014). A magistrate judge's order is contrary to law when it "fails to engage in a meaningful interpretation of the contract language at issue." *Trustees v. Laborers*

9

*Pension Trust Fund-Detroit & Vicinity v. Metallizers of Mid-America, Inc.*, No. 13-14874, 2014 WL 4059864, at *2 (E.D. Mich. Aug. 14, 2014). Furthermore, "[w]hen a Magistrate Judge misconstrues a party's argument, that *could* contribute to a finding that the Magistrate Judge's ruling was contrary to law or that the Magistrate Judge made a clear error of law." *Doe # 11 v. Lee*, No. 3:22-cv-00338, 2023 WL 1929996, at *4 (M.D. Tenn. Feb. 10, 2023) (emphasis in original). The Order Denying Leave ignored relevant evidence, failed to meaningfully interpret the contract provisions of the Agreement implicated by the FAC, and clearly misunderstood SRC's claims and allegations as raised in the FAC in determining, based solely on two paragraphs of the FAC, that SRC alleged that the Agreement had terminated as of October 10, 2022.

When all the evidence is properly considered, it is clear SRC never alleged that the Agreement terminated as of October 10, 2022. Thus, the contrary determination of the Order Denying Leave is clearly erroneous. The Order Denying Leave claims SRC, through the Motion for Leave and the SAC, "seeks leave to amend its pleadings to allege that the Agreement did *not* terminate in October 2022 and that it remains in effect through the present." Order Denying Leave, at 2 (emphasis in original); *see also id.* at 4 ("Nor does Plaintiff explain why it could not have alleged prior to November 30, 2022, that the Agreement remains in effect, in contrast to its allegations in the FAC that the Agreement must terminate as of no later than October 10, 2022, or what underlies Plaintiff's change in position on the Agreement's termination.").

That determination in the Order Denying Leave is based entirely on paragraphs 95 and 167 of the FAC, which provide that the Agreement "must be terminated" and that "there is no option but for its termination" and appears to uncritically accept EGCC's argument that those allegations mean that SRC was alleging the Agreement had already terminated. *Id.* at 2; EGCC's Opp. to Motion for Leave, ECF No. 55, at 2. In citing those provisions, and nothing more, the Order

10

Denying Leave ignores or misunderstands all of the following relevant evidence and fails to engage in a meaningful interpretation of the provisions of the Agreement necessarily implicated by those paragraphs of the FAC:

- No fewer than six times, SRC alleged in the FAC that the Agreement remained in effect as of the date of the FAC. FAC, ¶¶ 1, 14, 59, 64, 144, 159;
- SRC sought, as part of its relief through the FAC, an order from the Court that the SAC be terminated;
- Per the Agreement and this Court, termination requires notice and a 60-day period. Preliminary Injunction Order, at 9[3];
- SRC did not allege any termination notice in the FAC, but alleged instead that "EGCC's actions to date make it impossible for EGCC to cure those material breaches of the Collaboration rendering notice of the breach to be futile," and requested that the Court declare the Agreement to be terminated. FAC, ¶ 165;
- The context of paragraphs 95 and 167 of the FAC, in which both allegations are specifically in reference to DOE determinations, at that time, that it was "'unlikely' that EGCC will be able to meet the Title IV requirements." FAC, ¶¶ 85-94, 164;
- The undisputed evidence that on and after October 10, 2022 both parties were proceeding under the Agreement and it remained active and in effect. *See e.g.*, SRC's Response to EGCC's Motion for Relief from Order Pursuant to Rule 60(b), ECF No. 43, at 3; Braithwaite Decl., ECF No. 43-1, ¶¶ 7-9; Motion for Leave Reply, Exs. 1 and 2, ECF Nos. 57-1 and 57-2;

It is obvious from the FAC that SRC was not claiming the Agreement terminated in October 2022. The SAC makes the point even more explicitly by specifically alleging, in accord with the above, that it has continued to perform its duties under the Collaboration Agreement well into 2023. *See* SAC, ¶¶ 96-101, 185. While there should not have been any confusion regarding the allegations of the FAC, to the extent there was, permitting the SAC to clarify (not contradict) SRC's position would benefit the Court and the parties and ensure substantial justice.

Furthermore, the Order Denying Leave should not even have purported to decide the issue of if, or when, the Agreement purportedly terminated. That issue was first raised by EGCC in the

---

[3] Under Ohio law, to which the Agreement is subject, general standards of contract interpretation, such as the application of plain meaning and the need to give effect to all provisions of a contract, apply to contract termination provisions. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 274, 714 N.E.2d 898 (1999).

