**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STUDENT RESOURCE CENTER, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-2653** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **EASTERN GATEWAY COMMUNITY** | : | **Magistrate Judge Chelsey M. Vascura** |
| **COLLEGE,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on Plaintiff Student Resource Center, LLC's ("SRC") Objection to the Magistrate Judge's Opinion & Order Denying Plaintiff's Motion to Amend the Complaint. (ECF Nos. 51; 58; 59). This Court also addresses Defendant Eastern Gateway Community College's ("EGCC") Motion to Dismiss in Part and Strike the First Amended Complaint ("FAC") and Motion to Vacate (ECF Nos. 33; 39), and Plaintiff's ("SRC") Motion to Dismiss Counterclaims, Motion for Leave to File Sur-Reply, and Motion for Status Conference (ECF Nos. 34; 45; 48). For the reasons that follow:

(1) SRC's Objection (ECF No. 59) to the Magistrate Judge's July 26, 2023 Opinion and Order (ECF No. 58) is **ADOPTED in part and OVERRULED in part** and the Magistrate Judge's O&O is **AFFIRMED WITH MODIFICATIONS**. (ECF No. 58).

(2) EGCC's Motion to Dismiss in Part and Strike SRC's FAC (ECF No. 33) as it relates only to the Motion to Strike is **DENIED**. As it relates only to the Motion to Dismiss in Part, the Motion is **DENIED in part** and **DENIED AS MOOT in part**.

(3) SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34) is **GRANTED in part, DENIED in part, and DENIED AS MOOT in part**.

1

(4) SRC's Motion for Leave to File Sur-Reply (ECF No. 45) is **DENIED**.

(5) EGCC's Motion to Vacate the Preliminary Injunction (ECF No. 39) is **DENIED**.

(6) SRC's Motion for Status Conference (ECF No. 48) is **DENIED AS MOOT**. The parties are instructed to file a joint updated Motion for Status Conference within **seven (7) days** of the date of this Order. A telephonic status conference will take place on **Monday, October 23, 2023 at 3:30 p.m.**

## I.     BACKGROUND

This is a contract case brought by Student Resource Center ("SRC"), a private educational services company, against Eastern Gateway Community College ("EGCC"), a public two-year college based in Steubenville, Ohio. The parties entered a Collaboration Agreement (the "Agreement") in June 2017, the purpose of which is "to develop, market, and offer online courses to members of unions and professional associations," provide academic and career counseling to students, assist with enrollment and course registration, and recruit students—which they have implemented via the Free College Benefit Program ("the Program"). (ECF Nos. 2-3, Braithwaite aff., ¶ 8; 24 at 16). Through the Program, EGCC provides scholarships to more than 90,000 union-affiliated students, (*see* ECF No. 24, ¶ 7), through a "last-dollar" or "last-mile" model of free college in which a state or government institution will pay tuition remining after a student's existing federal financial aid award is used (*Id.*, ¶ 8).

On November 9, 2021, the Ohio Higher Learning Commission ("HLC") placed EGCC on probation because it was out of compliance with criteria for accreditation. (ECF No. 28, ¶ 35). In March 2022, SRC removed then CEO Michael Perik and replaced him with Phillip Braithwaite, after it was discovered that Perik was allegedly assisting EGCC's President Michael J. Geoghegan in hiding from Sterling, a company interested in purchasing SRC, that EGCC had been placed on

probation. (*Id.*, ¶¶ 114 – 16). On May 12, 2022, SRC received a Notice of Breach from EGCC stating that SRC had breached the Agreement by replacing CEO Perik without notifying EGCC in advance. (ECF No. 58 at 1; 28 ¶ 6)).

On July 11, 2022, upon SRC's motion, this Court issued a preliminary injunction enjoining EGCC from: (1) terminating the Agreement pursuant to EGCC's Notice of Breach; and (2) breaching the Agreement's non-compete provision by starting and operating a competing business directly with the unions. (ECF No. 14 at 15–16). Shortly thereafter, on July 18, 2022, the Department of Education ("DOE") issued a Cease-and-Desist letter to EGCC stating that the Free College Benefit program violated Title IV's prohibition against assessing higher charges to Title IV scholarship recipients than those charges assessed to non-Title IV recipients. (ECF No. 28, ¶ 85). On August 23, 2022, this Court expanded the preliminary injunction by requiring EGCC to pay SRC approximately $2.36 million of allegedly withheld profit-sharing payments for the semesters prior to December 31, 2021. (*Id.*, ¶ 71).

On October 10, 2022, SRC filed its First Amended Complaint ("FAC"): (1) in Count I alleging that SRC did not materially breach § 2.5 of the Agreement when it replaced Perik without notice to EGCC; (2) in Count II a breach of contract for about $2.36 million in past due profit-sharing payments and $300,000 in operating expenses from May to June 2022; (3) in Count III a breach of contract for failure to comply with § 8's non-compete provision for contacting SRC's union partners directly and attempting to poach SRC staff; (4) in Count IV a failure to pay just under $700,000 in operating expenses and just under $7 million in profit-sharing invoices; and (5) in Count V a breach of contract for failure to provide student enrollment data to SRC and being in violation of the Agreement requiring compliance with DOE regulations. (*Id.*, ¶¶ 121–68). EGCC

3

argues that certain language used by SRC in the FAC indicates that SRC intended to terminate the Agreement as of the filing of the FAC. (ECF No. 59 at 6).

On October 21, 2022, the EGCC was granted a preliminary injunction to enjoin the DOE from enforcing the Cease-and-Desist letter based on the DOE's failure to provide proper notice. (Case No. 2:22-cv-3326, ECF No. 37). Shortly thereafter, EGCC alleges that it reached out to SRC to resume performance of the Agreement. (ECF No. 59 at 6). Although SRC argues that it never stopped performance, SRC responded on October 27, 2022 and noted in the letter that EGCC was in default of the Agreement because of past-due operating expense invoices and that SRC needed assurances that EGCC was not in violation of Title IV. (*Id.*). On November 30, 2022 the deadline to amend any pleadings in this case passed. (ECF No. 30).

SRC argues that EGCC did not respond substantively to its October 27, 2022 letter until December 22, 2022, at which time EGCC states that it disputed the amounts owed and that the Program never violated Title IV. (ECF No. 59 at 6). In the alternative, EGCC argues that because it did not "cure" the alleged breaches detailed in SRC's October 27, 2022 letter, the sixty-day cure period expired, at the latest, on December 31, 2022 and the Agreement terminated. (ECF No. 39 at 6). On May 17, 2023, SRC, which had refused to provide services to newly admitted students following the DOE's Cease-and-Desist letter and limited services only to students enrolled from previous semesters, stopped providing services entirely due to EGCC's alleged continued refusal to pay outstanding invoices. (ECF No. 59 at 8, 14).

The matter continued, and in June 2023, the parties asked for an extension of certain scheduling deadlines but did not include the deadline to amend pleadings in the request. (ECF No. 50; 51). On June 20, 2023, however, SRC filed a Motion for Leave to File a Second Amended Complaint ("SAC"). (ECF No. 52). The Motion stated that SRC intended to: (1) allege that the

Agreement had not terminated in October 2022 upon its filing of the FAC but remains in effect; and (2) amend the FAC with an additional breach of contract claim and unjust enrichment claim to cover alleged unpaid expenses from September 2022 to the present. (ECF No. 58 at 2). On August 9, 2023, the Magistrate Judge denied the Motion for Leave to Amend the FAC (ECF No. 58), and SRC promptly objected (ECF No. 59).

This Court will now address multiple outstanding motions that are ripe for review: (1) SRCC's Motion to Strike the FAC and Dismiss in Part SRC's FAC (ECF No. 33); (2) SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34); (3) EGCC's Motion to Vacate the Preliminary Injunction (ECF No. 39); (4) SRC's Motion for Leave to File Sur-Reply (ECF No. 45); (5) SRC's Motion for a Status Conference (ECF No. 48); and (6) SRC's Objections to the Magistrate Judge's Order denying Leave to File the SAC (ECF No. 59).

## II.    LAW & ANALYSIS

### A. Motion to Amend Complaint (ECF No. 59)

#### 1. Parties' Arguments

Seven months after November 30, 2022, the deadline to amend pleadings, SRC filed a Motion for Leave to File a SAC. (ECF No. 52). EGCC responded, arguing that SRC filed this motion without explanation, outside of the case timeline, and to add new claims now would prejudice Defendant and cause delay to discovery and other case deadlines. (ECF No. 55).

In the Opinion & Order addressing SRC's Motions, the Magistrate Judge reasoned that SRC failed to demonstrate good cause in violation of Federal Rule of Civil Procedure 16 because it did not attempt to comply diligently with the deadline to amend pleadings. (ECF No. 58 at 4). The Magistrate Judge explained that by the amendment deadline: (1) EGCC was already late on paying six biweekly invoices to SRC; (2) SRC cannot extend the "pleading amendments deadline

indefinitely by continuing to perform services for which Defendant has consistently failed to pay in the past"; and (3) Plaintiff did not explain why it could not have alleged prior to the November 30, 2022 deadline that the Agreement remained in effect. (*Id.* at 5).

SRC objected to the Magistrate Judge's ruling, alleging: (1) SRC never alleged that the Agreement terminated as of October 10, 2022, but instead alleged it remained in effect; (2) Count VI alleging non-payment of operating expenses by EGCC was not a new claim but a supplement to Count IV; (3) because Count VI was a supplement, the Magistrate Judge should not have included Federal Rule of Civil Procedure 16's good cause standard in her analysis; and (4) that SRC demonstrates good cause to supplement and amend the FAC because it acted diligently to give EGCC notice of these claims and could not have brought the unjust enrichment claim any earlier. (ECF No. 59 at 9–20). As it relates to the supplemental claim, SRC argues that Count VI is a clear supplement to Count IV, which alleges non-payment of profit share and operating expenses prior to September 2022. (ECF No. 59 at 13). Defendant did not respond.

