## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

STUDENT RESOURCE CENTER, LLC,   )
)
*Plaintiff*,   )
)    **DEMAND FOR JURY TRIAL**
v.   )
)    **Case No. 2:22-cv-2653**
EASTERN GATEWAY COMMUNITY   )
COLLEGE,   )    **Chief Judge Algenon L. Marbley**
)
*Defendant*.   )    **Magistrate Judge Chelsey M.**
)    **Vascura**
)
)
)
)

## SECOND AMENDED COMPLAINT

In accordance with the Court's September 25, 2023 Order (ECF No. 63), Plaintiff Student Resource Center, LLC (the "Plaintiff") brings this amended action against Defendant Eastern Gateway Community College (the "Defendant").

## INTRODUCTION

1.    This amended action is brought by Plaintiff Student Resource Center, LLC ("SRC" or the "Company") to hold Defendant Eastern Gateway Community College ("EGCC") accountable for multiple breaches under their Collaboration Agreement dated June 30, 2017, as amended on or around October 2019 and February 1, 2021 (collectively, the "Collaboration Agreement"), which on its own terms remains in force until at least June 30, 2027. However, EGCC's breaches of the Collaboration Agreement, including its continued failure to pay outstanding debts, rendered SRC's performance under the Collaboration Agreement impossible, and SRC terminated all services to EGCC on May 17, 2023. *See* **Exhibit A**.

2.     This Second Amended Complaint largely mirrors SRC's First Amended Complaint but adds Count VI for a supplemental breach-of-contract claim due to EGCC's ongoing refusal to reimburse SRC's ongoing operating expenses to support the Collaboration Agreement pursuant to Exhibit B, Section 2 thereto. SRC does not seek a new preliminary injunction through this Second Amended Complaint, which keeps the same language from SRC's First Amended Complaint to preserve the Court's current injunctions on EGCC, which were affirmed by the Court in its September 25, 2023 Order. *See* ECF Nos. 14, 23, and 64.

3.     SRC's mission aims to provide support to students in order to attain their educational goals by providing them an online curriculum with little to no student debt. To accomplish this goal, SRC partners with higher education institutions in the development and marketing of online courses and programs for unions and other professional associations in light of the substantial costs and debt burden associated with traditional four-year degrees.

4.     Student Resource Center's primary institutional partner had been EGCC[1], which represented approximately 95% of SRC's revenue in 2021 and 2022.

5.     As part of the Collaboration Agreement, SRC assists EGCC, among other things, (a) to develop and market high quality online courses and programs to members of unions and professional association members; (b) to identify courses and programs not currently available to EGCC students; (c) to administer the educational benefit programs offered to unions and professional associations; and (d) to support students with coaching and other services.

6.     As a result of SRC's efforts through the Collaboration Agreement, EGCC's enrollment has grown from approximately 5,549 students in Fall Semester 2016 to over 42,500

---

[1] Some of the events that have transpired since the time of the original Complaint would normally require the tense of some of the allegations herein to change but given the Court's limitations in its September 25, 2023 Order, SRC has kept the same sentence tenses as alleged previously.

students in Fall Semester 2021.

7.     EGCC breached the Collaboration Agreement by issuing a notice dated May 10, 2022 but served on or around May 12, 2022 asserting that SRC materially breached the Collaboration Agreement. *See* **Exhibit B** (referred to herein as the "Notice").

8.     EGCC's Notice concocts a misleading and false argument that SRC materially breached the Collaboration Agreement by removing Michael Perik as SRC's CEO and replacing him with Phillip Braithwaite, a highly qualified executive. SRC's actions were both appropriate and expressly permitted under the plain terms of the Collaboration Agreement. As explained below, Perik and others were replaced because they engaged in fraudulent conduct, including making several material false representations regarding EGCC's accreditation status.

9.     Contrary to EGCC's claims, however, EGCC further breached the Collaboration Agreement by failing to pay SRC over $2,657,153.08[2] owed under the Collaboration Agreement, which amount is now past due.

10.     EGCC's bad-faith breach has been facilitated by EGCC's president, Michael J. Geoghegan and others working at his direction.

11.     In fact, despite SRC's successful and collaborative efforts to support EGCC's students and SRC's financial investment in the development of EGCC's programs, EGCC has decided to undermine and circumvent SRC by refusing to pay SRC amounts previously owed under the Collaboration Agreement, upon information and belief, soliciting SRC's employees and union partners, and curtailing SRC employee access to various information needed for SRC

---

[2] This amount was what was wrongfully withheld at the time of filing the First Amended Complaint. The Court Granted SRC's Motion to Expand the Court's July 11, 2022 Preliminary Injunction Order (ECF No. 14) and ordered EGCC to tender payment of $2,357,153.08 of the $2,600,000. See ECF No. 23. Since then, EGCC has failed to reimburse the remaining $300,000 in operating expenses owed at that time plus an additional $886,700.70 in operating expenses that have accrued from September 2022 through May 2023. These amounts are separate from the projected profit-sharing payment of $6,941,363.03 owed as described in Paragraphs 77 and 160 below pursuant to Section 3 of Exhibit B to the Collaboration Agreement.

to carry out the Collaboration Agreement.

12.     EGCC's actions violate the non-competition provision in Section 8 of the

Collaboration Agreement:

> During the Term, neither SRC nor EGCC shall take any action for the purpose of entering
> into any joint venture, collaboration or similar arrangement that is competitive with the
> Educational Programs provided by the Collaboration to union members; provided
> however, that once EGCC passes through an enrollment threshold of twenty-three
> thousand (23,000) or more Iniative Students, SRC may enter into arrangements similar
> to, or the same as, the Collaboration with other existing colleges if SRC, in its sole
> discretion, determines that such arrangements are necessary to (a) comply with state
> regulatory requirements or (b) ensure regional diversity. For the avoidance of doubt, if
> the number of EGCC-enrolled Initiative Students should be reduced below twenty-three
> thousand (23,000) after such additional arrangements have been entered into by SRC,
> those additional arrangements shall survive such reduction and shall not terminate merely
> as a consequence of such reduction.

(Exhibit A, Section 8).

13.     Geoghegan previously announced during all-EGCC employee meetings that

EGCC plans to terminate the Collaboration Agreement with SRC, regardless of SRC's actions,

and upon information and belief, EGCC plans to pursue a similar collaboration directly with

SRC's union partners without the support of SRC.

14.     Upon information and belief, EGCC's agents and representatives have already

begun to contact SRC's union partners advising of the termination of the Collaboration

Agreement and EGCC's apparent intent to enter into new relationships, with SRC's union

partners without SRC.