Motion for Relief, seeking to undo the Preliminary Injunction Order, based in part on the claim that SRC had not performed under the Agreement after October 2022. *See generally* Motion for Relief. SRC responded with evidence that it had performed under the Agreement after October 2022. *See* Braithwaite Decl., ECF No. 43-1. The issue of if, or when, the Agreement terminated should be determined based on that evidence as part of the Court's decision on the Motion for Relief, not as part of the Order Denying Leave. Furthermore, under 28 U.S.C. § 636, motions for injunctive relief are exempted from the pretrial matters that can be referred to a magistrate judge to "hear and determine," and, as a result, a magistrate judge is only empowered to submit "proposed findings of fact and recommendations for the disposition" of such motions. 28 U.S.C. § 636(b)(1)(A)-(B). It is improper for the Order Denying Leave, presented as an order, rather than a Report and Recommendation, to purport to pass upon the central issue of the Motion for Relief.

> **b. The Determination that Count VI of the SAC Was A New Claim and Not an Appropriate Supplement to an Existing Claim Was Clearly Erroneous and Contrary to Law[4]**

The Order Denying Leave states that "Plaintiff does not explain why it could not have sought leave to amend or supplement the FAC with allegations of non-payment (which extend as far back as September 2022) prior to the November 30, 2022 deadline." Order Denying Leave, at 4. The factual determination therein that the September 2022 non-payments referenced in the SAC, as well as future non-payments, were not alleged in the FAC is clearly erroneous. In fact, the FAC, filed October 10, 2022, clearly asserted claims related to all non-payments through that date, including the September 2022 non-payments, and makes clear that it also applies to future non-payments. Furthermore, the determination that SRC was required to seek leave to supplement the

---

[4] This Court should consider whether Count VI of the SAC is a proper supplement to the FAC under Rule 15(d) based on the proposed allegations of the SAC, even though SRC initially sought leave to amend rather than to supplement the FAC. *See, e.g., Przywieczerski v. Blinken*, No. 20-02098, 2021 WL 2385822, at *2 (D. N.J. Jun. 10, 2021) (citing cases).

FAC following every instance of non-payment between October 10, 2022 and November 30, 2022, or later explain why it did not, is contrary to law.

Both in its factual allegations and as part of Count IV, the FAC alleges that, at that time, EGCC owed SRC "past due Operational Expenses in the amount of $692,070.58 but this amount will continue to increase." FAC, ¶¶ 73, 151. That past due amount, as alleged in the FAC, is the product of the $300,000 in unpaid operational expense reimbursements alleged by SRC in the original complaint, and as restated in the FAC, plus the amount of the September 6, 2022 and September 28, 2022 invoices that remained unpaid as of the October 10, 2022 filing of the FAC. FAC, ¶ 131; SAC, ¶¶ 74, 137, 157, and n. 1; *see* Exhibit 2. Those are the same unpaid September 6, 2022 and September 28, 2022 invoices referenced in the SAC. SAC, ¶¶ 177-178. Furthermore, because SRC was aware of the likelihood that EGCC would also fail to make payments for the reimbursement of operational expenses in the future, it specifically alleged that the amount owed for such unpaid reimbursements would continue to increase. FAC, ¶¶ 73, 151.

With SRC having made such allegations in the SAC, it is contrary to law to hold SRC was required to seek to supplement the FAC following each additional biweekly non-payment by EGCC, or to later explain why it failed to do so. Rule 15(d) permits supplemental pleadings upon "reasonable notice" and on just terms." Fed. R. Civ. P. 15(d). As stated therein, and recognized by courts, supplemental pleadings "set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought. Its function is to bring the action 'up to date.'" *Wiesbord v. Michigan State Univ.*, 495 F. Supp. 1347, 1351 (W.D. Mich. 1980); *see also Stryker Corp. XL Ins. America, Inc.*, No. 1:05-cv-51, 2013 WL 5533609, at *8 (W.D. Mich. Oct. 7, 2013) ("Supplementation of a claim merely to change the amount or nature of the relief requested in the original pleading falls within the heartland of Rule 15(d).").