### 2.  Standard of Review

A magistrate judge is afforded broad discretion in the resolution of nondispositive pretrial disputes. *Dayco Products, Inc. v. Walker*, 142 F.R.D. 450, 454 (S.D. Ohio 1992). Under Federal Rule of Civil Procedure 72(a), district judges reviewing magistrate judges' orders on non-dispositive matters "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Indeed, "the clearly erroneous standard applies to factual findings by the magistrate judge." Fed. R. Civ. P. 72(a); *Hunter v. Booz Allen Hamilton, Inc.*, No. 2:19-CV-411, 2021 WL 2410378, at *2 (S.D. Ohio June 14, 2021) (Marbley, J.) (internal quotation marks omitted). A magistrate judge's factual finding is "clearly erroneous" only when, after reviewing the evidence,

the court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). A court will overturn a magistrate judge's legal conclusions only where those conclusions "contradict or ignore applicable precepts of law." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) *aff'd*, 19 F.3d 1432 (6th Cir. 1994) (internal quotation marks and citation omitted).

### 3. *Court's Analysis and Findings*

Courts enjoy broad discretion in deciding motions for leave to amend. *See Tolliver v. Nobel*, No. 2:16-cv-1020, 2021 WL 210450, at *3 (S.D. Ohio Jan. 21, 2021) (Sargus, J.) (citing *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)). After the deadline to amend pleadings has passed, a party may amend its pleadings only with the opposing party's consent or by leave of court. Fed. R. Civ. Pro. 15(a)(2). Generally, "[l]eave shall be freely given when justice so requires." *Id.* Here, EGCC has not consented to an amendment and the Magistrate Judge denied leave to amend.

As related to Count VI, in its Objection SRC argues that the Magistrate Judge misinterpreted its Motion to Supplement as a Motion to Amend because Count VI only outlines additional unpaid operating expenses first raised in Count IV. In its Motion for Leave to Amend, SRC only cites to Federal Rule of Civil Procedure 15(a), which governs amendments to pleadings and not Rule 15(d) which governs supplemental pleadings. (ECF No. 52 at 2). That said, Count VI, at base, does not make a new breach of contract claim. It brings up to date the allegations made by SRC in Count IV regarding unpaid operating expense invoices that accrued from October 10, 2022 through May 17, 2023—the date SRC alleges it stopped performance. (ECF No. 59 at 8). Therefore, this Court will treat the portion of SRC's Motion to Amend addressing Count VI as a Motion for Leave to Supplement.

The Magistrate Judge concluded that SRC failed to demonstrate good cause to amend the FAC pursuant to Federal Rule of Civil Procedure 16(b)(4), which allows for modification of a case management schedule for "good cause and with the judge's consent." As a result of the failure to meet the threshold requirement, the Magistrate Judge did not conduct an analysis of Federal Rule of Civil Procedure 15(d), which provides: "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." SRC argues that because a Motion to Supplement the Pleadings does not introduce new allegations but serves only to bring the existing allegations up to date, Rule 16 is inapplicable here. (ECF No. 59 at 15 (citing *Melvin v. Worthington Ind., Inc.*, No. 20-cv-3760, 2021 WL 5339620, at *3, n. 1 (S.D. Ohio Apr. 12, 2021) (Deavers, M.J.), *Ohio Valley Env. Coal. v. U.S. Army Corps of Engineers*, 243 F.R.D. 253, 256 (S.D.W.V. 2007) and *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970, 2011 WL 7627422, at *9 (D. Colo. Sept. 19, 2011)). The Sixth Circuit has yet to address this issue. *Melvin*, 2021 WL 5339620, at *3, n. 1.

While the court in *Ohio Valley* concluded that Rule 16 is inapplicable to a Motion to Supplement because there could be no set deadline on events arising after the pleadings deadline, *see Ohio Valley*, 243 F.R.D. at 256, the court in *Predator* acknowledged that, "it would simply go too far to say that no time constraints apply to such motions." *Predator*, 2011 WL 7627422, at *9.

The plain language of Rule 16(b)(3)(A), which requires a scheduling order to limit the time to join other parties, amend the pleadings, complete discovery, and file motions, has been interpreted to "govern[] any pleadings that serve[] to change or amend the previous pleading." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, Civil No. 06-4112 (ADM/JSM), 2009 WL 10677527, at *11 (D. Minn. Feb. 9, 2009). While there is a technical distinction between "amendments" and

"supplemental pleadings" for purposes of Rule 15, there is "little practical significance" to said

distinction, especially for purposes of a scheduling order. *E.g., Franks v. Ross*, 313 F.3d 184, 198

n.15 (4th Cir. 2002). Moreover, courts have interpreted supplementation as a type of amendment.

*See, e.g., Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964) (Rule 15(d)

"plainly permits *supplemental amendments* to cover events happening after suit" (emphasis

added)); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) (noting question of

whether "the plaintiff could have *amended* her complaint in the midst of litigation to add claims

which accrued after filing" by seeking permission to file a supplemental complaint pursuant to

Rule 15(d) (emphasis added)). Therefore, this Court adopts the majority approach[1] and concludes

that the term "amend the pleadings" in Rule 16(b)(3)(A) can encompass supplemental pleadings.

Case management deadlines exist to "assure[] that at some point both the parties and the

pleadings will be fixed." Fed. R. Civ. P. 16, Advisory Committee Notes (1983). Finalizing the

pleadings represent:

> [C]ore activities that are necessary to set the fundamental contours of the case and
> that often must be substantially completed before the court can determine whether
> the litigation can be concluded by dispositive motion and before the parties feel

---

[1] *See, e.g., Shubert v. Town of Glastonbury*, No. 3:18-cv-00112 (MPS), 2020 WL 6395472, at *1 (D. Conn. Nov. 2, 2020); *Wilson v. Deutsche Bank Trust Co. Ams.*, No. 3:18-cv-0854-D, 2019 WL 5840325, at *16 (N.D. Tex. Nov. 7, 2019); *Kotler v. Bosco*, No. 9:17-cv-0394 (GTS/ML), 2019 WL 12291097, at *5 (N.D.N.Y. Nov. 4, 2019); *Jackson v. Calone*, No. 2:16-cv-00891-TLN-KJN, 2019 WL 4747811, at *3 (E.D. Cal. Sept. 30, 2019); *Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. CV 16-08033-AB (FFMx), 2018 WL 10612577, at *1-2 (C.D. Cal. Apr. 3, 2018); *Slaughter v. Escamilla*, No. 3:16-cv-00457-MMD-WCG, 2018 WL 1470582, at *2-3 (D. Nev. Mar. 26, 2018); *Cole v. Educ. Credit Mgmt. Corp.*, No. ED CV 17-00974-JFW (SP), 2017 WL 8116538, at *1-2 (C.D. Cal. Oct. 13, 2017); *Murphy v. U.S. Forest Serv.*, No. 2:13-cv-02315-TLN-AC, 2016 WL 366434, at *3-4 (E.D. Cal. Feb. 1, 2016); *Pflaum*, 2014 WL 12891533, at *5; *Saratoga Potato Chips Co. v. Classic Foods, Inc.*, No. 1:12-cv-452, 2014 WL 2930495, at *3 (N.D. Ind. June 27, 2014); *Copeland v. Lane*, No. 5:11-cv-01058 EJD, 2013 WL 1899741, at *4-5 (N.D. Cal. May 6, 2013); *Jackson v. Odenat*, No. 09 Civ. 5583 (JFK)(AJP), 2012 WL 505551, at *2 (S.D.N.Y. Feb. 14, 2012); *Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co. of Fla., Inc.*, No. 4:09-cv-2872, 2011 WL 13350243, at *1 (S.D. Tex. Sept. 8, 2011); *Concerned Citizens for a Safe Cmty. v. Office of Fed. Detention Trustee*, No. 09-cv-01409-DAE, 2011 WL 2971000, at *2 (D. Nev. July 19, 2011); *AT&T Mobility, LLC v. Digital Antenna, Inc.*, No. 09-60639-CIV, 2010 WL 3608247, at *2 (S.D. Fla. Sept. 9, 2010); *Poole v. City of Plantation, Fla.*, No. 05-61698-CIV, 2010 WL 1791905, at *32-33 (S.D. Fla. May 5, 2010); *Fair Isaac*, 2009 WL 10677527, at *11; *Infa-Lab, Inc. v. KDS Nail Int'l*, No. 2:07-cv-01270 WBS EFB, 2008 WL 4793305, at *1-2 (E.D. Cal. Oct. 27, 2008); *Aguayo v. Morehouse School of Medicine, Inc.*, No. 1:06-cv-1095-JOF, 2007 WL 9710273, at *3 (N.D.); *McGrotha v. FedEx Ground Package Sys., Inc.*, No. 5:05-cv-391 (CAR), 2007 WL 640457, at *2 (M.D. Ga. Feb. 24, 2007).

> equipped to engage in productive settlement negotiations. It can be very difficult to efficiently manage a case without first knowing who the players are and what claims or defenses they will assert. So good judicial case managers press the parties to make commitments on these matters as early as feasible.

3 Moore's Federal Practice, § 16.13[1][a] (3d ed.). That said, a motion to supplement pleadings may "require relief from other deadlines in the scheduling order, including the discovery cutoff." *Desio v. State Farm Mutual Auto. Ins. Co.*, 339 F.R.D. 632, 640 (D. Nev. Nov. 16, 2021). As such, "it makes little sense to allow disruption of the established schedule for the proceedings without the required showing of good cause." *Id.* at 642. Therefore, the Magistrate Judge properly applied Rule 16's "good cause" analysis to SRC's Motion. Fed. R. Civ. P. 16(b)(4).