15.     In fact, on or around June 28, 2022, three of SRC's union partners have replaced

the SRC subdomain pages and links on their websites to recently created websites controlled by

EGCC. These actions demonstrate EGCC's direct contact with SRC's union partners and

EGCC's attempt to compete with SRC in clear violation of the Collaboration Agreement, which

remains in full force and effect. EGCC's breaches of the Collaboration Agreement, including its

continued failure to pay outstanding debts, rendered SRC's performance under the Collaboration Agreement impossible, and SRC terminated all services to EGCC on May 17, 2023.

16. EGCC's and Geoghegan's attempts to cut out SRC (1) undermine SRC's ability to offer high-quality service to the union members by stripping away SRC's advising and coaching functions and its efforts to provide evidence-based student success tracking and (2) wrongfully deny SRC of the financial opportunity contemplated by the Collaboration Agreement's profit share, which based on current demand forecasts measures tens of millions of dollars.

17. In addition to damages associated with EGCC's breach of the Collaboration Agreement, SRC requests relief (a) declaring that SRC has not breached the Collaboration Agreement; (b) declaring that EGCC is in breach of the Collaboration Agreement; (c) enjoining EGCC from soliciting SRC employees and curtailing SRC employee access to various systems and data sets required by SRC employees to carry out the Collaboration Agreement and to support students prior to their enrollment for the Fall Semester 2022; and (d) enjoining EGCC from further damage to SRC's reputation due to its breach of the non-competition, termination, and confidentiality provisions of the Collaboration Agreement.

**THE PARTIES**

18. Plaintiff SRC is a Delaware limited liability company, with its principal place of business in Chicago, Illinois.

19. SRC's sole member is SRC Intermediate Holdings, Inc. SRC Holdings, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business also in Chicago, Illinois.

20. Defendant EGCC is a corporation, not for profit, incorporated under the laws of

the state of Ohio. EGCC is a two-year public comprehensive community college that exists under the authority of R.C. 3354.24, and EGCC is a political subdivision of the state of Ohio. At all times relevant to this Complaint, EGCC has operated a community college branch in Steubenville, Ohio.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

22.     SRC and EGCC have a contractual relationship as set forth in the Collaboration Agreement that calls for the application of Ohio law and selects the federal courts for Ohio or state courts as the exclusive forum for any disputes. Section 14.14 of the Collaboration Agreement states the following:

> 14.14   Governing Law and Forum Selection. This Agreement is governed by and construed and enforced in accordance with the laws of the State of Ohio without regard to the conflict of law provisions thereof, and each Party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in the United States District Court for the State of Ohio, or in the state courts of the State of Ohio, if the legal action, suit or proceeding lacks the subject matter jurisdiction to be brought in the United States District Court for the District of Ohio and irrevocably accepts and submits to the sole and exclusive jurisdiction of the aforesaid courts in person, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other Party.

(Exhibit A, Section 14.14).

23.     This Court has personal jurisdiction over EGCC because it consented to personal jurisdiction in this Court pursuant to Section 14.14 of the Collaboration Agreement.  Further, this Court also has personal jurisdiction over EGCC as a citizen of the state of Ohio.

24.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to the claims in this case occurred within  Jefferson

County, Ohio.  Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(b)(3) because

EGCC is subject to this Court's personal jurisdiction.

**FACTS**

**I.    Student Resource Center's Business Supports EGCC Students.**

25.    SRC partners with EGCC in the development and marketing of online courses and

programs to union and professional association members, as well as supports students with

coaching and other services.  More specifically, through the Collaboration Agreement, the

Company supports EGCC by, among other things: (a) conducting market research; (b)

understanding the academic and training needs of union groups and employers hiring union

members; (c) identifying prospective adjunct faculty and subject matter experts; (d) supporting

prospective students by encouraging and providing guidance, when requested, through EGCC's

enrollment and on-boarding process; (e) assisting students with requesting prior transcripts and

answer questions about free college; (f) conducting surveys throughout the year for students; (g)

conducting online and in-person informational sessions regarding EGCC and its services; (h)

providing information to prospective students about programs and career pathways; (i) assisting

students with Learning Management System ("LMS") navigation, student portal navigation, and

connecting students to the IT Help Desk; (j) accelerating the growth of online offerings tailored

to adult learners; (k) identifying courses and programs not currently available in EGCC's market

that may meet the unmet needs of adult learners; (l) assisting with awareness and enrollment

efforts of the educational benefit program; and (m) providing non-academic coaching and other

student support services to improve student persistence and completion outcomes.

26.    SRC's coordination and communication with EGCC in order to carry out the

Collaboration Agreement occurred via email, videoconferencing, telephonic, and in-person

communications. A limited portion of these discussions occurred through the Collaboration Agreement's Operating Committee.

27. Under Section 2.6 of the Collaboration Agreement, an Operating Committee was formed, which was comprised of one represented from each party and up to a total of three designees per party who may each individually serve as a representative of his or her respective party during meetings of the Operating Committee.

28. The Operating Committee meetings were, by EGCC's own admission, informal conversational meetings where no votes or decisions were made.

29. In fact, EGCC, of its own initiative, often cancelled these meetings, including every meeting from March 27, 2022 onward as well as several meetings prior to those dates.

30. At all times relevant to this Complaint, SRC's Luis Rosa was a member of the Operating Committee.

31. SRC also partners with unions and other professional associations to make available the educational programs offered by EGCC on a free or heavily discounted basis as a benefit of union or association membership. Further, if a union or association member is interested in one of the educational programs offered by EGCC, SRC provides that prospective student with guidance and support during the application and enrollment processes, as well as ongoing mentoring and other services post-enrollment.

32. SRC's services and relationships with union partners significantly reduce the cost barriers to traditional education offerings and enable EGCC's students to complete their degrees with little to no debt.

33. EGCC is the Company's primary partner. EGCC is an Ohio-based, public institution of higher learning founded in 1968. EGCC offers associate degrees and certificates in

numerous disciplines, and it conducts classes online and in-person at its Youngstown, Ohio and Steubenville, Ohio campuses.[3]

34.    Through its collaboration with EGCC, SRC has facilitated the enrollment of tens of thousands of students and significantly increased college participation numbers of union members thereby substantially improving the financial well-being of EGCC.

35.    For instance, in 2019, SRC helped EGCC enroll or continue to enroll 22,879 students for the school's Fall Semester.  In the fall of 2021, that figure increased to over 42,500 students.