As noted by the authority cited by the Order Denying Leave, the standard of review for supplementation under Rule 15(d) is the same as for amendment under Rule 15(a). *Spies v. Voinovich*, 48 F.App'x. 520, 527 (6th Cir. 2002). As a result, a court's discretion to grant leave to supplement, like leave to amend, is to be exercised liberally in favor of amendment in the interest of justice." *Clear Cast Grp. Inc. v. Ritrama, Inc.*, Case No. 1:09 CV 0169, 2010 WL 11661415, at *1 (N.D. Ohio. June 9, 2010) (internal citations omitted). Furthermore, the bases for denying leave to supplement, as with leave to amend, thus include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments…" *Adams v. Antonelli College*, No. 1:16-cv-00520, 2017 WL 11568264, at * 3 (S.D. Ohio Jul. 14, 2017).

Under those standards, there is no basis to deny SRC leave to supplement its existing allegations of EGCC's nonpayment of operating expense reimbursements with additional allegations of non-payment that occurred after the FAC. Having already alleged then-existing and future non-payment in the FAC, other than seeking to supplement the FAC every two weeks with each additional instance of non-payment, there was no way to bring the action "up to date" as to EGCC's non-payments until those non-payments stopped. Here, both SRC's performance, and EGCC's non-payment, continued through May 17, 2023, and only stopped because thereafter SRC determined that "because of EGCC's failure to act in good faith and adhere to the terms of the Collaboration Agreement, […] it has no option but to reduce its staffing." *See* SAC, ¶¶ 98-101; Motion for Leave Reply, Ex. 1, ECF No. 57-1, PAGEID #1124. As a result, there was no bad faith or undue delay by SRC in asserting these allegations. Furthermore, SRC provided notice to EGCC of the specific operating expense reimbursements it had failed to pay and the resulting increased amount owed by EGCC. *See, e.g.*, Motion for Leave Reply, Ex. 1, ECF No. 57-1, PAGEID # 1127.

14

Count VI of the SAC should thus be permitted as supplementation of Count IV of the SAC, and the Order Denying Leave is contrary to law. The finding of the Order Denying Leave was based on the fact that the "standards for granting or denying leave to supplement under Rule 15(d) are the same as those for granting or denying leave to amend under Rule 15(a)." Order Denying Leave, at 4 (citing *Spies*, 48 F. App'x at 527 and *Mattox v. Edelman*, 851 F.3d 583, 592 n.6 (6th Cir. 2017)). As noted above, that is true. However, the Order Denying Leave then found that, because the SAC came after the Court's deadline to amend the pleadings in this case, the Rule 15 standard was of "secondary importance" to the "good cause" Rule 16 standard in this case, and denied leave to supplement and amend on that basis. Order Denying Leave, at 4. As to supplementation, this is contrary to law.

Neither of the cases cited by the Order Denying Leave that equated the Rule 15(d) and Rule 15(a) standards involve the interplay between Rules 15 and 16 as to an attempt to supplement, rather than amend. *See generally Spies*, 48 F. App'x 520 and *Mattox*, 851 F.3d 583. In fact, as this court has acknowledged, there is no Sixth Circuit law that requires good cause to supplement a complaint after the deadline to amend the pleadings. *Melvin v. Worthington Ind., Inc.*, No. 2:20-cv-3760, 2021 WL 5339620, at *3, n. 1 (S.D. Ohio Apr. 12, 2021). Numerous courts have found that the "good cause" requirement of Rule 16 does not apply to supplementation under Rule 15(d). *See, e.g., Ohio Valley Env. Coalition v. U.S. Army Corps of Engineers*, 243 F.R.D. 253, 256 (S.D.W.V. 2007); *Predator Intern., Inc., v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970, 2011 WL 7627422, at *9 (D. Colo. Sept. 19, 2011). Thus, SRC need not show good cause to be allowed to use the SAC to bring its allegations up to date.

### c. The Determination that SRC Failed to Show Good Cause for Filing the SAC is Clearly Erroneous and Contrary to Law

The Order Denying Leave notes that "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." Order Denying Leave at 4 (internal citation omitted). SRC does not deny that a Rule 16 "good cause" inquiry is appropriate in this instance. However, it is also true that "scheduling orders are not the Code of Hammurabi" and pretrial orders are not "hoops of steel and may always be modified in the administration of justice." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (internal citation omitted); *Sill Corp. v. U.S.*, 343 F.2d 411, 420 (10th Cir. 1965). The determination of the Order Denying Leave that SRC failed to show good cause for leave to amend is both clearly erroneous and contrary to law.