Once the scheduling order's deadline to amend the complaint passes, "a plaintiff first must show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the district court must evaluate prejudice to the nonmoving party "before a court will [even] consider whether amendment is proper under Rule 15[(d)]." *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir.2003). Good cause is met when the Plaintiff "demonstrates that he acted diligently in attempting to comply" with the court's existing scheduling order. *Knight v. Kitchen*, No. No. 2:19-CV-4166, 2021 WL 456723, at *2 (S.D. Ohio Feb. 9, 2021). While Motions to Supplement the pleadings must be brought within a reasonable time period, they can be brought at any time prior to trial. *Brian A. v. Bredesen*, No. 3:00-0445, 2009 WL 4730352, at *1–2 (M.D. Tenn. Dec. 4, 2009).

SRC acted diligently to file a Motion for Leave to File a SAC shortly after it concluded that no other operating expense invoices would accrue. *Cf. Lyons v. Leach*, No. 12-15408, 2013 WL 6178578, at *6 (E.D. Mich. Nov. 26, 2013) (rejecting an R&R denying a Motion for Leave to Supplement a Complaint which concluded the proposed supplement did not implicate previously named defendants where the district court judge concluded that the proposed supplement did

directly implicate named defendants). SRC filed its Motion for Leave to Amend on June 20, 2023, only about a month after it alleges that it stopped performance on May 17, 2023. SRC could not provide this Court with a completed list of outstanding operating expenses prior to that time. SRC also sent a letter to EGCC on May 25, 2023 informing EGCC of SRC's decision to stop performance and listing the outstanding operating expense invoices beginning on September 6, 2022. (ECF No. 57-1). Therefore, EGCC was not only on notice that SRC brought a continuing breach of contract claim pursuant to Count IV of the FAC, but EGCC was reminded again of the exact payments at issue on May 25, 2023. SRC unequivocally stated in the FAC that Count IV for unpaid operating expenses and profit-sharing invoices included not only existing outstanding payments, but that SRC anticipated the number to grow given EGCC's alleged noncompliance. Given the biweekly nature of the operating expense invoice payments, it is no surprise that those alleged defaults continued to accrue.

EGCC offers no explanation, other than vague statements about prejudice and delay, to explain why supplementing Count IV with Count VI substantively changes the allegations that EGCC failed to pay biweekly operating expenses nor how they "arise from a different set of operative facts." (ECF Nos. 28, ¶ 131; 55 at 4); *see also cf. Knight*, 2021 WL 456723, at *2 (finding that plaintiff's vague statements about new information gleaned from discovery was insufficient to amend the complaint where plaintiff could not demonstrate that the new information substantively changed the existing allegations). As the Magistrate Judge correctly concluded, supplementation would not cause EGCC undue prejudice as discovery now does not close until March 1, 2024 and the current deadline for dispositive motions is April 5, 2024. (ECF No. 62).

Because this Court concludes that Rule 16's good cause standard is met, this Court proceeds to Rule 15(d) which governs motions to supplement. Leave to supplement the pleadings

should be granted "[i]n the absence of any apparent or declared reason—such as *undue delay, bad faith* or *dilatory motive* on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc." *Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-CV-00896, 2015 WL 13034990, at *5–6 (S.D. Ohio Aug. 7, 2015), *as amended nunc pro tunc*, No. 2:06-CV-896, 2016 WL 8223066 (S.D. Ohio Mar. 17, 2016) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962) (emphasis added). A court should weigh the following, whether: (1) the original and supplemental complaints are related; (2) allowing supplementation would serve the interests of judicial economy; (3) there is evidence of delay, bad faith or dilatory motive on the part of the movant, or evidence of repeated failure to cure deficiencies by amendments previously allowed; (4) amendment would impose undue prejudice upon the opposing party; (5) amendment would be futile; (6) final judgment had been rendered; (7) the district court retains jurisdiction over the case; (8) any prior court orders imposed a future affirmative duty upon defendant; and (9) the proposed supplemental complaint alleges that defendants defied a prior court order. *Id.* at 6.

Only factors one through five are relevant here. First, this Court has already addressed that the proposed supplement is related to existing allegations. Second, generally, matters should be decided on the merits, rather than dismissing portions of an action for technical reasons. *See Greenberg v. The Life Ins. Co. of Va.,* 177 F.3d 507, 522 (6th Cir. 1999). Supplemental pleadings promote a more complete adjudication of a dispute, and serve to avoid the "cost, delay and waste of separate actions which must be separately tried and prosecuted." *Id.* To allow supplementation of Count IV provides for gains in judicial economy that outweigh any possible prejudice to EGCC. Further, EGCC was on notice that SRC would make these claims as the FAC specifically stated that SRC expected the nonpayment of expenses to continue. *See Bromley v. Mich. Educ. Ass'n-*

*NEA*, 178 F.R.D. 148, 154 (E.D. Mich. 1998) (a defendant is generally expected to defend all claims arising out of the course of conduct at issue, whether that conduct occurred before or after the pleadings were filed).

Third, neither party presents evidence that SRC acted in bad faith or with a dilatory purpose in seeking a SAC. Delay alone which does not intend to harass or causes any discernable prejudice is not a ground for denying leave; rather, the party opposing the motion must demonstrate significant prejudice. *United States v. Ohio*, No. 2:08-cv-0475, 2014 WL 1308718, at *3 (S.D. Ohio Mar. 28, 2014) (citations and quotations omitted) (Marbley, J.) (finding that defendants failed to demonstrate that they would be prejudiced if the United States were permitted to supplement its complaint under Rule 15(d) because they could not point to any discovery deadlines that had lapsed, trial schedule that would be delayed, or additional burdensome discovery that would be compelled). Finally, there is no evidence of prejudice as it relates to Count VI, nor evidence that adding these complaints prove futile.

Next, regarding proposed Count VII for unjust enrichment, this Court does not read SRC's allegations in the FAC to assert that the Agreement must terminate no later than the date of its filing on October 10, 2022. Read holistically, SRC asserts in the FAC that EGCC committed multiple defaults while the Agreement remained in full force and effect. According to SRC, these defaults were so substantial that they impaired SRC's ability to perform. The assertion that the Agreement "must terminate" is the relief sought. Further, the Agreement was still in effect, pursuant to this Court's July 11, 2022 Order & Opinion (ECF No. 14) enjoining EGCC from terminating the Agreement.

Rather than addressing the delay in bringing the unjust enrichment claim, SRC argues that it was unable to bring the claim until January 13, 2023, when EGCC first claimed that the

Agreement had terminated in December 2022. (ECF No. 59 at 19); *see also Marshall v. City of Columbus*, No. CIV.A. 2:05-cv-484, 2008 WL 4334616, at *2 (S.D. Ohio Sept. 17, 2008) (concluding that the assertion of a new legal theory at certain stage of proceeding would profoundly alter and expand the scope and nature of plaintiff's claims and would significantly delay the litigation). According to Plaintiff, it was only at this point that the existence of the Agreement was at issue. Plaintiff undermines its own diligence argument, however, by failing to explain why it took six more months to file the Motion to Amend. *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. 2013) (denying a motion to amend complaint where plaintiff only discussed why it did not earlier file a motion to amend, not why it could not raise the new legal theory earlier through reasonable diligence). Even Plaintiff's explanation that it sought guidance from this Court in May for how to deal with this issue does not explain why SRC could not have raised the new legal claim in the preceding five months. EGCC's theory that the Agreement was unenforceable following the DOE's Cease-and-Desist letter has been no secret. *Ford Motor Co. v. Kahne*, 379 F. Supp. 2d 857, 876–77 (E.D. Mich. 2005) (denying a motion to amend after scheduling deadline passed to add unjust enrichment claim to a contract dispute where defendant had asserted that contract was unenforceable in its answer). Filing the motion at that time would have kept the litigation on a reasonable track towards completion.

Proposed Counts VI and VII are inherently different—one brings current an existing claim for breach of contract and the other introduces a new legal theory. Therefore, Plaintiff's objections are **ADOPTED in part** and **OVERRULED in part**. Plaintiff is **GRANTED LEAVE** to supplement the FAC as to the limited issue of the operating expenses and profit-sharing payments accrued since September 2022 as alleged in Count VI. The Magistrate Judge's ruling is

**AFFIRMED**, however, as it relates to proposed Count VII for unjust enrichment and Plaintiff is **DENIED** leave to amend as to that count.

### B. Motion to Strike (ECF No. 33)

#### 1. Parties' Arguments

SRC makes several allegations against EGCC that relate to the personal relationship between Perik and Geoghegan and argue these allegations reveal EGCC's motivations for seeking termination of the Agreement and that any other explanation was pretextual. (ECF No. 35 at 5). The allegations are: "(1) how Perik and Geoghegan met; (2) how Perik and Geoghegan became involved at EGCC; (3) how Perik and Geoghegan helped each other accomplish their respective goals; (4) how EGCC consolidated virtually all decision-making authority in Geoghegan after he became president; (5) how Geoghegan tipped off Perik about the HLC program review and inevitable probation designation at a time when Perik sought to sell SRC; (6) how Geoghegan reacted after SRC's buyers uncovered Perik's knowledge of and misrepresentations related to the HLC probation and termination of Perik; and (7) EGCC's retaliatory efforts, through Geoghegan, to terminate the Collaboration Agreement." (ECF Nos. 28, ¶¶ 97–120; 35 at 4).