36.    As a result of the collaboration's success, and through its contractual arrangements with EGCC, SRC has generated millions of dollars in revenue for EGCC while simultaneously promoting affordable access to higher education for tens of thousands of students.

37.    SRC took on significant financial risk to support EGCC through the formation of the Collaboration Agreement, investing millions of dollars to help EGCC develop course content and underwriting EGCC's startup costs. As a result, SRC's efforts significantly reduced the per-unit cost of EGCC's academic offerings.

38.    The exclusivity of the agreement was paramount in SRC's decision to enter into the Collaboration Agreement; and without it, SRC would have established other partnerships sooner and sent students elsewhere to diversify.  For EGCC to ignore that provision now is disastrous and unconscionable.

39.    Because of SRC's success, EGCC's Board of Trustees extended the Collaboration Agreement for seven years in October 2019, making it last until at least June 30, 2027. (Exhibit

---

[3] *See* Eastern Gateway Community College, "Who We Are," https://egcc.edu/about-us/institution/who-we-are/ (last accessed September 28, 2023).

A, Amendment No. 1).

## II. The Higher Learning Commission Puts EGCC On Probation For Failing To Comply With Accreditation Criteria Jeopardizing EGCC's Enrollment and the Collaboration Agreement.

40.     As a community college in Ohio, EGCC's accrediting body is the Higher

Learning Commission (the "HLC" or "Commission"). The HLC periodically conducts reviews to

ensure accreditation compliance.

41.     On November 9, 2021, the HLC announced that on November 8, 2021 it had

placed EGCC on probation, finding that the institution was "out of compliance with the Criteria

for Accreditation."

42.     Probation is a public sanction by the HLC that indicates that the institution is no

longer in compliance with one or more Criteria for Accreditation and/or is not in compliance

with other HLC requirements which, if not resolved by the end of the period of probation, could

result in the revocation of the institution's accreditation.

43.     The HLC specifically found that EGCC did not meet five "Core Components" for

accreditation; met six other "Core Components," but "with concerns"; and was "out of

conformity with" six "Assumed Practices" promulgated by the HLC.  These findings were

significant in that as a condition to HLC accreditation, an institution must meet each of the

Criteria for Accreditation, and the Core Components comprising them, in addition to other HLC

requirements.

44.     As a result of these findings, EGCC was ordered to publicly disclose its

accreditation probation, and it was "required to host a comprehensive evaluation no later than

April 2023 to determine whether [it] ha[d] ameliorated the findings that led to the imposition of

the [Probation] sanction."  HLC will then announce in November 2023 whether EGCC will be

taken off probation or further sanctioned, including potentially losing its accreditation.

45.     The HLC's decision to place EGCC on probation—and the sheer number of non-compliance violations—sent shockwaves through the entire higher education community.  It not only represented a public shaming of EGCC, but it also tarnished the reputation and credibility of SRC by association.

46.     EGCC's own actions and inactions resulted in its probation status.  Nevertheless, SRC has taken great pains in assisting EGCC in addressing HLC's concerns – even while it received unfavorable media attention. EGCC's enrollment had consistently increased since the inception of the Collaboration Agreement until HLC put EGCC on probation.

**III.    SRC Replaces Its CEO, Michael Perik, with Phillip Braithwaite Due to Perik's Failure to Disclose the Extent of His Knowledge of the HLC's Mid-Cycle Accreditation Review.**

47.     At the time of HLC's decision to place EGCC on probation, Michael Perik was the Chief Executive Officer and Co-Founder of Student Resource Center, LLC.

48.     Also around the time of HLC's Mid-Cycle Accreditation Review, the period leading up to HLC's final decision, Perik and others were in the process of selling SRC to Sterling Small Market Education Fund, L.P. and SRC Intermediate Holdings, Inc. (collectively "Sterling") pursuant to a Unit Purchase Agreement entered into on June 25, 2021.

49.     Following the public release of the HLC probation letter, Sterling instituted an investigation into the matter and discovered email communications that showed that Perik had engaged in fraudulent conduct.

50.     As a result of Sterling's discovery, SRC removed Perik as CEO and replaced him with Phillip Braithwaite in March of 2022. Further, SRC put executives Nicole Rowe Colclasure, John Hasley, and Daniel Jones on probation. On June 15, 2022, Sterling and SRC Intermediate Holdings, Inc. sued Perik and others for fraud. That lawsuit is currently pending in the United States District Court for the District of Delaware, Case No. 22-cv-00790-RGA. The allegations

in that lawsuit, including that Perik and others knew approximately six months before closing their deal with Sterling that EGCC was out of compliance with HLC's accreditation and was headed toward probation, relate to Perik's removal.

51.     Prior to his termination, Perik already intended to step down from his role as CEO of SRC. EGCC was aware of this fact and never informed SRC of any objections thereto during meetings with Mr. Braithwaite on or around March 29, 2022 and April 1, 2022.

52.     Mr. Braithwaite was a natural fit to replace Perik as CEO. For example, Mr. Braithwaite has extensive experience in higher education and more specifically online education aimed at non-traditional learners. Mr. Braithwaite was the prior President and CEO of Teachers of Tomorrow.

53.     In addition to Mr. Braithwaite, SRC hired other highly qualified executives to support SRC's operations who had extensive experience in higher education and online learning. For example, SRC hired Cecilia Retelle Zywicki as SRC's Chief of Staff. Ms. Retelle Zywicki previously worked as the Chief Operating Officer at Presence Learning, a leading provider of live online special-education-related services. SRC hired Pete Schatschneider as SRC's Senior Vice President of Marketing. Mr. Schatschneider had previously worked for over 15 years at Bisk Education designing infrastructure solutions to online higher-education institutions. In addition, SRC hired Erika Kotterer as SRC's Vice President of Student Operations. Ms. Kotterer worked previously as the Assistant Vice President of Admissions at Southern New Hampshire University. SRC also hired Cecil Banhan as SRC's Vice President of Partnership Development. Mr. Banhan previously worked in that same role for All Campus.

54.     At all relevant times, however, SRC employee, Luis Rosa, continued to act as SRC's representative on the Operating Committee despite the fact that EGCC had cancelled all

Operating Committee meetings around the time of Mr. Braithwaite's transition to SRC.

55.     EGCC nevertheless had already begun to carry out its campaign to compete and interfere with SRC's contractual rights directly because on March 23, 2022, EGCC President, Geoghegan somehow knew, *even before SRC*, that SRC employees Nicole Rowe Colclasure, John Haseley, and Daniel Jones had resigned.