The determination that SRC failed to show good cause was based on three determinations. First, that SRC should have alleged prior to November 30, 2022 that the Agreement remained in effect. Order Denying Leave, at 5. Second, that SRC should have alleged EGCC's non-payment of operating expense reimbursement beginning in September 2022 prior to the November 30, 2022 deadline to amend pleadings. *Id.*, at 4-5. Third, that SRC "was in possession of the facts underlying the proposed amendments prior to the amendments deadline." *Id.* at 5.

The first two determinations are incorrect as outlined above—SRC alleged in the FAC that the Agreement remained in effect and alleged EGCC's September 2022 non-payments as well as future non-payments. The third determination is also incorrect, because it too relies on the mistaken notion that SRC knew, or should have known, that, EGCC would, in the future, claim that the Agreement had terminated in December of 2022 while continuing to utilize SRC's services through May of 2023, thus giving rise to SRC's potential unjust enrichment claim.

16

Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause can be shown if a plaintiff shows that "despite their diligence they could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003).[5] The "overarching inquiry" or the "linchpin" of a good cause analysis is the "diligence of the party seeking to deviate from the scheduling order's deadlines." *Orlowski v. Bates*, No. 2:11-cv-01396, 2014 WL 12773800, at *4 (W.D. Tenn. Feb. 11, 2014) (internal citations omitted). When a claim does not arise until after the deadline to amend the pleadings has passed, that reflects good cause for not seeking an amendment prior to the deadline. *Adams*, 2017 WL 11568264, at *3; *see also Smith v. Erie County Holding Center*, No. 08-CV-0485, 2013 WL 2286176, at *2 (W.D.N.Y. May 23, 2013) ("Good cause can be established when a party does not discover a basis to amend the pleadings or add parties until the scheduling order's deadline has passed."). Furthermore, even when proposed a proposed amendment does not arise from "any new information," but instead from an attempt at extra-judicial resolution of the claims before raising them with the Court, good cause also exists for the delay in asserting such claims. *Century Indemnity Co. v. Begley Co.*, 323 F.R.D. 237, 241 (E.D. Ky. 2018).

As part of finding good cause in granting leave to amend after a deadline to amend pleadings, courts have noted, among other factors, "the importance of the amendment." *County of Harris, Texas v. Eli Lilly and Company,* No. H-19-4994, 2021 WL 4427242, at *2 (S.D. Tex. Sept. 27, 2021). Courts have also noted the interest of judicial economy that would be served by handling all claims between the two parties in the existing lawsuit. *Adams,* 2017 WL 11568264, at *4. On the other hand, if leave to amend were not granted, the claims at issue would have to be brought

---

[5] *Leary*, and other Sixth Circuit authority cited by the Order Denying Leave, generally involved cases at more advanced stages of the proceedings than the posture of this case. *Leary*, 349 F.3d at 892 (amendment would require reopening discovery); *Andretti v. Borla Performance Ind., Inc.*, 426 F.3d 824, 834-835 (6th Cir. 2005) (motion for leave to amend filed in response to motion for summary judgment).

in another case between "based on the same set of facts at issue in this case" and likely, "judicial economy would support consolidating the two actions." *Hayes Healthcare Services, LLC v. Meacham*, 331 F.R.D. 441, 443 (S.D. Fla. 2019). Alternatively, if a future action is asserted but not consolidated, that would "drag[] out this dispute and undermin[e] judicial economies for both the court and the parties." *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. CV 12-2071, 2014 WL 12719434, at *2 (E.D. La. May 21, 2014).

Importantly, the discovery of the basis for a leave to amend need not be based on underlying facts, but can also be based on an opponent's legal arguments. For example, in *DN Reynoldsburg v. Shoe Show, Inc.*, No. 2:18-cv-1190, 2019 WL 4233129 (S.D. Ohio Sept. 6, 2019) this Court reversed a magistrate judge's decision that found that a plaintiff had demonstrated good cause for leave to amend in concluding that "Plaintiff could not have reasonably anticipated Defendant's invoking the opening condition as a defense…" *Id.* at *3. The Court did so based on a letter, sent by the defendant's general counsel to Plaintiff's counsel that "disprove[d] Plaintiff's assertion that it was unaware of the opening condition defense until it was brought forward for the first time in Defendant's response to interrogatories. *Id.*

Under Ohio law, "express contracts generally preclude unjust enrichment claims." *Gerace Construction Co., Inc. v. DRC Acquisition, Inc.*, No. 5:22-cv-01941, 2023 WL 2772393, at *2 (N.D. Ohio Mar. 9, 2023). There are exceptions in which an unjust enrichment claim can be plead alongside a breach of contract claim. One such exception, as is relevant here, is that an unjust enrichment claim may be plead as an alternative to a breach of contract claim when "the existence of a contract is in dispute." *Id.* (internal citation omitted). However, to viably plead such a claim, a plaintiff "must plausibly claim no contract existed…" *Id.* at *3.