EGCC argues that this Court should strike these allegations as immaterial, impertinent, and scandalous. (ECF No. 33 at 4). EGCC claims the allegations only sully the name of President Geoghegan who is not named in this lawsuit and unable to defend himself. (*Id.* at 6). SRC argues that EGCC does not explain how or why the allegations are "scandalous," "gossip," and "impertinent." (ECF No. 35 at 3). EGCC replies that the allegations pertain mostly to Geoghegan and Perik's history prior to their employment with the parties. (ECF No. 37 at 1). Further, EGCC argues that the allegations do not reveal EGCC's motives but conflates them with Mr. Geoghegan's self-interested motives. (*Id.* at 2).

15

### 2.  Standard of Review

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In general, courts shy away from wielding their power to strike, as "it is well established that the action of striking a pleading should be sparingly used by the courts" and should "be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (first citing *Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932); then citing *Batchelder v. Prestman*, 138 So. 473 (Fla. 1931); *Collishaw v. Am. Smelting & Refining Co.*, 190 P.2d 673 (Mont. 1948)). But ultimately, the decision whether to grant a motion to strike falls within the discretion of the district court. *See Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (collecting cases). After all, motions to strike can "serve a useful purpose by . . . saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989)).

### 3.  Court's Analysis and Findings

An allegation is scandalous for purposes of a motion to strike where it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F.Supp.3d 772, 801 (E.D. Mich. 2015). As stated in the July 11, 2022 preliminary injunction order, EGCC's allegations that SRC's new executive team is inexperienced appear pretextual. (ECF No. 14 at 11). There, this Court stated that "[b]y Geoghegan's own testimony, EGCC was inclined to exit the contract from the day Perik was terminated, unless Perik and other

16

executives were hired back." *Id.* While the allegations may not portray Mr. Geoghegan in a positive light, the allegations regarding his relationship with Perik could go to the heart of the reason for the dispute in the first place. Even though President Geoghegan is not named as a party, he led EGCC when the college sent SRC the Notice of Breach in May 2022 for replacing its CEO. Therefore, he was intimately involved in the events giving rise to this dispute. At this point, this Court cannot conclude that the allegations are completely irrelevant to the issues sub judice.

SRC need not establish at this stage of the litigation how it intends to utilize such non-party evidence at trial, but this Court concludes that the allegations are of sufficient potential relevance. *See, e.g., SKS Constructors, Inc. v. Drinkwine,* 458 F.Supp.2d 68, 80 (E.D.N.Y. 2006) (finding "that allegations of essentially the same scheme perpetrated on unnamed parties may be alleged to support a claim of closed-ended continuity" amongst the parties). Therefore, SRC's Motion to Dismiss and Strike is **DENIED in part** as it relates to the Motion to Strike. (ECF No. 33).

### C. Motions to Dismiss (ECF Nos. 33 & 34)

#### 1. Standard of Review

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a

complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### 2. Defendant's Motion to Dismiss in Part the FAC (ECF No. 33)

#### a. Parties' Arguments

EGCC argues that Count I for Declaratory Judgment was resolved by the Court's July 11, 2022 Order granting the preliminary injunction. (ECF No. 33 at 7). EGCC reasons that this Court decided that the May 12, 2022 notice did not state a material breach. (*Id.*). EGCC also argues that Count II is moot because it paid SRC the $300,000 in operating expenses voluntarily and the $2,357,153.08 in profit sharing pursuant to court order. (*Id.* (citing ECF No. 23)). Further, EGCC maintains that Count II is subsumed by Count IV that alleges breach of contract for additional operating expenses and profit-sharing invoices. (*Id.*).

SRC argues that Counts I and II are not moot because this Court simply granted a preliminary injunction as related to those matters, and "[g]enerally a final merits determination is not made at the preliminary injunction stage." (ECF No. 35 at 7 (citing *Cameron v. Bouchard*, 507 F.Supp.3d 844, 847 (E.D. Mich. 2020)). SRC also argues that Count II is not moot, even though

18

this Court ordered EGCC to pay $2,357,153.08 because EGCC cannot allege SRC recouped in a flawed manner concerning these funds if the count is mooted. (*Id.*). Further, SRC alleges it is still due operating expenses and profit-sharing payments. (*Id.*).

EGCC replies that Count I is moot because this Court granted SRC the equitable relief it sought through the preliminary injunction. (ECF No. 37 at 3–4). Further, because Count II was alleged failure to pay of $300,000 in operating expenses, and $2,357,153.08 in profit sharing and EGCC made those payments pursuant to court order, EGCC claims that any additional amount allegedly owed to SRC are covered under Count IV's unpaid invoice allegations. (*Id.* at 4).

### b. Court's Analysis and Findings

The filing of an amended or supplemented complaint does not necessarily moot a motion to dismiss where the amended complaint is substantially identical to the original complaint and the amendment only addresses a discrete issue. *Greater Cincinnati Coal. for Homeless v. City of Cincinnati*, No. C-1-08-603, 2009 WL 3029661, at *4 (S.D. Ohio Sept. 16, 2009). Although this Court grants SRC's Motion to Supplement in part the FAC, several issues in the FAC are unaffected by supplementation and appropriate for this Court's present review.

### i. Count I – Declaratory Judgment

EGCC's Motion to Dismiss Count I, a declaratory judgment that SRC's removal of Perik as CEO did not constitute a material breach of the Agreement and that no other material breaches exist, must fail. First, this Court's July 11, 2022 order only enjoined EGCC from terminating the Agreement pursuant to EGCC's May 12, 2022 Notice of Breach and to enforce the existing non-compete provision of the Agreement. The consideration that SRC had a strong likelihood of success on the merits is "distinctly different from an *actual* success on the merits." *Ramsek v.*

19

*Beshear*, 468 F.Supp.3d 904, 914 (E.D. Ky. 2020). This Court did not assess whether SRC actually committed a material breach by firing CEO Perik.

Because Count I arises from a breach of contract argument, the elements for that claim must be properly pled to withstand a Motion to Dismiss. *See Morando v. Pyrotek, Inc.*, No. 1:12-cv-1264, 2013 WL 949515, at *4 (N.D. Ohio Mar. 11, 2013) (finding that a declaratory judgment based on a breach of contract claim must establish the basic elements of a breach of contract claim to survive a motion to dismiss). Under Ohio law, to allege breach of contract, a plaintiff must demonstrate "that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

Construing the facts in favor of SRC, Plaintiff satisfied § 2.5 of the Agreement because the plain terms of that provision could be interpreted to not require SRC to inform EGCC of that kind of a change in leadership. Further, the Notice of Breach on May 12, 2022 demonstrated intent to stop performance and resulted in the present litigation, making it a live matter.

This Court has discretion, however, to decide whether to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S 277, 282 (1995). A court should consider:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004). None of the facts before this Court indicates that factors three and four are relevant here. Factor one—whether the declaratory judgment would help settle the controversy—and factor two—whether it would help clarify the parties' legal relationship—weigh in favor of this Court exercising jurisdiction

20

over Plaintiffs' claim. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) ("[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue."). While deciding the issue of whether SRC breached the contract when it fired Perik without notice to EGCC would not solve the entire controversy, it is the first alleged breach in the timeline of events. Additionally, it goes to whether EGCC had the right to terminate the Agreement based on an uncured breach by Plaintiff. As such, a decision on the declaratory judgment serves a useful purpose because it would clarify the legal relationship between the parties. *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 663 (N.D. Ohio 2019) (finding useful a declaratory judgment in clarifying the parties' legal relations as to whether the phrase "Fruit is our 1st Ingredient" was a valid trademark because defendant who wished to use it, was curtailed in marketing and promotional endeavors by plaintiff's legal threats).

Although similar findings of fact and conclusions of law may govern the outcome of the declaratory judgment as the breach of contract claims, these claim result in different remedies and address a different basis for breach of contract along the timeline of events. As such, it prevents the breach of contract claim from being an alternative to the declaratory judgment. Therefore, this Court will exercise jurisdiction over the declaratory judgment, and Defendant's Motion to Dismiss is **DENIED in part** as to Count I. (ECF No. 33).

  ii. *Count II – Breach of Contract for Unpaid Operating Expenses and Profit-Sharing*

Counts II, IV, and proposed VI all deal with alleged unpaid operating expenses and profit-sharing invoices to SRC. Because this Court grants SRC's Motion to Amend the FAC for the limited purpose of bringing current the alleged unpaid invoices from September 2022 to May 17, 2023, this Court **DENIES in part AS MOOT** EGCC's Motion to Dismiss Count II of the FAC. Not only must Plaintiff file an updated SAC supplementing Count IV, but EGCC should be

afforded an opportunity to respond to SRC's new allegations. Therefore, this Court *sua sponte* **GRANTS** EGCC leave to Amend its Motion to Dismiss Count II.

3. *SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34)*

a. *EGCC's Counterclaims*

EGCC brings three counterclaims against SRC: (1) a declaratory judgment that SRC breached the Agreement, SRC was overpaid, and that, as a result, EGCC can terminate the Agreement; (2) a breach of contract claim alleging that SRC breached: (a) § 2.6(a) by failing to timely designate an appropriate representative to the Operating Committee (the "Committee"); (b) § 8's non-compete provision by discussing competing collaborations with Acadeum and Brazosport College; (c) § 3.1 by submitting operating expenses that were excessive and not normal and without the Committee's or annual budget approval for 2023; and (3) an unjust enrichment claim exceeding $900,000 alleging that SRC benefitted by knowingly accepting overpayments by EGCC for fiscal years 2019, 2020, 2021, and 2022. (ECF No. 34, ¶¶ 40–59).