## IV.    EGCC Retaliates Against SRC for SRC's Removal of Perik as CEO and the Resignation of other Executives.

56.     On or around May 12, 2022, Geoghegan, purportedly acting on behalf of EGCC, served a notice (the "Notice") falsely claiming that SRC was in material breach of the Collaboration Agreement because of "unilateral decisions regarding [SRC's] executive management team." In particular, Geoghegan was angry that SRC terminated Michael Perik, declaring in the Notice that SRC's decision constituted a "material breach of the Agreement[.]" Geoghegan also claimed that Perik's termination "led to the departure of other leadership team members" who resigned shortly after Perik's termination. He even went as far as to wrongfully claim that "SRC unilaterally removed these individuals…" and claimed that SRC was in material breach of the Collaboration Agreement as a result. (Exhibit B).

57.     The executive team added by SRC consisting of Ms. Retelle Zywicki, Mr. Schatschneider, Ms. Kotterer, and Mr. Banhan seamlessly continued SRC's day-to-day operations and support of the Collaboration Agreement.

58.     Under Section 2.5 of the Collaboration Agreement, however, "[e]ach Party shall have responsibility for and *complete discretion with respect to supervision and management of its employees* and third-party contractors providing the Collaboration Activities." (Exhibit A, Section 2.5) (Emphasis added).

59.     At no point has SRC breached the Collaboration Agreement with EGCC either

because of its removal of Perik as CEO or otherwise.

60.     Nevertheless, EGCC has fabricated this misleading claim of material breach to wrongfully withhold payments of over $2,657,153.08 due and owed to SRC under the Collaboration Agreement in retaliation for the termination of Perik and as a means of avoiding the payment of what will likely be tens of millions of dollars over the next five years under the current term of the Collaboration Agreement.

61.     EGCC does not dispute that it currently owes over $2,657,153.08 to SRC.[4]

62.     EGCC's actions constitute bad faith since EGCC and Geoghegan acted despite knowing that SRC supported the Collaboration Agreement with high-quality service and a highly qualified executive team.

63.     Furthermore, EGCC entered into a scheme to usurp SRC business opportunities under the Collaboration Agreement by setting up a new partnership directly with SRC's union partners and by poaching and soliciting SRC's employees.

64.     Geoghegan announced during an all-EGCC employee meeting that EGCC plans to terminate the Collaboration Agreement with SRC, regardless of SRC's actions, and upon information and belief, EGCC plans to pursue a similar collaboration directly with SRC's union partners without the support of SRC.

65.     Upon information and belief, EGCC and its agents and representatives have already begun to contact SRC's union partners advising them of EGCC's baseless plans to terminate the Collaboration Agreement and enter into new relationships with SRC's union partners without SRC.

---

[4] $2,357,153.08 of this amount was paid to SRC pursuant to the Court's Order on August 23, 2022. (See ECF No. 23) but there has been no final adjudication on the merits of that amount as of the date of this Second Amended Complaint.

66.     EGCC's actions have already caused incalculable harm to SRC's business relations with union partners. Upon information and belief, in June of 2022, EGCC contacted SRC's union partners stating that they made SRC aware of their possible need to permit their union members to enroll directly through EGCC without SRC's involvement if the Collaboration Agreement is no longer enforceable based on EGCC and Geoghegan's false representations and unwillingness to engage in a careful transition timetable. Moreover, on or around June 28, 2022, EGCC coordinated with SRC's union partners to replace the SRC subdomain pages and links on SRC's union partner websites with recently created websites controlled by EGCC. These actions are in clear violation of the Collaboration Agreement, which remains in full force and effect.

67.     If SRC's union partners are forced to permit their members to enroll directly with EGCC without SRC's involvement based on EGCC's and Geoghegan's false claims that SRC breached the Collaboration Agreement, SRC will face devastating disruption to its business operations given its expense obligations to its workforce and its debt service obligations to its lender. Further, students will be left without a careful transition plan and without the same level of coaching and advising support.

68.     To help carry out their plan to interfere with SRC's business relations and to compete with SRC, EGCC and Geoghegan began a campaign to solicit and poach SRC's employees including Monica Allison, Cassandra Balvin, Chelsey Balvin, Amy Barcus, Zachary Burns, Hank Clegg, Katherine Corcoran, Cassandra Cornell, Breanna Gassner, Nyasha Jones, Katie Mattern, Lindsey Mattern, Crissie Moran, Donna Singh, and John Ward.

69.     EGCC's scheme to compete with SRC is prohibited by Sections 8 and 12 of the Collaboration Agreement. Under Section 8, EGCC shall not "take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the

Educational Programs provided by the Collaboration to union members[.]" (*See* Exhibit A, Sections 8 & 12). Section 12 provides, in part, that "all information exchanged by the Parties pursuant to and in execution of their obligations and in exercise of their rights under this Agreement shall be deemed confidential." (*Id.*) "Disclosure of confidential and proprietary information hereunder, whether orally or in written form, shall be safeguarded by the recipient…." (*Id.*)

70.     EGCC and Geoghegan have taken actions to thwart SRC's ability to operate, and the students are collateral damage in these wrongful efforts to terminate the Collaboration Agreement without just cause.

71.     For example, despite the fact that the Collaboration Agreement remains in full force and effect, EGCC has begun to limit access to information required to be provided to SRC under the Collaboration Agreement.

72.      SRC employees rely on this information to assist prospective students who require referral to financial aid information made available by EGCC (or generally available to the public) as well as to EGCC financial aid personnel for financial aid processing. Without access to this information, the student members of SRC's union partners risk losing the ability to enroll in EGCC for the upcoming Fall Semester 2022.

73.     Despite EGCC's and Geoghegan's actions, SRC has repeatedly informed EGCC that SRC intends to continue to operate by the terms of the Collaboration Agreement and has continued to provide high-quality services through May 17, 2023 just as well if not better than SRC's previous management team.

**V.     EGCC Continues to Wrongfully Withhold Payments Owed to SRC**

74.     On June 30, 2022, SRC filed its Complaint against EGCC requesting a

preliminary injunction to enjoin EGCC from wrongfully attempting to terminate the Collaboration Agreement. The Complaint alleged that EGCC breached the Collaboration Agreement's non-competition provision and its obligation to pay amounts previously owed under the Collaboration Agreement.

75.     The Court agreed with SRC, and on July 1, 2022, the Court issued an Opinion & Order (ECF No. 14) preliminarily enjoining EGCC from: (1) terminating the Collaboration Agreement for the reasons set forth in EGCC's May 12, 2022 Notice and (2) breaching the Collaboration Agreement's non-competition provisions by starting and operating a competing business. *See* Opinion & Order (ECF No. 14, at PAGEID # 290-91).