Here, SRC seeks leave to amend its allegations to add a more specific claim for breach of contract based on nonpayment (Count VI of the SAC) along with a claim for unjust enrichment (Count VII of the SAC). SAC, ¶¶ 174-189. That breach of contract claim, while supplementing an existing breach of contract claim (Count IV) specifically relates to 12 instances of nonpayment by EGCC that occurred after the November 30, 2022 deadline to amend the pleadings. *Id.*, ¶ 177. The unjust enrichment claim is alleged in the alternative to SRC's breach of contract claim, explicitly based on the fact that the continued existence of the Agreement is in dispute, because "EGCC incorrectly asserts that the Collaboration Agreement terminated at the end of 2022." *Id.*, ¶ 183. Prior to EGCC making such an assertion, SRC could not have viably alleged an unjust enrichment claim because there was no dispute as to the fact that the Agreement existed and remained in place.

This Court twice found, on both July 11, 2022 and August 23, 2022 that the Agreement remained in place. SRC repeatedly alleged in the FAC that that the Agreement remained in place. FAC, ¶¶ 1, 14, 59, 64, 144, 159. Most significantly, after the FAC, <u>between October 21, 2022 and October 27, 2022, EGCC asked SRC to perform under the Agreement</u>. *See, e.g.*, Motion for Leave Reply, Ex. 1, ECF No. 57-1. EGCC first claimed that the Agreement terminated as of the end of December 2022 in the Motion for Relief, filed January 13, 2023. *See generally* Motion to Relief. Because that was well after the November 30, 2022 deadline to amend pleadings, SRC could not have alleged such a claim prior to that deadline. Thus, good cause exists for the assertion of such a claim after the deadline through the SAC.

Furthermore, SRC was diligent in pursuing judicial and non-judicial resolutions of the matters raised in both Counts VI and VII of the SAC. As to Count VI, after the filing of the FAC and its allegations concerning EGCC's failure to reimburse operating expenses through that date, SRC notified EGCC of its failure to reimburse operating expenses thereafter. *See, e.g.*, Motion for

Leave Reply, Ex. 1, ECF No. 57-1. SRC also sought to raise with the Court the issues underlying Count VII of the SAC, namely EGCC's claim that the Agreement had terminated, including through its Motion for Status Conference, and, when that was denied, promptly sought leave to file the SAC. *See* Motion for Status Conference, ECF No. 48; Order, ECF No. 49; Motion for Leave.

The SAC is crucially important to SRC's claims against EGCC. SRC has presented evidence that it performed services for EGCC through May 2023. *See generally* Braithwaite Decl., ECF No. 43-1. However, if the Court fails to permit the SAC, SRC would have no recourse within this case to seek payment for such services if the Court sides with EGCC's new argument and finds that the Agreement terminated at the end of 2022 (or any time before that). SRC would thus be forced to pursue its claim in a separate case. That separate case would likely be consolidated with this case, with the end result being the same as allowing the SAC, though with extra work and delay for the Court and the parties. Alternatively, that separate case could proceed on its own, creating myriad inefficiencies for the Court and the parties.

Because good cause exists under Rule 16, the SAC must be permitted under both Rule 16 and Rule 15. As the Order Denying Leave concedes, there is no "significant prejudice that would befall [EGCC] if [SRC] were permitted to amend or supplement the FAC." Order Denying Leave, at 6. Nor, for the reasons outlined above, was there any undue delay by SRC in filing the SAC, a lack of notice to EGCC, or bad faith by SRC.

## IV. Conclusion

For the reasons described herein, SRC respectfully requests that this Court reverse and vacate the Order Denying Leave, grant SRC leave to amend, and order that the SAC be deemed filed *instanter*.

Respectfully submitted this 9th day of August, 2023.

/s/ *Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728)
Jeff Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, OH  43215
Telephone: (614) 628-1429
Facsimile: (614) 628-1433
Email: David.Paragas@btlaw.com
        Rob.Folland@btlaw.com
        Jeff.Bartolozzi@btlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2023, a copy of the foregoing was filed electronically via the Court's CM/ECF filing system and served on all counsel of record.

.

<u>*/s/ Robert C. Folland*</u>
Robert C. Folland