The Committee facilitates the Agreement and is comprised of up to three individuals per party but must include a minimum of one representative from each side. (*Id.*, ¶¶ 13–15 (citing § 2.6(c) of the Agreement)). The Committee meets quarterly and each representative to the Committee must "have the appropriate credential, experience, knowledge, and ongoing familiarity with the Collaboration." (*Id.*, ¶ 15 (citing § 2.6(a) of Agreement)). EGCC alleges that on March 23, 2022, SRC terminated its CEO and placed on probation three other SRC executives who all served as Committee representatives. (*Id.*, ¶ 16–17). Soon thereafter, on April 1, 2022, the executives on probation resigned and SRC had no designated representatives to the Operating Committee. (*Id.*, ¶ 18). EGCC argues that SRC did not appoint a new representative until September 2022, forcing EGCC to take sole responsibility for "governance and operation" of the

Agreement. (*Id.*, ¶ 21). When SRC named its new CEO, Phillip Braithwaite, and CFO, Aimee Leishure, as representatives to the Committee, EGCC argues that both lacked the appropriate expertise. Further, EGCC argues that it overpaid SRC $900,000 for fiscal years 2019, 2020, and 2021 as a result of errors in calculating revenue. (*Id.*, ¶ 32).

### b. *Parties' Arguments in SRC's Motion to Dismiss*

SRC maintains that EGCC's Counterclaim I for declaratory relief is a mirror image of SRC's Count I for declaratory relief and adjudication of SRC's Count I will resolve EGCC's declaratory relief claim, making the counterclaim redundant. (ECF No. 34 at 14–15).

As it relates to Counterclaim II's breach of § 2.6 on representatives to the Committee, SRC argues that EGCC never called a Committee meeting between March 2022 and the present, SRC was not solely responsible for calling Committee meetings, missing a quarterly Committee meeting was not a "material breach" of the Agreement, and EGCC waived its right to challenge this issue because SRC cured the breach by appointing CEO Braithwaite and CFO Leishure to the Committee. (ECF No. 34 at 4–5). Further, SRC argues that it did not violate § 8 when it engaged in discussions with Acadeum and Brazosport College because EGCC enrollment in the program had surpassed 23,000 students in fall 2018, allowing for these discussions. (*Id.* at 6–7). As it relates to § 3.1, SRC argues that EGCC's allegations that SRC's invoices were excessive are too vague to meet the pleading requirements. (*Id.* at 9). SRC argues that EGCC controls the Collaboration Account which issues SRC's reimbursements and reviews all payments made, and therefore, cannot state a claim under the voluntary payment doctrine where it was in possession of the controlling facts. (*Id.* at 9–11). SRC maintains that § 7.2 allows the prior academic year's budget to control if no new budget is approved, so all invoices were submitted under an approved budget.

(*Id.* at 11). Because EGCC did not clarify whether it actually reimbursed SRC for these "excessive" invoices, SRC argues that no damages resulted. (*Id.*).

SRC also alleges that the unjust enrichment claim fails as a matter of Ohio law because such a claim cannot survive where the subject matter of the claim is covered by an express contract. (*Id.* at 13 (citing *Ryan v. Rival Mfg. Co.*, 1st Dist. Hamilton No. C-810032, 1981 WL 10160, *1 (Dec. 16, 1981).

EGCC responds that Counterclaim I is not the mirror image of SRC's Count I for declaratory judgment and should not be dismissed because complete identity of fact and legal issues do not exist here. (ECF No. 36 at 3–4). EGCC alleges that the FAC does not raise the issue of relief from overpayment to SRC, which requires different facts than those required to prove whether SRC breached the Agreement by removing its CEO without notice to EGCC. (*Id.* at 4). EGCC alleges that Counterclaim II is highly dependent on the factual circumstances of the Agreement and must be decided at a later stage of the litigation. (*Id.* at 5–6). As it relates to Counterclaim III for unjust enrichment, EGCC argues that the Agreement does not address the issue of overpayment nor provide a mechanism for rectifying overpayment of expenses to SRC. (*Id.* at 7). Therefore, because the overpayment issue falls outside the terms of the contract, an unjust enrichment claim is appropriate. (*Id.* at 8).

SRC replies that two of the three issues raised in Counterclaim I are addressed by SRC's Count I for declaratory judgment—whether STC breached the Agreement and whether EGCC is entitled to terminate the Agreement. (ECF No. 38 at 5). On the issue of whether EGCC overpaid SRC, SRC argues that the matter relates to past, not future, injury and is inappropriate for a declaratory judgment. (*Id.* at 6). As it relates to EGCC's Counterclaim II allegations for breach of contract, SRC reasons that EGCC waived its right to a breach of contract claim for § 2.6 because

EGCC never called a Committee meeting, failed to provide notice to SRC of the alleged breach, and SRC cured the breach in September 2022. (ECF No. 38 at 2–3). Finally, SRC reiterates that Counterclaim III is improper where there is a "undeniably" valid contract. (*Id.* at 7).

### c. Court's Analysis and Findings

#### i. Counterclaims I & II – Declaratory Judgment and Breach of Contract

SRC's Count I is not a mirror image of EGCC's Counterclaim I for declaratory judgment. SRC's Count I seeks a declaration from this Court on the limited issue of whether SRC materially breached the Agreement. Conversely, Counterclaim I seeks a declaration from this Court that not only did SRC materially breach the Agreement, but that as a result of that breach EGCC has the right to terminate the Agreement and to recoup on expenses that were overpaid to SRC. Additionally, EGCC's Counterclaim I appears to address only three specific provisions of the Agreement: (1) § 2.6(a) for failing to designate timely an appropriate representative to the Committee; (2) § 8's non-compete provision; and (3) § 3.1 by submitting operating expenses that were excessive and not normal and without the Committee's or annual budget approval for 2023. As such, it addresses different issues than those posed by SRC's Count I.

Counterclaim I stems from a breach of contract issues. Therefore, this Court must assess whether EGCC has sufficiently pled a breach of contract claim in Counterclaim II. Again, under Ohio law, to establish a breach of contract, a plaintiff must demonstrate "that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages." *Pavlovich*, 435 F.3d at 565. It is undisputed that the Agreement was a valid contract and EGCC performed by making payments to SRC and providing data up until the dispute.

At common law, a "material breach" of contract is a party's failure to perform an element of the contract that is "so fundamental to the contract" that the single failure to perform "defeats

the essential purpose of the contract or makes it impossible for the other party to perform." *O'Brien v. Ohio State Univ.*, 2007-Ohio-4833, ¶ 56, 2007 WL 2729077, at *15 (10th Dist.) (quoting 23 Williston on Contracts, Section 63:3). A determination that a contract has been materially breached is a question of fact that requires an examination of the parties' injuries, whether and how much the parties could have been compensated, and whether the parties acted in good faith. *Data Processing Sciences Corp. v. Lumenate Techs., LP*, No. 1:14-cv-740, 2016 WL 2853567, at *3 (S.D. Ohio May 16, 2016). Therefore, it is "not properly determined at the motion to dismiss stage, unless the truth is undisputed." *Hersh v. Grumer*, 2021-Ohio-2582, ¶ 23, 176 N.E.3d 1135, 1145, *appeal not allowed*, 2021-Ohio-4289, ¶ 23, 165 Ohio St. 3d 1478, 177 N.E.3d 988 (Ohio 2021).

This Court cannot resolve at the Motion to Dismiss stage whether each of EGCC's allegations in Counterclaim II were material breaches. *Sacksteder v. Senney*, 2012-Ohio-4452, ¶ 88, 2012 WL 4480695, at *18 (2d Dist.) (concluding that complaint adequately alleged the existence of a fiduciary relationship between plaintiff and defendant, but whether such relationship in fact existed was a question of fact that was not resolvable through a motion to dismiss); *DeNune v. Consol. Capital of N. Am., Inc.*, No. 3:02CV7241, 2004 WL 1474653, at *2 (N.D. Ohio May 21, 2004) ("Contract interpretation is inappropriate for a motion to dismiss."); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, No. 2:03-MD-1565, 2006 WL 2849784, at *7 (S.D. Ohio Oct. 3, 2006) ("The Court, though, will not resolve a conflict in contract interpretation on a motion to dismiss."); *Exact Software N. Am., Inc. v. Infocon Sys., Inc.*, No. 3:03CV7183, 2004 WL 952876, at *5 (N.D. Ohio Apr. 16, 2004) (same).

Given extenuating circumstances, however, this Court can address, to some extent, the breach of contract counterclaims. Section 8 of the Agreement states:

> During the Term, neither SRC nor EGCC shall take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is

26

competitive with the Educational Programs provided by the Collaboration to union members; provided however, that once EGCC passes through an enrollment *threshold* of twenty-three thousand (23,000) or more Initiative Students, SRC may enter into arrangements similar to, or the same as, the Collaboration with other existing colleges if SRC, in its sole discretion, determines that such arrangements are necessary to (a) comply with state regulatory requirements or (b) ensure regional diversity. For the avoidance of doubt, if the number of EGCC-enrolled Initiative Students should be reduced below twenty-three thousand (23,000) after such additional arrangements have been entered into by SRC, those additional arrangements shall survive such reduction and shall not terminate merely as a consequence of such reduction.

(ECF No. 34-2 at 6–7). SRC alleges that EGCC achieved over 23,000 students in the program no later than the fall of 2018 (ECF No. 34-2 at 7). This Court found, based on President Geoghegan's testimony, that EGCC's enrollment grew from approximately 5,500 union members before the Agreement to upwards of 40,000 in fall semester 2021. (ECF No. 14 at 2). EGCC alleges, however, that SRC engaged in discussions with Acadeum and Brazosport College between April 1 and September 2022. Yet, it also stated that enrollment reached 40,000 a year prior. Even though EGCC's argues that enrollment dipped below the 23,000 threshold in January 2023, that is inapplicable here as it occurred after the timeline at issue. Therefore, EGCC has provided no facts to support the assertion that SRC breached the plain reading of § 8 between April and September 2022. Therefore, SRC's Motion to Dismiss Counterclaim II as it relates to § 8's non-compete provision and Counterclaim I to the extent to which this specific issue falls within EGCC's general allegations that SRC breached the Agreement, is **GRANTED in part**.