76.     Despite the Opinion & Order, EGCC continued to withhold profit-sharing payments owed to SRC under the Collaboration Agreement.

77.     EGCC ignored SRC's efforts to seek reimbursement without intervention from the Court, and SRC was left with no other option but to move the Court to expand the preliminary injunction to receive those payments.

78.     On August 23, 2022, the Court issued a second Opinion & Order (ECF No. 23) further enjoining EGCC from withholding profit-sharing payments for semesters ending prior to December 31, 2021 in the amount of $2,357,153.08 as demonstrated by EGCC's own financial statements.

79.     Even after two preliminary injunction rulings from the Court, EGCC continues to wrongfully withhold amounts due and owed to SRC under the Collaboration Agreement.

80.     Currently, EGCC owes SRC past due operating expenses in the amount of $1,186,700.70 (as described in footnote 1 above) but this amount will continue to increase. In addition, EGCC owes SRC additional profit-sharing payments owed for Semesters after

17

December 31, 2021.

81.     Under Section 3 of Exhibit B to the Collaboration Agreement, "EGCC will also make Surplus payments at the end of the Spring Semester; however, the Spring Semester Surplus payments will be made promptly after the receipt of final numbers generated as part of EGCC's audited statements, but no later than September 30th of the Following Fiscal Year." (*See also* Collaboration Agreement, Section 1.16, defining a "Fiscal Year" as the time from July 1 through June 30).

82.     On September 30, 2022, EGCC paid SRC $551,527.93, far less than what is owed for the profit-sharing payments.

83.     On September 30, 2023, EGCC failed to make any profit-sharing payment due and owed for the prior Fiscal Year.

84.     Based on SRC's own calculation from EGCC's own records, EGCC owes SRC $6,941,363.03 for these profit-sharing payments for the 2022 Fiscal Year. For the 2023 Fiscal Year, SRC has not received a reconciliation of EGCC's records to know the total amount owed to SRC.

## VI.    EGCC Refuses to Perform Under the Collaboration Agreement Making It Impossible for SRC to Perform Its Own Duties

85.     EGCC refuses to perform its obligations under the terms of the Collaboration Agreement, which materially prevents SRC from performing its own obligations.

86.     For example, EGCC refuses to provide SRC with necessary information for SRC to conduct its work under the Collaboration Agreement. Under Section 7.2, within 120 days before the beginning of each academic year, EGCC must "provide SRC with projected Student Enrollment Data for each Educational Program and projected Fees for the following academic year."

87. Under the Collaboration Agreement, SRC needs this data to proceed through the Annual Budget Approval Process. The parties then must "consult and negotiate with each other in good faith" to mutually agree upon an Annual Budget.

88. While the Collaboration Agreement does not require SRC to initially draft a proposed Annual Budget, SRC did so without the data required under Section 7.2, and SRC submitted that proposed Annual Budget to EGCC on September 1, 2022. ***See* Exhibit C**

89. To date, EGCC has failed to provide SRC with the projected Student Enrollment Data for each Educational Program and projected Fees, and the academic year already began on August 15, 2022.

90. Section 7.2 also provides a failsafe, and if no Annual Budget has been established 60 days before the commencement of the academic year, then the last Annual Budget in effect will continue as Annual Budget until the parties agree on a new Annual Budget.

91. EGCC neither responded to SRC's September 1, 2022 proposed Annual Budget nor otherwise acted in good faith to engage with SRC to establish an Annual Budget.

92. Instead, EGCC attempts to use its own dereliction of its obligations under the Collaboration Agreement as a pretext for claiming SRC materially breached the Collaboration Agreement. *See* EGCC's Counterclaim (ECF No. 24, PAGEID# 714).

93. Moreover, EGCC's actions have stymied the Collaboration and have prevented it from moving forward. On July 18, 2022, the U.S. Department of Education (the "Department') issued a Cease and Desist Letter to EGCC, which stated in part that EGCC's Free College Benefit program "as currently implemented, violates the Title IV prohibition against assessing charges to Title IV recipients that are higher than those charges assessed to non-Title IV recipients. Consequently, Eastern Gateway must cease providing the Free College Benefit

program as currently implemented." *See Eastern Gateway Community College v. Cardona*, No. 2:22-cv-03326 (S.D. Ohio 9, 2022) (ECF No. 1-1, PAGEID #27).

94.     As a result of the Department's Cease and Desist Letter, EGCC initiated a lawsuit against the Department. *See generally Eastern Gateway Community College v. Cardona*, No. 2:22-cv-03326 (S.D. Ohio).

95.     In that lawsuit, Department representatives identified several startling observations regarding EGCC's affairs. For example, representatives indicated it held concerns regarding EGCC's "data and its inability to produce a clear audit trail of its receipt and disbursement of Title IV funds. Without a clear audit trail, an institution cannot establish that it properly administered the Title IV programs and that it properly disbursed Title IV funds." *See Eastern Gateway Community College v. Cardona*, No. 2:22-cv-03326 (S.D. Ohio September 2, 2022) (ECF No. 19-1, PAGEID #260).

96.     Department representatives also observed that "[d]ue to the numerous and serious issues identified, the Department transferred the institution [EGCC] from the Advanced method of payment to Heightened Cash Monitoring 2 (HCM) method of payment." Institutions are transferred to HCM2 when the Department has concerns regarding "the viability of the institution" or "where there are serious concerns about the institution's continued compliance with Title IV requirements." "To date, Eastern Gateway has not filed a request for funds under the HCM2 method of payment." *Id.*

97.     Under Section 4 of the Collaboration Agreement, EGCC made several representations and warranties to SRC, which have been breached.

98.     For example, EGCC represented and warranted that "no authorization, consent, approval, permit or license of filing with, any Governmental Authority, Educational Agency or

any other Person, is required to authorize, or is required in connection with, the execution, delivery and performance of this Agreement or any other agreements contemplated hereby or thereby on the part of EGCC." *See* Exhibit A, Section 4.3.

99.     Further, EGCC represented and warranted that EGCC has "(a) all approvals required pursuant to its policies and procedures to offer the Initial Educational Programs and (b) all material Educational Approvals, to offer the Initial Educational Programs and to award Title IV Program funds and other student financial assistance in connection with such Initial Educational Programs." *See* Exhibit A, Section 4.4.

100.    EGCC represented and warranted that "EGCC is not in violation of any judgment, decree, order, statute, rule, regulation, standard or policy of any Governmental Authority or Educational Agency having jurisdiction over EGCC, which violation could reasonably be likely to have a material adverse effect on EGCC, the Collaboration or the Initiative." *See* Exhibit A, Section 4.5.