This Court will not address Counterclaim II for breach of contract as it relates § 3.1 for excessive invoices and lack of budget approval. Therefore, SRC's Motion to Dismiss Counterclaims I and II as it relates to § 3.1 is **DENIED AS MOOT**. Because these issues turn on what payments, if any, are owed and when, and because SRC is granted leave to supplement its allegations about operating expenses and profit-sharing payments owed, EGCC should be afforded

an opportunity to respond. Further, "courts are divided on whether Federal Rules of Civil Procedure require a party to replead a counterclaim to an amended complaint, or the counterclaim is otherwise abandoned." *Artisan Estate Homes, LLC v. Hensley Custom Building Group, LLC*, 2021 WL 1964476, at *2 (S.D. Ohio May 17, 2021) (citing *Mathews v. Ohio Pub. Emps. Ret. Sys.*, No. 2:12-CV-1033, 2014 WL 4748472, at *4 (S.D. Ohio Sept. 23, 2014) (collecting cases)). Therefore, pursuant to Fed. R. Civ. P. 15(a)(2), the Court *sua sponte* **GRANTS** EGCC leave to file an amended counterclaim when responding to SRC's supplemented complaint on the limited issue of breach of contract related to operating expenses and profit-sharing invoices and the related declaratory judgment. In the event EGCC does not assert these claims when responding to the supplemental complaint, the Court will consider any counterclaim not asserted as abandoned.

This Court is satisfied, however, that EGCC has sufficiently pled a breach of contract claim for § 2.6 regarding appointing representatives to the Committee. SRC does not dispute that a Committee meeting was not called between April and September 2022. Because § 2.6(c) states that the Committee "shall meet . . . no less frequently than quarterly," there is a plausible argument that SRC was in breach of § 2.6 during the period in which SRC had no representative on the committee. (ECF No. 28-1 at 9). Further, EGCC alleges that SRC's alleged absence required it to manage the governance of the Agreement entirely on its own, justifying compensatory damages.

Finally, the defense of waiver is defined as the voluntary relinquishment of a known right. *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 954 (S.D. Ohio 2001) (citing *Chubb v. Ohio Bureau of Workers' Compensation,* 81 Ohio St.3d 275, 278, 690 N.E.2d 1267, 1269 (1998)). Under Ohio law, however, it is for the jury to determine whether a party's conduct constitutes a waiver of its rights. *See Monteith v. Cmty. Mutual,* 1994 WL 183642 (Ohio App. 10th Dist. 1994); *Matlack, Inc. v. Allied–Signal, Inc.,* 1992 WL 329399 (Ohio App. 4th Dist. 1992);

*Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1216 (6th Cir. 1987). Therefore, addressing this defense is also an inappropriate question for this stage of the litigation, and SRC's Motion to Dismiss Counterclaim II as it relates to breach of § 2.6 is **DENIED in part**.

Returning to Counterclaim I, this Court must determine whether to exercise jurisdiction over the declaratory judgment as it relates to § 2.6. *Wilton*, 515 U.S at 282. Again, none of the facts before this Court indicates that factors three and four are relevant here. Factor one—whether the declaratory judgment would help settle the controversy—and factor two—whether it would help clarify the parties' legal relationship—weigh in favor of this Court exercising jurisdiction over EGCC's claim. *Scottsdale Ins. Co.*, 513 F.3d 546, 557 (6th Cir. 2008) ("[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue."). While deciding the issue of whether SRC breached the contract when it failed to appoint a representative to the Committee and hold quarterly meetings would not solve the entire controversy, it also clarifies the timeline of events and what, if any wrongdoing occurred as related to this matter. Further, it goes to whether EGCC had the right to terminate the Agreement based on a breach by SRC. As such, a decision on the declaratory judgment serves a useful purpose because it would clarify the legal relationship between the parties. *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 663 (N.D. Ohio 2019) (finding useful a declaratory judgment in clarifying the parties' legal relations as to whether the phrase "Fruit is our 1st Ingredient" was a valid trademark because defendant who wished to use it, was curtailed in marketing and promotional endeavors by plaintiff's legal threats).

Therefore, the Motion to Dismiss Counterclaims I and II are: (1) **GRANTED in part** as it relates to breach of § 8 of the Agreement; (2) **DENIED AS MOOT** as it relates to § 3.1 and EGCC is **GRANTED LEAVE** to file an Amended Counterclaim on the limited issue of breach of contract

under § 3.1 based on alleged unpaid operating expenses and profit-sharing invoices; and (3) **DENIED in part** as it relates to breach of contract pursuant to § 2.6.

### ii. Counterclaim III – Unjust Enrichment

Unjust enrichment "is an equitable claim based on a contract implied in law[.]" *Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, ¶36, 2022 WL 17542745, at *8 (Ohio 2022). "A successful claim of unjust enrichment requires a showing that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment." *Id.* It is well established, however, that "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Zoar View Wilkshire, LLC v. Wilkshire Golf, Inc.*, 2023-Ohio-2848, ¶ 26, 2023 WL 5219461, at *3 (5th Dist.) (quoting *Padula v. Wagner*, No. 27509, 2015-Ohio-2374, 37 N.E.3d 799, ¶48 (9th Dist.)).

EGCC essentially argues that Exhibit B outlines how payments are made from EGCC to SRC and contemplates situations in which the Collaborative Account lacks the funds sufficient to compensate SRC (*see* ECF No. 28-1 at 25–26) but does not expressly contemplate the procedure to reimburse EGCC for overpayments. This argument, however, misunderstands Ohio law. A party can only recover under an unjust enrichment claim when the subject matter at issue falls outside of the *scope* of the contract, but not where the subject matter is addressed in the contract albeit not directly spelled out. *Compare Marietta Health Care Physicians, Inc. v. Yoak*, No. 2:19-CV-5626, 2022 WL 255664, at *5 (S.D. Ohio Jan. 27, 2022) (holding that unjust enrichment claim could not stand where plaintiff sought damages for whether defendant was overpaid under the terms of the contract, but did not dispute the existence or validity of the agreement) *and Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, ¶ 26, 2022 WL 17542745, at *5 (Ohio 2022) (finding unjust

30

enrichment claim inappropriate where there was an express and valid contract that covered how employees would be compensated, which was the subject of plaintiff's breach of contract claim) *with Cutcliffe v. Wright State Univ.*, No. 3:17-cv-222, 2019 WL 316909 (S.D. Ohio 2019) (holding that an unjust enrichment claim could survive in the alternative to a breach of contract claim where dispute was whether plaintiff should have been paid a salary at all when he was not working, not whether the amount paid was proper pursuant to the contract terms); *see also* Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties *as to matters within its scope*, displacing to that extent any inquiry into unjust enrichment." (emphasis added)). To adopt EGCC's argument would undermine the entire purpose of this doctrine and would allow for unjust enrichment claims in every scenario in which the issue raised in not expressly spelled out in the contract terms.

Because EGCC does not dispute the existence or validity of the Agreement (*see Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 867–68 (S.D. Ohio 2020) (allowing alternative theory of unjust enrichment in breach of contract claim where plaintiff directly challenged the validity of contract in addition to interpretation of the contract terms), but instead whether the payments it made to SRC were appropriate pursuant to the terms of the Agreement, EGCC's claim falls squarely within the scope of the Agreement. Therefore, Counterclaim III cannot stand and this Court **GRANTS** SRC's Motion to Dismiss Counterclaim III for unjust enrichment. (ECF No. 34).

### D. Motions to Vacate and File Sur-Reply (ECF Nos. 39; 45)

#### 1. Parties' Arguments

Pursuant to Federal Rules of Civil Procedure 60(b)(5) and (6), EGCC asks this Court to vacate the preliminary injunction. (ECF No. 39 at 1). EGCC argues that: (1) the purpose of the

injunction was satisfied because the Agreement did not terminate pursuant to EGCC's May 12, 2022 notice of breach; and (2) because it argues the Agreement is now terminated, the portion of the injunction preventing breach of the Agreement's non-compete provision no longer serves a purpose. (*Id*. at 1, 7). Additionally, EGCC argues that in December 2022, SRC launched a competing, spring term collaboration program with a new academic partner, William Woods University, and is in discussions with other institutions to offer competitive associate degree programs. (*Id.*).

SRC filed its response on February 3, 2023, arguing that Rule 60(b) does not grant relief for interlocutory orders. (ECF No. 43 at 3). Next, it argues that, at the time of its Response,[2] the Agreement had not terminated and SRC continued to provide services to over 25,553 re-enrolled students for the fall 2022 and spring 2023 semesters, despite outstanding invoices it alleged it was owed by EGCC. (*Id.* at 4). SRC maintains that it cannot provide services to newly enrolled students because EGCC is in violation of Sections 4.3–4.5 and 4.8 of the Agreement by failing to demonstrate that it complies with Title IV. (*Id.* 4–6). Finally, SRC maintains that pursuant to § 8 of the Agreement, it can enter into similar arrangements with other institutions once EGCC passes an enrollment threshold of 23,000, which occurred in fall 2018. (*Id.* at 8).

EGCC replies that the Agreement terminated, at the latest, by December 31, 2022 because it did not cure within the sixty days required by the Agreement the non-payment of certain expenses as alleged by SRC. (ECF No. 44 at 4–5). Even if the Agreement did not terminate at that time, EGCC argues in the alternative that SRC was in breach of the Agreement by failing to provide services to newly enrolled students as the DOE's Cease-and-Desist letter was enjoined— in other words, SRC was wrong to assume that EGCC was not in compliance with existing laws.