101.    Finally, EGCC represented and warranted that it holds all of the authorizations and approvals necessary to "conduct the business and operations of EGCC, in the manner and to the full extent that they are now being conducted and in accordance with applicable Law, including with respect to participation in the Title IV Programs[.]" *See* Exhibit A, Section 4.8.

102.    EGCC has breached numerous material provisions within the Collaboration Agreement.

103.    In light of the Department's Cease-and-Desist Letter, which asserts that EGCC's Free College Benefit Program violates Title IV, SRC was required to modify its services under the Collaboration Agreement pursuant to Section 9.

104.    Because the Cease-and-Desist Letter applied to "new students enrolling in the

Free College Benefit Program[,]" and EGCC refused to provide SRC with guidance on how to continue support of the Collaboration, SRC stopped supporting services for new students but continued to support students that were previously enrolled in order to adhere to a modification reasonably necessary to secure compliance with the Department's position as required by law and pursuant to Section 9 of the Collaboration Agreement.

105. Between September 2022 and May 2023, however, EGCC refused to reimburse SRC for $886,700.70 in operating expenses incurred as a result of SRC's continued support of the Collaboration Agreement.

106. These operating expenses incurred by SRC stem from its employees' effort to meet biweekly with EGCC staff and resulted from scheduling over 25,000 appointments for students reenrolling for the Fall 2022 and Spring 2023 semesters. SRC's efforts conferred a benefit upon EGCC.

107. Despite EGCC's continued acceptance of SRC's services, EGCC asserts through its counsel that the Collaboration Agreement terminated at the end of 2022. EGCC has continued to refuse to reimburse SRC for operating expenses between September 1, 2022 and May 17, 2023. EGCC's refusal amounts to an additional breach of the Collaboration Agreement.

108. EGCC does not dispute that invoices were sent biweekly from September 1, 2022 to May 17, 2023 for operational expenses totaling $866,700.70 and that these invoices went ignored by EGCC.

109. As a result of EGCC's multiple breaches of the Collaboration Agreement, SRC will lose years of profit-sharing payments worth tens of millions of dollars by the time the Collaboration Agreement was set to expire on June 30, 2027.

**VII. Michael Geoghegan's Conduct**

22

110.    EGCC's failure to adhere to the Collaboration Agreement occurred, at least in material part, as a result of Geoghegan's self-interest, which was contrary to the interests of EGCC.

111.    From approximately 2010 to October 2017, Geoghegan was the chief financial officer at Cincinnati State Technical Community College ("CSTCC").

112.    During that time, Geoghegan met and befriended Perik.

113.    The meeting occurred as part of a failed effort by Perik, which Geoghegan supported, to form a successful joint effort with CSTCC to construct a new building paid for by Perik in return for a portion of CSTCC's profits.

114.    After the project failed, Perik moved on to form a new project with EGCC. Perik knew he needed support from within EGCC and so he offered to help Geoghegan receive a job offer from EGCC as its chief financial officer.

115.    At the time Perik was starting work with EGCC, Geoghegan's continued employment options with CSTCC were limited since CSTCC had become embroiled in a lawsuit with an academic content and textbook provider due to Geoghegan's involvement with the contract related to that company.

116.    Through Perik's efforts, Geoghegan became EGCC's chief financial officer around October 2017.

117.    Many of Geoghegan's coworkers at EGCC observed that Geoghegan engaged in several questionable financial practices.

118.    Over time, Geoghegan provided many favors to his friend, Perik, in return for bringing him into the fold at EGCC.

119.    Whenever anyone at EGCC questioned Geoghegan's financial decisions and

Perik's direct involvement with EGCC's affairs, Geoghegan sought to terminate those EGCC employees to continue to provide favors to Perik.

120.    Eventually, too many members of EGCC's leadership began to question Geoghegan's decisions. Relying on Perik, Geoghegan needed a way to consolidate decision-making authority.

121.    Through Perik's efforts, EGCC's prior President was terminated, and Perik put the pieces in place to elevate Geoghegan to become EGCC's President of EGCC in July 2020.

122.    Despite taking the position of President, Geoghegan, retained his role as chief financial officer and treasurer to avoid proper internal financial controls.

123.    By maintaining his role as chief financial officer and treasurer, Geoghegan could keep control of auditing, all to return the favor to Perik, who helped elevate Geoghegan to his new position of power within EGCC.

124.    Perik caused Geoghegan to be elevated to President despite what Geoghegan's colleagues felt were a lack of qualifications on Geoghegan's part since he had no prior suitable experience in college administration.

125.    Around the time Geoghegan became EGCC's president, HLC began raising concerns about EGCC's business practices during its program review of EGCC. During an EGCC cabinet meeting around that time, Geoghegan acknowledged that EGCC faced accreditation probation from HLC but expressly directed all members present during the meeting to tell no one about these issues, including SRC.

126.    Also around this time, Perik began searching for potential buyers to purchase SRC, of which he was an owner. Eventually, Sterling expressed an interest in purchasing SRC in December 2020.

127.    Geoghegan informed Perik of HLC's concerns and the possibility that EGCC would be placed on probation, but Geoghegan knew that Perik would receive a better deal when selling SRC if the HLC-related concerns were unknown to the purchaser. Geoghegan even began using an encrypted messenger cell phone application to communicate with Perik and others to circumvent Ohio public records laws and avoid detection from Sterling during the due diligence process.

128.    As stated above, HLC put EGCC on probation and Sterling instituted an investigation into the matter. The investigation revealed email communications that showed that Perik misrepresented the extent of his knowledge and when he acquired knowledge from Geoghegan about the HLC's concerns.

129.    As a result of Sterling's discovery, SRC removed Perik as CEO and replaced him with Phillip Braithwaite in March of 2022.

130.    When Geoghegan learned of Perik's removal, he became irate and immediately sought to take retaliatory action against SRC's new owners by causing EGCC to wrongfully attempt to terminate and compete with the Collaboration Agreement.

131.    Geoghegan knew that EGCC had no basis to attempt to terminate the Collaboration Agreement but sought to do so anyway in order to repay the favor to his friend, Perik, who no longer would receive shared profits with EGCC and who had helped Geoghegan become EGCC's president. As a result of Geoghegan's decision-making authority, EGCC continues to withhold payments due and owed to SRC without a legal basis.

132.    EGCC intentionally continues to breach the Collaboration Agreement based on it and Geoghegan's belief that if payments to SRC are delayed long enough, SRC will go out of business. EGCC aims to unwind SRC in order for EGCC to compete with SRC.