---

[2] SRC filed its Response (ECF No. 43) to the Motion to Vacate (ECF No. 39) on February 3, 2023. As noted above, however, SRC alleges that it stopped performing services under the Agreement on May 17, 2023. (ECF No. 59 at 8).

(*Id.* at 6). Finally, EGCC alleges that enrollment in the Program fell below 23,000 in the Spring 2023 semester because SRC refused to recruit students for the 2023 spring semester. (*Id.*). As a result, SRC was in violation of the Agreement terms, which according to EGCC only allow SRC to enter into competing agreements when enrollment at EGCC exceeds 23,000. (*Id.* at 7).

SRC then filed a Motion for Leave to File Sur-Reply, arguing that EGCC introduced a new argument regarding § 8 of the Agreement which states, in relevant part:

> [O]nce EGCC passes through an enrollment *threshold* of twenty-three thousand (23,000) or more Initiative Students, SRC may enter into arrangements similar to, or the same as, the Collaboration with other existing colleges . . . [I]f the number of EGCC-enrolled Initiative Students should be reduced below twenty-three thousand (23,000) after such additional arrangements have been entered into by SRC, those additional arrangements shall survive such reduction and shall not terminate merely as a consequence of such reduction.

(ECF No. 28-1 at 15). SRC argues that EGCC interprets the language of the Agreement to conclude that if enrollment drops below that number, SRC cannot enter into any new arrangements until enrollment reaches 23,000 students again. (ECF No. 45-1 at 2–3). SRC, however, alleges that this is a misinterpretation of the Agreement, which allows SRC to enter into similar collaborations after the "threshold" 23,000 students has been met, regardless of whether that number falls below 23,000 subsequently. (*Id.* at 4). Further, SRC maintains that EGCC fails to provide any support for its assertion that enrollment dipped below 23,000 for the spring 2023 semester. (*Id.*). Finally, SRC argues that it could enter into a collaboration with William Woods University in December 2022, because it was prior to January 9, 2023—the date on which EGCC claims enrollment dropped below 23,000 students. (*Id.* at 5). SRC also advances a second argument that EGCC requests an injunction against SRC to stop SRC from entering into similar collaborations with other schools. (*Id.* at 6).

EGCC responds that its argument regarding the 23,000 threshold was in response to SRC's assertion in its Response that § 8 gave it the ability to enter into collaboration agreements with other schools. (ECF No. 46 at 2). Because EGCC only advanced this argument in response to SRC, EGCC maintains it is procedurally appropriate. Further, EGCC argues it does not seek injunctive relief, but only asks this Court to vacate its existing preliminary injunction order. (*Id.*).

### 2. Standard of Review

As it relates to the Motion to File Sur-Reply, trial courts have inherent authority to control and manage their dockets. *Anthony v. BTR Auto. Sealing Systems, Inc.*, 339 F.3d 506, 516–17 (6th Cir. 2003). In the Southern District of Ohio, no additional memoranda beyond an opposing and reply memoranda may be filed without leave of the court for good cause shown. S.D. Ohio Local Rule 7.2(a)(2). As this Court previously noted:

> While the Court's Local Civil Rules do not define good cause, "this Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (citations omitted). The Local Civil Rules also provide that "[e]vidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition." S.D. Ohio Civ. R. 7.2(d).

*Streeter v. Adaptasoft, Inc.*, No. 2:17-cv-01125, 2018 WL 4030546, at *3 (S.D. Ohio Aug. 23, 2018) (Marbley, J.).

As it relates to the Motion to Vacate, under Federal Rule of Civil Procedure 60(b), federal courts are allowed to relieve a party or its legal representative from a final judgment, order, or proceeding if the judgment is void; the judgment was based on an earlier judgment that has been reversed or vacated or applying it prospectively is no longer equitable; or any other reason that justifies relief. A motion under Rule 60(b) must be made within a reasonable time. Sound judicial discretion may require the modification of the terms of an injunctive decree if the circumstances,

whether of fact or law, obtained at the time of its issuance have changed, or new ones have arisen. *Sys. Fed'n No. 91 Ry. Emp. Dept., AFL–CIO v. Wright,* 364 U.S. 642, 647 (1961). A court may also modify a judgment when it finds that it is no longer equitable that the judgment should have prospective application. *Horne v. Flores,* 557 U.S. 433, 447 (2009).

### 3. Court's Analysis and Findings

#### a. Motion to File Sur-Reply (ECF No. 45)

Upon this Court's review of SRC's Reply, it is unclear what new arguments SRC could be referring to, other than the rebuttal arguments necessary to address SRC's Response. SRC argued in its Response that it was justified in entering into similar collaboration agreements because EGCC had surpassed the 23,000-enrollment requirement in 2018, pursuant to § 8 of the Agreement. In direct response to this assertion, EGCC argued that the same contract language referenced by SRC requires the enrollment numbers to stay at or above 23,000 students for § 8 to apply. *De Angelis v. Nat'l Ent. Grp. LLC*, No. 2:17-cv-924, 2019 WL 1024954, at *2 (S.D. Ohio Mar. 4, 2019) (Marbley, J.) (denying Motion for Sur-Reply where movant replied directly to arguments made by the nonmovant in the response to the pleading). Further, the fact that EGCC's assertion as to this matter is inconsistent with its position that the Agreement terminated in December 2022 does not change the fact that no new argument was introduced. Therefore, this Court finds that Plaintiff has not demonstrated good cause justifying leave to file the proposed sur-reply and Plaintiff's Motion to File Sur-Reply is **DENIED**. (ECF No. 45).

#### b. Motion to Vacate (ECF No. 39)

EGCC seeks an order vacating the preliminary injunction pursuant to Rule 60(b), which allow for relief from a final judgment, order or proceeding if:

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Granting "relief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trs. Of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir 2001) (quoting *Waifersong Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). The decision to grant or deny relief under Rule 60(b) is within this Court's discretion. *Smith v. Sec'y of Health and Human Servs.,* 776 F.2d 1330, 1332 (6th Cir. 1985). A court's discretion under Rule 60(b) is "especially broad" given the underlying equitable principles involved, *see Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989), and a court "has continuing jurisdiction to terminate or modify an injunction." *In re Detroit Auto Dealers Ass'n, Inc.*, 84 F.3d 787, 789 (6th Cir. 1996). Motions for Relief from Judgment pursuant to Rule 60(b)(5) and (6) must be made within a "reasonable time," which is "dependent upon the facts of the case, including length and circumstances of delay in filing, prejudice to opposing party by reason of the delay, and circumstances warranting equitable relief." *In re G.A.D., Inc.*, 340 F.3d 331, 334 (6th Cir. 2003) (citing *Olle*, 910 F.2d at 365).

As a preliminary matter, EGCC seeks relief not because of a change in controlling caselaw but alleges a change in factual circumstances that no longer justifies the preliminary injunction. There exists limited caselaw addressing a change in the factual circumstances, instead of a change in controlling law, as a basis for a Motion for Relief pursuant to Rule 60(b)(5) and (6). As such, this Court will draw on analogous cases to conduct its analysis.

*i. Relief Pursuant to Rule 60(b)(5)*

Rule 60(b) empowers a court to relieve a party when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). An order, however, may not be "rescinded or modified merely

36

because it is no longer convenient for a party to comply" with the order. *Rufo v. Inmates of the Suffolk Cnty Jail, et al.*, 502 U.S. 367, 383 (1992). In assessing whether to grant a Motion for Relief from a consent decree pursuant to Rule 60(b)(5), the Supreme Court stated that a party must establish one of the following four factors by a preponderance of the evidence to obtain relief:

> (1) a significant change in factual conditions; (2) a significant change in law; (3) that "a decree proves to be unworkable because of unforeseen obstacles"; or (4) that "enforcement of the decree without modification would be detrimental to the public interest."

*Rufo*, 502 U.S. at 384. The standard established in *Rufo*, however, has not been treated as a "universal formula" and other courts consider additional factors pursuant to Rule 60(b)(5):

> the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented; the length of time since entry of the injunction; whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; and the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction.

*Democratic Nat. Committee v. Republic Nat. Committee*, 673 F.3d 192, 202 (3d Cir. 2012) (quoting *Bldg. & Constr. Trades council of Phila. & Vicinity, AFL-CIO v. NLRB ("BCTC")*, 64 F.3d 880, 887 (3d Cir. 1995)). In weighing these factors, "the court must balance the hardship to the party subject to the injunction against the benefits to be obtained from maintaining the injunction" and the court should also "determine whether the objective" of the injunction has been achieved. *BCTC*, 64 F.3d at 888.

The purpose of the July 2022 Preliminary Injunction was to require both parties to continue performing under the terms of the Agreement. At the time of the filing of the Motion to Vacate, SRC alleged that it continued to provide some services to current, re-enrolled students. Since that time, however, SRC has informed this Court that as of filing of the FAC on May 17, 2023, SRC ceased providing services to EGCC due to EGCC's nonpayment of operating expenses and profit-sharing requirements. (ECF No. 59 at 8). The reality here, however, is that both SRC and EGCC

admit to the fact that they stopped performing some or all of their responsibilities under the Agreement allegedly because the opposing party's breach made performance impossible. Depending on what theory of the case is ultimately adopted by a jury, the Agreement may have terminated as early as December 2022 when SRC refused to provide its typical services to newly enrolled EGCC students because it alleged that EGCC was not in compliance with Title IV and refused to cure. Conversely, the Agreement may have terminated on May 17, 2023, when SRC terminated all services to EGCC because EGCC failed to pay outstanding debts.