133.    As stated before, the Department has reflected EGCC's delay and has not made any request for funds under the HCM2 method of payment despite potentially receiving millions in tuition reimbursements to the benefit of EGCC.

## CLAIMS FOR RELIEF
## COUNT I - Declaratory Judgment that SRC Has Not Breached the Collaboration Agreement

134.    SRC restates the allegations in the paragraphs set forth above, as if those paragraphs were fully rewritten herein.

135.    As set forth above, on or around May 12, 2022, EGCC served the Notice on SRC claiming that SRC materially breached the Collaboration Agreement for removing Perik as its CEO. (*See generally*, Exhibit B).

136.    Nevertheless, Section 2.5 of the Collaboration Agreement expressly permits that "[e]ach Party shall have responsibility for and ***complete discretion with respect to supervision and management of its employees*** and third-party contractors providing the Collaboration Activities." (*See* Exhibit A, Section 2.5) (Emphasis added).

137.    On or around May 20, 2022, SRC served a response to EGCC's May 12, 2022 Notice explaining that Perik's removal as CEO could not constitute a breach of the Collaboration Agreement based in Section 2.5 of the Collaboration Agreement.

138.    Moreover, any decrease in EGCC's enrollment resulted from HLC's decision to put EGCC on probation.

139.    After SRC served its response, EGCC's president, Geoghegan, contacted union leaders to indicate EGCC's intent to terminate the Collaboration Agreement with SRC.

140.    Accordingly, an actual justiciable controversy exists between EGCC and SRC for which SRC has no adequate remedy at law.

141.     SRC is entitled to a judgment declaring that SRC's removal of Perik as its CEO did not constitute a material breach of the Collaboration Agreement and that no other material breaches exist at this time.

### Count II - Breach of Contract - Failure to Pay Amounts Owed for Operating Expenses Prior to September 2022 and Profit-Sharing Payments for Semesters Prior to Spring 2022 (Against EGCC)

142.     SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

143.     Under Section 2 of the Collaboration Agreement, EGCC must reimburse SRC for its operational expenses. The Collaboration Agreement states, in relevant part, that "SRC will be paid by the Collaboration for the Collaboration Account within five (5) days of the receipt of the monthly deposit of Revenue from the EGCC for all open invoices…" (*See* Exhibit A).

144.     EGCC failed to reimburse SRC for $300,000 worth of operating expenses that were invoiced to EGCC on May 5, 2022 ($55,000), May 19, 2022 ($55,000), June 3, 2022 ($55,000), and June 22, 2022 ($135,000).

145.     Section 3 of the Collaboration Agreement provides that "[w]ithin thirty (30) days of the end of the summer and Fall Semesters, EGCC will provide SRC with a semester reconciliation of the Revenue Collected and Operating Expenses paid in each such semester…. EGCC will distribute the Surplus from the Collaboration Account as follows: 50% to SRC and 50% to EGCC." (*See* Exhibit A).

146.     Under this provision, SRC is entitled to 50% of the Surplus of funds (as that term is defined by the Collaboration Agreement) remaining in the Collaboration Account as shown in the semester reconciliation.

147.     SRC has never received the amounts owed to it for past due profit share payments for terms prior to the Spring 2022 term.

148.    By SRC's calculations, the outstanding unpaid balance is $2,357,153.08.

149.    EGCC failed to reimburse SRC for its 50% allocation of the Surplus remaining in the Collaboration Account, which amounts to $2,357,153.08.

150.    EGCC breached the Collaboration Agreement by failing to pay SRC the $300,000 amount within the five-day period described in Section 2 of the Collaboration Agreement, and EGCC breached the Collaboration Agreement by failing to pay SRC its 50% allocation of $2,357,153.08 for the Surplus amounts within the Collaboration Account.

151.    As a direct result of EGCC's breach, SRC has suffered damages totaling more than $2,378,621 plus accruing interest.

152.    Additionally, EGCC's continued failure to pay SRC the funds owed to it under the Agreement will result in SRC defaulting on its obligations, including debt servicing and payroll, and ultimately failing as a going concern.

### Count III - Breach of Contract - Failure to Abide by Non-Competition Provisions Under Section 8 of the Collaboration Agreement (Against EGCC)

153.    SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

154.    Under Section 8 of the Collaboration Agreement, EGCC is prohibited from taking any action that is competitive with the educational programs offered by the Collaboration to union members.

155.    EGCC, through Geoghegan, has announced during all-EGCC employee meetings that EGCC plans to terminate the Collaboration Agreement with SRC under all circumstances and he has announced that EGCC plans to pursue a similar collaboration directly with SRC's union partners without SRC.

156.    EGCC has already begun to contact SRC's union partners about his intent to

wrongfully terminate the Collaboration Agreement and his intent to collaborate with those union partners without SRC.

157.    As stated above, EGCC has already coordinated with SRC's union partners to replace the SRC subdomain pages and links on SRC's union partner websites with recently created websites controlled by EGCC. These actions are in clear violation of the Collaboration Agreement, which remains in full force and effect.

158.    EGCC has knowledge of the non-competition provision in the Collaboration Agreement, and EGCC violated that provision.

159.    EGCC staff have begun to eliminate SRC's ability to pull routine reports needed assist students with the enrollment process. Moreover, SRC staff have reported that EGCC has cancelled their Microsoft 360 accounts, which are needed for SRC employee communications and video conferencing through Microsoft Teams.

160.    Further, in an effort to circumvent the confidentiality requirements of Section 8, EGCC has begun a campaign to solicit and poach SRC's employees including Monica Allison, Cassandra Balvin, Chelsey Balvin, Amy Barcus, Zachary Burns, Hank Clegg, Katherine Corcoran, Cassandra Cornell, Breanna Gassner, Nyasha Jones, Katie Mattern, Lindsey Mattern, Crissie Moran, Donna Singh, and John Ward.

161.    These actions directly violate Section 8 of the Collaboration Agreement.

162.    As a result of EGCC's breach of the Collaboration Agreement, SRC has suffered damages in an amount to be determined at trial but will likely be tens of millions of dollars based on SRC's conservative estimate.


**Count IV - Breach of Contract - Failure to Pay Additional Amounts Owed for Profit-Sharing Payments (Against EGCC)**

163. SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

164. EGCC owes SRC additional profit-sharing payments owed for Semesters after December 31, 2021.

165. SRC has invoiced EGCC, and EGCC wrongfully refuses to reimburse SRC in violation of Section 3 of Exhibit B to the Collaboration Agreement.