Regardless, the parties should not be excused from an existing preliminary injunction where the actions of the parties arguably induced the change in facts upon which EGCC rests its argument to vacate. *Compare Ptak Bros. Jewelry, Inc. v. Ptak*, No. 06 Civ. 13732(CM), 2011 WL 253424, at *5 (S.D.N.Y. Jan. 25, 2011) (denying a motion for relief from default judgment pursuant to Rule 60(b)(5) where parties regularly flouted court orders and failed to appeal timely default judgment decision) *with Jules v. Mayorkas*, 20-cv-361-LJV, 2023 WL 2457071, at *5 (W.D.N.Y. Mar. 10, 2023) (granting a Motion for Relief, pursuant to Rule 60(b)(5), for ICE from a permanent injunction requiring it to implement social distancing and masking policies in immigration detention facilities because scientific developments in preventing and treating COVID-19 had substantially changed and previous precautions were no longer necessary). EGCC alleges that the Agreement terminated because SRC was in breach of the Agreement by partially performing. SRC, however, argues that it could only partially perform while EGCC was in the midst of litigation with the DOE absent assurances of indemnification by EGCC. As a result of SRC's partial performance, EGCC treated the Agreement as fully terminated as of January 2023 because it, self admittedly, refused to cure the breach alleged by SRC. EGCC cannot escape the

terms of the preliminary injunction while the litigation that will determine whether it acted in violation of the Agreement in the first place is ongoing.

A final judgment or order has "prospective application" for purposes of Rule 60(b)(5) only where it is "'executory' or involves 'the supervision of changing conduct or conditions.'" *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988)); *Road Sprinkler Fitters Local Union No. 669 v. G&L Associated, Inc.*, No. 10-cv-0471(TAV), 2014 WL 2719755, at *1 (E.D. Tenn. 16, 2014). Here, the purpose of a preliminary injunction is to preserve the relative positions of the parties— in other words, to continue performance under the contract—until a trial on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). While EGCC complied with both of this Court's preliminary injunction Orders (ECF Nos. 14, 28), the fact that both parties are now arguably in breach of the Agreement because neither side is providing services to another (*see* ECF No. 59 at 8) counsels this Court against vacating the preliminary injunction. *See e.g., Democratic Nat. Comm.*, 673 F.2d at 207 (rejecting a motion to vacate a consent decree preventing the RNC from using or appearing to use racial or ethnic criteria in connection with ballot integrity and security because minority voting had increased and the President, other national leadership, and RNC leadership were African American—a change in factual circumstances—could not be assumed to result in less voter suppression of minority voters).

Therefore, this Court is hard pressed to vacate the Preliminary Injunction pursuant to Rule 60(b)(5) where the prospective impact complained of is arguably of the parties' own making.

### ii.  *Relief Pursuant to Rule 60(b)(6)*

The Sixth Circuit holds that a district court should apply Rule 60(b)(6) "only in exceptional or extraordinary circumstances" and "must include unusual and extreme situations where

principles of equity *mandate* relief." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990). The burden to establish the exceptional or extraordinary circumstances warranting the application of Rule 60(b)(6) falls upon the party requesting relief. *Jinks v. AlliedSignal, Inc.,* 250 F.3d 381, 385 (6th Cir. 2001). There are few cases that elaborate on what is required to meet this high standard as "clauses 1–5 cover almost every conceivable ground for relief." *Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir. 2002).

In fact, there is more case law outlining what does *not* constitute the extraordinary circumstances necessary to obtain relief under Rule 60(b)(6). *See Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140–41 (3d Cir. 1993) ("Assuming *arguendo* that Healtheast breached the terms of the settlement agreement, that is no reason to set the judgment of dismissal *aside,* although it may give rise to a cause of action to *enforce* the agreement."); *Harman v. Pauley,* 678 F.2d 479, 480–81 (4th Cir. 1982) (noting, in affirming a district court's denial of a Rule 60(b)(6) motion, that "when a settlement agreement has been breached two remedies are available—a suit to enforce the agreement or a Rule 60(b)(6) motion to vacate the prior dismissal").

Under Rule 60(b)(6), when a party breaches a settlement agreement some courts consider the following factors: (1) the defendant's confusion as to the operation of the consent judgment; (2) the defendant's "substantial and continuing disregard for the bargain struck between the parties;" and (3) the fact that the defendant's conduct and post-hoc excuses for non-compliance constituted "a repudiation of important terms of the Consent Agreement." *Ford Motor Co. v. Mustangs Unlimited, Inc. (Ford Motor II)*, No. 99-cv-73933, 2007 WL 2584502, at * 7–8 (E.D. Mich. Sept. 7, 2007). These factors are instructive here as the preliminary injunction similarly requires the parties to follow certain rules. Again, this Court is hard pressed to conclude that the terms of the preliminary injunction were difficult to comply with, especially where, as here, the

parties arguably took conscious action not to comply. *Cf. CJPS Healthcare Supplies & Equip. v. Ansar Medical Technologies, Inc.*, No. 12-CV-14885, 2014 WL 3708612, at *7 (E.D. Mich. July 28, 2014) (denying a motion for relief pursuant to Rule 60(b)(6) because court concluded that defendant's failure to make a payment under the settlement agreement was the result of confusion, not of bad faith which did not meet the "exceptional or extraordinary circumstance" standard).

Finally, EGCC is not without recourse. In its Counterclaims, EGCC seeks a declaratory judgment that SRC has breached the Agreement and that EGCC is entitled to terminate the Agreement. (ECF No. 24, ¶¶ 40–46). *See CJPS Healthcare Supplies & Equip.*, 2014 WL 3708612, at *7–8 (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc. (Ford Motor I)*, 487 F.3d 465, 469 (6th Cir. 2007) (in denying motion for relief pursuant to Rule 60(b)(6), concluding that because plaintiff would be able seek enforcement of the settlement agreement through a collateral proceeding, it is reasonable for the court to "leave the parties to that remedy and refuse to set the judgment aside."). Additionally, this Court cannot decide an issue central to the merits—whether the Agreement has terminated—through a Motion to Vacate a preliminary injunction. Such a fact-based inquiry must be determined on the merits.

Because EGCC's arguments fail to meet Rule 60(b)(5) and (6), EGCC's Motion to Vacate is **DENIED**. (ECF No. 39).

### E.  Motion for Status Conference (ECF No. 48)

On May 17, 2023 SRC filed a Motion for a Hearing or Status Conference with this Court. (ECF No. 48). In the Motion, and relevant to this Court's purview, SRC and EGCC sought guidance on the status of the motions addressed in this Opinion and the status of the parties' financial obligations to each other. (*Id.* at 1–2). SRC sought further guidance on: (1) how to address additional reimbursement obligations over $1 million that EGCC allegedly owes but have not paid;

41

(2) how to address disputes related to SRC's financial audit of EGCC, requests for updated financial information from EGCC, and the status of EGCC's ongoing litigation with the HLC and DOE. (*Id.* at 3). EGCC opposed discussion of these topics. (*Id.*).

Given this Court's above rulings, within **seven (7) days** of the date of this Order, the parties must submit a joint updated Motion for Status Conference detailing the matters for which the parties seek this Court's guidance. As such, the current Motion for Status Conference is **DENIED AS MOOT**. (ECF No. 48).

### III.    CONCLUSION

For the reasons stated above, this Court rules as follows:

(1) SRC's Objection (ECF No. 59) to the Magistrate Judge's July 26, 2023 Opinion and Order (ECF No. 58) is **ADOPTED in part and OVERRULED in part** and the Magistrate Judge's O&O is **AFFIRMED WITH MODIFICATIONS**. (ECF No. 58). SRC is **GRANTED LEAVE** to supplement the FAC on the limited issue of proposed Count VI for unpaid operating expenses and profit-sharing invoices but is **DENIED** leave to amend the FAC to add proposed Count VII for Unjust Enrichment.

(2) EGCC's Motion to Dismiss in Part and Strike SRC's FAC (ECF No. 33) as it relates only to the Motion to Strike is **DENIED**.

(3) EGCC's Motion to Dismiss in Part and Strike SRC's FAC (ECF No. 33) as it relates only to the Motion to Dismiss in Part is **DENIED in part** as to Count I for declaratory judgment and **DENIED AS MOOT** as to Count II for breach of contract.

(4) SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34) is: (1) **GRANTED in part** as it relates to Counterclaim III for unjust enrichment and Counterclaims I and II as it relates to breach of contract for § 8 of the Agreement, **DENIED in part** as it relates

to Counterclaims I and II for breach of contract pursuant to § 2.6 of the Agreement, **and DENIED AS MOOT in part** as it relates to Counterclaims I and II for breach of contract pursuant to § 3.1 of the Agreement.

(5) SRC's Motion for Leave to File Sur-Reply (ECF No. 45) is **DENIED**.

(6) EGCC's Motion to Vacate the Preliminary Injunction (ECF No. 39) is **DENIED**.

(7) SRC's Motion for Status Conference (ECF No. 48) is **DENIED AS MOOT**. The parties are instructed to file a joint updated Motion for Status Conference within **seven (7) days** of the date of this Order detailing the matters for which the parties seek guidance. A telephonic status conference will take place on **Monday, October 23, 2023 at 3:30 p.m.**

SRC is **INSTRUCTED** to file a Supplemented Complaint within **fourteen (14) days** of the date of this Order and the briefing schedule will proceed according to the Local Rules. Additionally, this Court, *sua sponte*, **GRANTS** EGCC **LEAVE TO AMEND** its Motion to Dismiss in Part SRC's Count II for breach of contract and Counterclaims I and II for breach of contract pursuant to § 3.1 of the Agreement on operating expenses and profit-sharing payments. Should EGCC file an amended Motion to Dismiss and Counterclaims, it should take the form of one motion.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 25, 2023**