166. Under Section 3 of Exhibit B to the Collaboration Agreement, "EGCC will also make Surplus payments at the end of the Spring Semester; however, the Spring Semester Surplus payments will be made promptly after the receipt of final numbers generated as part of EGCC's audited statements, but no later than September 30th of the Following Fiscal Year."

167. EGCC failed to pay any profit-sharing amount to SRC by September 30, 2022 as it was required to do.

168. Based on SRC's own calculation from EGCC's own records, EGCC owes SRC $6,941,363.03 for these profit-sharing payments.

169. EGCC also failed to pay any profit-sharing amount to SRC by September 30, 2023 for the subsequent Fiscal Year.

170. For the 2023 Fiscal Year, SRC has not received a reconciliation of EGCC's records to know the total amount owed to SRC but SRC believes this amount to be substantial and will be determined either through dispositive motion or at trial.

171. SRC has performed all of its duties under the Collaboration Agreement.

172. EGCC is in breach of the Collaboration Agreement and SRC has suffered damages.

**Count V - Breach of Contract – Material Breaches of the Collaboration Agreement
(Against EGCC)**

173.    SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

174.    EGCC refuses to perform its obligations under the terms of the Collaboration
Agreement which remains currently in effect.

175.    For example, EGCC refuses to engage with SRC in good faith to establish an
Annual Budget and provide SRC with necessary Student Enrollment Data for each Educational
Program and EGCC's projected Fees for the upcoming academic year as required by Section 7.2.

176.    Moreover, EGCC has materially breached several representations and warranties
under the Collaboration Agreement including Sections 4.3, 4.4, 4.5, and 4.8.

177.    On July 18, 2022, the Department issued a Cease and Desist Letter to EGCC,
which stated in part that EGCC's Free College Benefit program "as currently implemented,
violates the Title IV prohibition against assessing charges to Title IV recipients that are higher
than those charges assessed to non-Title IV recipients. Consequently, Eastern Gateway must
cease providing the Free College Benefit program as currently implemented." *See Eastern
Gateway Community College v. Cardona*, No. 2:22-cv-03326 (S.D. Ohio 9, 2022) (ECF No. 1-1,
PAGEID #27).

178.    EGCC's violation of Title IV constitutes a material breach of Sections 4.3, 4.4,
4.5, and 4.8 to the Collaboration Agreement.

179.    In fact, representatives from the Department have concluded that it is "unlikely"
that EGCC will be able to meet the Title IV requirements for HCM2. *See Eastern Gateway
Community College v. Cardona*, No. 2:22-cv-03326 (S.D. Ohio September 20, 2022) (ECF No.
19-1, PAGEID #264).

180.    The representations and warranties made by EGCC were fundamental to the

formation of the Collaboration Agreement, and EGCC's actions to date make it impossible for EGCC to cure those material breaches of the Collaboration Agreement.

181.    At all relevant times, SRC has performed its duties under the Collaboration Agreement.

182.    As a result of EGCC's material breaches of the Collaboration Agreement and the termination of the same, SRC has suffered tens of millions of dollars in expectancy damages since the Collaboration Agreement was set to continue until June 30, 2027.

**Count VI - Breach of Contract – Failure to Pay Additional Amounts Owed For Operating Expenses After September 1, 2022 (Against EGCC)**

183.    SRC restates the allegations in the above paragraphs, as if fully rewritten herein.

184.    Currently, EGCC owes past due operating expenses for all services rendered by SRC from September 1, 2022 to present in the amount totaling $886,700.70.

185.    Under Section 2 of Exhibit B to the Collaboration Agreement, EGCC must reimburse SRC for its operating expenses. The Collaboration Agreement states, in relevant part, that "SRC will be paid by the Collaboration for the Collaboration Account within five (5) days of the receipt of the monthly deposit of Revenue from the EGCC for all open invoices…" (*See* Exhibit A).

186.    SRC invoiced this amount to EGCC in biweekly invoices on the following dates: September 6, 2022 ($169,593.90); September 28, 2022 ($222,476.80); October 14, 2022 ($86,718.37); October 27, 2022 ($53,496.86); November 18, 2022 ($26,069.40); November 22, 2022 ($21,684.80); December 6, 2022 ($26,963.40); December 20, 2022 ($21,761.07); January 3, 2023 ($25,398.63); January 18, 2023 ($26,069.08); February 2, 2023 ($27,052.77); February 14, 2023 ($23,921.93); February 28, 2023 ($28,923.77); March 14, 2023 ($23,132.27); March 28, 2023 ($24,692.61); April 11, 2023 ($27,341.79); April 27, 2023 ($24,750.08); and May 17,

2023 ($26,653.17). EGCC wrongfully refuses to reimburse SRC for these amounts in violation of Section 2 of Exhibit B to the Collaboration Agreement.

187.    EGCC breached the Collaboration Agreement by failing to pay SRC the $860,046.33 amount within the five-day period described in Section 2 of the Collaboration Agreement.

188.    SRC has performed all of its duties under the Collaboration Agreement.

189.    Due to EGCC's breach of the Collaboration Agreement, SRC has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an order awarding them:

a.    Awarding Plaintiff all costs and expenses incurred in prosecuting this action;

b.    Awarding SRC all available damages from EGCC's breach of the Collaboration Agreement;

c.    Pre- and post-judgment interest;

d.    A declaration that SRC has not breached the Collaboration Agreement by removing Perik as its CEO or otherwise and that EGCC has materially breached the Collaboration Agreement and on that basis, it is terminated;

e.    Issue a preliminary injunction during the pendency of this case, to be followed by a permanent injunction, restraining and enjoining EGCC from (1) soliciting SRC's employees, (2) soliciting business opportunities directly with unions or other professional

organizations in any similar arrangement as the Collaboration Agreement, and (3) entering into

a contract substantially similar to the Collaboration Agreement with any third party; and

      f.     Such other relief as this Court deems just, proper, or necessary.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 9, 2023                    Respectfully submitted,

*/s/ Robert C. Folland*
C. David Paragas (0043908)
Robert C. Folland (0065728) (Trial Attorney)
David M. DeVillers (0059456)
Michelle M. Nicholson (0099833)
Jeff A. Bartolozzi (0095664)
BARNES & THORNBURG LLP
41 S. High Street, Ste. 3300
Columbus, Ohio 43215-6104
Telephone: (614) 628-1401
David.Paragas@btlaw.com

*Attorneys for Plaintiff Student Resource Center, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2023, a copy of forgoing was filed electronically via

the Court's CM/ECF filing system and served on all counsel of record.

*/s/ Robert C. Folland*
Robert C. Folland