**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STUDENT RESOURCE CENTER, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-2653** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **EASTERN GATEWAY COMMUNITY** | : | **Magistrate Judge Chelsey M. Vascura** |
| **COLLEGE,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before this Court on Defendant Eastern Gateway Community College's ("EGCC") Motion to Dismiss and Strike in Part, Plaintiff's Second Amended Complaint, Motion to Alter or Amend Order, and Amended Counterclaim (ECF No. 67) and on Plaintiff Student Resource Center, LLC's ("SRC") Motion to Strike and Dismiss, in Part, EGCC's Amended Counterclaim (ECF No. 70). For the reasons that follow:

(1) EGCC's Motion to Dismiss (ECF No. 67) Count II of SRC's Second Amended Complaint ("SAC") (ECF No. 66) is **DENIED**.

(2) EGCC's Motion to Strike (ECF No. 67) Paragraphs 26-30 and 54 of SRC's SAC (ECF No. 66) is **DENIED**.

(3) EGCC's Motion to Alter or Amend Order (ECF No. 67) is **DENIED**.

(4) EGCC's Amended Counterclaim (ECF No. 67) is **DENIED in part and GRANTED in part**; denied as to Paragraphs ¶¶ 22, 38-49, 52, 55, 57-58, 62, 64-66 and granted as to the remaining portions.

(5) SRC's Motion to Strike and Dismiss, in Part, EGCC's Amended Counterclaim (ECF No. 70) is **GRANTED in part and DENIED in part**; granted as to the Motion to Strike Paragraphs ¶¶ 22, 38-49, 52, 55, 57-58, 62, 64-66 and denied as to the Motion to Dismiss Count II of the Amended Counterclaim.

## I.  BACKGROUND

This is a contract case brought by Student Resource Center ("SRC"), a private educational services company, against Eastern Gateway Community College ("EGCC"), a public two-year college based in Steubenville, Ohio. The parties entered a Collaboration Agreement (the "Agreement") in June 2017, the purpose of which is "to develop, market, and offer online courses to members of unions and professional associations," provide academic and career counseling to students, assist with enrollment and course registration, and recruit students—which they have implemented via the Free College Benefit Program ("the Program"). (ECF Nos. 2-3, Braithwaite aff., ¶ 8; 24 at 16). Through the Program, EGCC provides scholarships to more than 90,000 union-affiliated students, (*see* ECF No. 24, ¶ 7), through a "last-dollar" or "last-mile" model of free college in which a state or government institution will pay tuition remaining after a student's existing federal financial aid award is used (*Id.*, ¶ 8).

On November 9, 2021, the Ohio Higher Learning Commission ("HLC") placed EGCC on probation because it was out of compliance with criteria for accreditation. (ECF No. 28, ¶ 35). In March 2022, SRC removed then CEO Michael Perik and replaced him with Phillip Braithwaite, after it was discovered that Perik was allegedly assisting EGCC's President Michael J. Geoghegan in hiding from Sterling, a company interested in purchasing SRC, that EGCC had been placed on probation. (*Id.*, ¶¶ 114 – 16). On May 12, 2022, SRC received a Notice of Breach from EGCC

stating that SRC had breached the Agreement by replacing CEO Perik without notifying EGCC in advance. (ECF No. 58 at 1; 28 ¶ 6)).

On July 11, 2022, upon SRC's motion, this Court issued a preliminary injunction enjoining EGCC from: (1) terminating the Agreement pursuant to EGCC's Notice of Breach; and (2) breaching the Agreement's non-compete provision by starting and operating, directly with the unions, a competing business. (ECF No. 14 at 15–16). Shortly thereafter, on July 18, 2022, the Department of Education ("DOE") issued a Cease-and-Desist letter to EGCC stating that the Free College Benefit program violated Title IV's prohibition against assessing higher charges to Title IV scholarship recipients than those charges assessed to non-Title IV recipients. (ECF No. 28, ¶ 85). On August 23, 2022, this Court expanded the preliminary injunction by requiring EGCC to pay SRC approximately $2.36 million of allegedly withheld profit-sharing payments for the semesters prior to December 31, 2021. (*Id.*, ¶ 71).

On October 10, 2022, SRC filed its First Amended Complaint ("FAC"): (1) in Count I alleging that SRC did not materially breach § 2.5 of the Agreement when it replaced Perik without notice to EGCC; (2) in Count II, a breach of contract claim for approximately $2.36 million in past due profit-sharing payments and $300,000 in operating expenses from May to June 2022; (3) in Count III, a breach of contract claim for failure to comply with § 8's non-compete provision for contacting SRC's union partners directly and attempting to poach SRC staff; (4) in Count IV, a failure to pay just under $700,000 in operating expenses and just under $7 million in profit-sharing invoices; and (5) in Count V, a breach of contract claim for failure to provide student enrollment data to SRC and being in violation of the Agreement requiring compliance with DOE regulations. (*Id.*, ¶¶ 121–68). EGCC argues that certain language used by SRC in the FAC indicates that SRC intended to terminate the Agreement as of the filing of the FAC. (ECF No. 59 at 6).

On October 21, 2022, the EGCC was granted a preliminary injunction to enjoin the DOE from enforcing the Cease-and-Desist letter based on the DOE's failure to provide proper notice. (Case No. 2:22-cv-3326, ECF No. 37). Shortly thereafter, EGCC alleges that it reached out to SRC to resume performance of the Agreement. (ECF No. 59 at 6). Although SRC argues that it never stopped performance, SRC responded on October 27, 2022 and noted in the letter that EGCC was in default of the Agreement because of past-due operating expense invoices and that SRC needed assurances that EGCC was not in violation of Title IV. (*Id.*). On November 30, 2022 the deadline to amend any pleadings in this case passed. (ECF No. 30).

SRC argues that EGCC did not respond substantively to its October 27, 2022 letter until December 22, 2022, at which time EGCC states that it disputed the amounts owed and that the Program never violated Title IV. (ECF No. 59 at 6). In the alternative, EGCC argues that because it did not "cure" the alleged breaches detailed in SRC's October 27, 2022 letter, the sixty-day cure period expired, at the latest, on December 31, 2022 and the Agreement terminated. (ECF No. 39 at 6). On May 17, 2023, SRC, which had refused to provide services to newly admitted students following the DOE's Cease-and-Desist letter and limited services only to students enrolled from previous semesters, stopped providing services entirely due to EGCC's alleged continued refusal to pay outstanding invoices. (ECF No. 59 at 8, 14).

The matter continued, and in June 2023, the parties asked for an extension of certain scheduling deadlines but did not include the deadline to amend pleadings in the request. (ECF No. 50; 51). On June 20, 2023, however, SRC filed a Motion for Leave to File a Second Amended Complaint ("SAC"). (ECF No. 52). The Motion stated that SRC intended to: (1) allege that the Agreement had not terminated in October 2022 upon its filing of the FAC but remains in effect; and (2) amend the FAC with an additional breach of contract claim and unjust enrichment claim

to cover alleged unpaid expenses from September 2022 to the present. (ECF No. 58 at 2). On August 9, 2023, the Magistrate Judge denied the Motion for Leave to Amend the FAC (ECF No. 58), and SRC promptly objected (ECF No. 59).

On September 25, 2023, this Court addressed multiple outstanding motions by: (1) denying in part EGCC's Motion to Strike the FAC and Dismiss in Part SRC's FAC (ECF No. 33); (2) granting in part and denying in part SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34), granting in part as it relates to Counterclaim III for unjust enrichment and Counterclaims I and II as it relates to breach of contract for § 8 of the Agreement and denying in part as it relates to Counterclaims I and II for breach of contract pursuant to § 2.6 of the Agreement; (3) denying EGCC's Motion to Vacate the Preliminary Injunction (ECF No. 39); (4) denying SRC's Motion for Leave to File Sur-Reply (ECF No. 45); and denying (5) SRC's Motion for a Status Conference (ECF No. 48).

On October 23, 2023, Defendant EGCC filed the Motion to Dismiss and Strike in Part, Plaintiff's Second Amended Complaint, Motion to Alter or Amend Order, and Amended Counterclaim (ECF No. 67), which this Court now considers. Plaintiff has replied to each portion of Defendant's Motion in separate filings (ECF Nos. 70, 71, 72, and 73) and Defendant has responded in kind. This matter is now ripe for consideration.

## II. LAW & ANALYSIS

### A. Motion to Dismiss (ECF No. 67) Count II of the SAC

#### 1. Standard of Review

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual

allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### 2. Law & Analysis

In its one-page argument, EGCC asserts that the profit-sharing claim in Count II, which claims that EGCC wrongfully withheld $2,357,153.08 from SRC, should be dismissed because this Court ordered EGCC to pay the outstanding amount to SRC in its July 11, 2022 Preliminary Injunction Order (ECF No. 14). (ECF No. 67 at 2). Accordingly, EGCC argues that the profit-sharing claim in Count II is now moot. (*Id.*). SRC responds by correctly arguing that a preliminary injunction does not constitute a final judgment on the merits and that as such, none of SRC's claims

is yet moot. (ECF No. 73 at 1). SRC further argues that EGCC's Motion to Dismiss is a near-identical copy of its prior Motion to Dismiss, which this Court has already rejected. (ECF No. 63).

As noted in its September 25, 2023 Opinion and Order, this Court again reminds EGCC that it cannot escape the terms of the preliminary injunction while the litigation that will determine whether it acted in violation of the Agreement in the first place is ongoing. "[T]he heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 531 (6th Cir. 2001). In its Motion, EGCC fails entirely to meet – or even to acknowledge – this burden. As the Supreme Court recently stated, "[i]f there is money at stake, the case is not moot." *United States v. Washington*, 596 U.S. 832, 837 (2022).

Placing aside for a moment the shortcomings of EGCC's mootness argument, its arguments regarding this Court's Preliminary Injunction Order (ECF No. 14) are unavailing as well. It is well-established that final merits determinations are not made at the preliminary injunction stage. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. … In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In reviewing the caselaw before it, this Court finds it nigh-impossible to grant EGCC's request. To find Count II moot because of a preliminary injunction would fly in the face of precedent and public policy. Therefore, Defendant's Motion to Dismiss is **DENIED in part** as to Count II. (ECF No. 67).

**B.  Motion to Strike (ECF No. 67) Paragraphs 26-30 and 54 the SAC**

*1.  Standard of Review*

Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In general, courts shy away from wielding their power to strike, as "it is well established that the action of striking a pleading should be sparingly used by the courts" and should "be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (first citing *Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932); then citing *Batchelder v. Prestman*, 138 So. 473 (Fla. 1931); *Collishaw v. Am. Smelting & Refining Co.*, 190 P.2d 673 (Mont. 1948)). But ultimately, the decision whether to grant a motion to strike falls within the discretion of the district court. *See Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (collecting cases). After all, motions to strike can "serve a useful purpose by . . . saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989)).

*2.  Law & Analysis*

At issue are the following paragraphs from the SAC:

26. SRC's coordination and communication with EGCC in order to carry out the Collaboration Agreement occurred via email, videoconferencing, telephonic, and in-person communications. A limited portion of these discussions occurred through the Collaboration Agreement's Operating Committee.

27. Under Section 2.6 of the Collaboration Agreement, an Operating Committee was formed, which was comprised of one represented from each party and up to a total of three designees per party who may each individually serve as a representative of his or her respective party during meetings of the Operating Committee.

28. The Operating Committee meetings were, by EGCC's own admission, informal conversational meetings where no votes or decisions were made.

29. In fact, EGCC, of its own initiative, often cancelled these meetings, including every meeting from March 27, 2022 onward as well as several meetings prior to those dates.

30. At all times relevant to this Complaint, SRC's Luis Rosa was a member of the Operating Committee.

54. At all relevant times, however, SRC employee, Luis Rosa, continued to act as SRC's representative on the Operating Committee despite the fact that EGCC had cancelled all Operating Committee meetings around the time of Mr. Braithwaite's transition to SRC.

EGCC argues – this time in one paragraph – that Paragraphs 26-30 and 54 of the SAC should be stricken. Rather than paraphrase the argument, it is simpler to reproduce it below:

Paragraphs 26-30 and 54 of the SAC are immaterial to the limited issue for which the Court granted SRC leave to amend its FAC – to update its claims for unpaid operating expenses and profit-sharing invoices by adding Count VI. These six paragraphs – dealing solely with the function and operation of the Collaboration's Operating Committee – do not update SRC's claims unpaid operating expenses and profit-sharing invoices or otherwise relate to Count VI of the SAC. *See* SAC at ¶ 183-189. As such, Paragraphs 26-30 and 54 of the SAC are immaterial and contrary to the Court's prior order and should be stricken.

(ECF No. 67 at 3). SRC responds that this Court granted SRC leave to file the SAC in its current form and that by omitting an unjust enrichment claim, SRC followed this Court's Order (ECF No. 63). (ECF No. 72 at 3).

In its September 25, 2023 Order, this Court granted leave to SRC to "supplement the FAC *as to the limited issue of the operating expenses and profit-sharing payments* accrued since September 2022 as alleged in Count VI" (emphasis added). (ECF No. 63 at 14). This Court granted such leave to SRC to allow it to add limited factual information that relates to Count VI, which regards unpaid operating expenses. EGCC argues that because the paragraphs in question deal solely with the function and operation of the Collaboration Agreement's Operating Committee,

they are immaterial and fall outside of this Court's Order. The Operating Committee, however, is directly related to Count VI and the issue of operating expenses.

Recall that Count VI alleges that EGCC breached a contract provision that required it to reimburse SRC "for all open invoices that are part of the Initial Budget or Annual Budget and for which the Collaboration has been invoiced." (ECF No. 72 at 4). Those "open invoices" are to be "paid out of the *Collaboration Account ... upon approval of the Operating Committee*" (emphasis added). (*Id.*). It logically flows that the inextricable link between the Collaboration Agreement's Operating Committee and the issue of operating expenses validates the discussion of the Operating Committee within the paragraphs in question. This places those paragraphs squarely within the scope of this Court's Order requiring information on operating expenses and profit-sharing payments. Accordingly, the paragraphs are not immaterial. Indeed, they are exactly what was ordered by this Court. Defendant's Motion to Strike is therefore **DENIED in part** as to Paragraphs 26-30 and 54 the SAC. (ECF No. 67).

### C. Motion to Alter or Amend Order (ECF No. 67)

#### 1. Standard of Review

"The purpose of Rule 59(e) is 'to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). Under Rule 59(e), a motion to alter or amend judgment may be filed within 28 days of the entry of judgment where there exists "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir. 2005)). A showing of manifest injustice "requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not

in line with applicable policy." *Harris v. Perry,* No. 2:12-CV-2668, 2016 WL 5396701, at *3 (W.D. Tenn. Sept. 27, 2016).

"[M]otions to alter or amend, or for reconsideration, are not intended as a mechanism for a plaintiff to relitigate issues previously considered and rejected, or to submit evidence which in the exercise of reasonable diligence could have been submitted earlier." *Kittle v. State*, No. 2:05-CV-1165, 2007 WL 543447, at *1 (S.D. Ohio Feb. 15, 2007); *Howard*, 533 F.3d at 475. Due to the importance of finality in the justice system, a motion to reconsider a final order should be granted only in extraordinary circumstances, such as a complete failure to address an issue or claim. *Solly v. Mausser,* No. 2:15-CV-956, 2016 WL 74986, at *1 (S.D. Ohio Jan. 7, 2016). Further, it is not the function of a motion to reconsider to renew arguments that the Court has already considered and rejected. *See Lloyd v. City of Streetsboro*, No. 5:18-cv-73, 2018 WL 2985098, at *1 (N.D. Ohio June 14, 2018).

### 2. *Law & Analysis*

EGCC seeks to alter the portion of this Court's September 25, 2023 Order (ECF No. 63) dismissing EGCC's Counterclaim II as it relates to SRC's alleged breach of § 8 of the Collaboration Agreement. (ECF No. 67 at 3). Section 8 of the Agreement states:

> During the Term, neither SRC nor EGCC shall take any action for the purpose of entering into any joint venture, collaboration or similar arrangement that is competitive with the Educational Programs provided by the Collaboration to union members; provided however, that **once EGCC passes through an enrollment threshold of twenty-three thousand (23,000) or more Initiative Students, SRC may enter into arrangements similar to, or the same as, the Collaboration with other existing colleges if SRC, in its sole discretion, determines that such arrangements are necessary to (a) comply with state regulatory requirements or (b) ensure regional diversity.** For the avoidance of doubt, if the number of EGCC-enrolled Initiative Students should be reduced below twenty-three thousand (23,000) after such additional arrangements have been entered into by SRC, those additional arrangements shall survive such reduction and shall not terminate merely as a consequence of such reduction.

(ECF No. 34-2 at 6-7) (emphasis added). Counterclaim II originally alleged that SRC breached § 8's non-compete provision by discussing competing collaborations with Acadeum and Brazosport Colleges. EGCC now argues that its Amended Counterclaim, discussed *infra*, clarifies that SRC breached § 8 when it established competitive arrangements with other colleges that were not necessary to (a) comply with state regulatory requirements, and (b) to ensure regional diversity. (ECF No. 67 at 5).

SRC argues that it did not violate § 8 when it engaged in discussions with Acadeum and Brazosport College because EGCC had surpassed the enrollment threshold of 23,000 Initiative Students in fall 2018, allowing for these discussions. (ECF No. 34 at 4-5). This Court found, based on President Geoghegan's testimony, that EGCC's enrollment grew from approximately 5,500 union members before the Agreement to upwards of 40,000 in fall semester 2021. (ECF No. 14 at 2). EGCC alleges, however, that SRC engaged in discussions with Acadeum and Brazosport College between April 1 and September 2022. Yet, it also stated that enrollment reached 40,000 a year prior. Even though EGCC argues that enrollment dipped below the 23,000 threshold in January 2023, that is inapplicable here as it occurred after the timeline at issue. Therefore, EGCC has provided no facts to support the assertion that SRC breached the plain reading of § 8 between April and September 2022.

EGCC claims that it can provide evidence that enrollment fell below 23,000 between April and September 2022, but that evidence could have and should have been submitted earlier. "[M]otions to alter or amend, or for reconsideration, are not intended … to submit evidence which in the exercise of reasonable diligence could have been submitted earlier." *Kittle*, 2007 WL 543447, at *1. The same is true regarding the allegation that SRC's arrangements were not necessary to (a) comply with state regulatory requirements, and (b) to ensure regional diversity.

12

EGCC fails to explain why the arguments and evidence it alleges here were not submitted earlier; the appropriate time to do so would have been in response to SRC's Motion to Dismiss. (ECF No. 34). *Moore v. Coffee Cnty.*, 402 F. App'x 107, 109 (6th Cir. 2010) (noting that a Rule 59(e) motion is not the proper vehicle to raise arguments that should have been made before judgment). SRC expressly raised the argument that it was free to enter into these partnerships in its Motion to Dismiss, and EGCC did not respond when it had the opportunity. (ECF No. 34-2). There was nothing that prevented EGCC from raising then the arguments that it raises now.

Even if this Court were to reconsider the arguments presented, the plain and unambiguous terms of § 8 have not changed either. Section 8 gives SRC the right to decide "in its sole discretion" whether a separate arrangement between it and another school complies with state regulatory requirements or ensures regional diversity. (ECF No. 34-2 at 6-7). Immediately following this clause, § 8 further states:

> For the avoidance of doubt, if the number of EGCC-enrolled Initiative Students should be reduced below twenty-three thousand (23,000) after such additional arrangements have been entered into by SRC, those additional arrangements shall survive such reduction and shall not terminate merely as a consequence of such reduction.

(ECF No. 34-2 at 6-7). Here, EGCC's argument flies directly in the face of the plain contract terms. EGCC alleges that SRC engaged in discussions with Acadeum and Brazosport College between April 1 and September 2022. And yet, EGCC argues that enrollment dipped below the 23,000 threshold in January 2023, *after* SRC engaged in discussions with Acadeum and Brazosport. Even if enrollment did indeed drop, § 8 stipulates that SRC's "additional arrangements shall survive such reduction and shall not terminate merely as a consequence of such reduction." (ECF No. 34-2 at 6-7). Therefore, any arrangement SRC had with Acadeum and Brazosport survives any alleged enrollment reduction. "Where the terms of an existing contract are clear and unambiguous, the

court 'cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract.'" *DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 WL 755283, at *6 (S.D. Ohio Mar. 19, 2008). Because EGCC failed to raise these arguments when it was required to do so and because the terms of § 8 plainly give SRC the authority to enter into the arrangements in question, Defendant's Motion to Alter or Amend Order is **DENIED in part**. (ECF No. 67).

### D. Amended Counterclaim (ECF Nos. 67 and 70)

*1. Standard of Review*

SRC brings its Motion to Strike and Dismiss pursuant to Rule 12(f) and Rule (12)(b)(6). (ECF No. 70). Pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In general, courts shy away from wielding their power to strike, as "it is well established that the action of striking a pleading should be sparingly used by the courts" and should "be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (first citing *Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932); then citing *Batchelder v. Prestman*, 138 So. 473 (Fla. 1931); *Collishaw v. Am. Smelting & Refining Co.*, 190 P.2d 673 (Mont. 1948)). But ultimately, the decision whether to grant a motion to strike falls within the discretion of the district court. *See Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (collecting cases). After all, motions to strike can "serve a useful purpose by . . . saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989)).

14

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### 2. Law & Analysis

#### a. Motion to Strike, in Part, EGCC's Amended Counterclaim

Pursuant to the law-of-the-case doctrine, and as parties are fully aware, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

Although a court may "depart from a prior holding," it may do so only "if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).

At the outset, this Court notes for the record that it granted EGCC leave to amend its Counterclaim "on the limited issue of breach of contract under § 3.1 based on alleged unpaid operating expenses and profit-sharing invoices." (ECF No. 63 at 29-30). By extending the scope of its Counterclaim and attempting to make arguments based on other portions of the Agreement, EGCC is violating the Order of this Court. As in *Eclipse Res.-Ohio, LLC v. Madzia*, No. 15-CV-177, this Court has little patience for such arguments. In *Eclipse Res.*, this Court adjudicated a similar issue in which the defendant filed an amended counterclaim including arguments beyond the limited scope within which this Court granted leave. Here, as there, such arguments will not be entertained. EGCC has posited no argument as to why any of the Court's prior findings of law are clearly erroneous or would result in manifest injustice. EGCC is going for the proverbial second bite of the apple, wasting this Court's judicial resources and straining this Court's credulity while so doing.

To be abundantly clear: EGCC exceeded the scope of leave granted by this Court and in so doing has foreclosed any opportunity to raise its new theories. *See Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 908, 911 (N.D. Ohio 2009) (striking new theories in a pleading that exceeded the scope of leave granted by the court); *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 360 (S.D. Ohio 2012) (striking claims that exceeded the scope of leave granted by the court under Rule 15). SRC's Motion to Strike Paragraphs ¶¶ 22, 38-49, 52, 55, 57-58, 62, and 64-66 of EGCC's Amended Counterclaim is thereby **GRANTED**. (ECF No. 77). Paragraphs ¶¶ 22,

38-49, 52, 55, 57-58, 62, and 64-66 of EGCC's Amended Counterclaim are **STRICKEN**. (ECF No. 67).

### b. *Motion to Dismiss Count II of EGCC's Amended Counterclaim*

SRC argues that EGCC's Counterclaim fails to put it on notice of the alleged actions that gave rise to the Counterclaim, and when those actions occurred, in three specific contexts: first, SRC alleges that Count II fails to explain how SRC purportedly breached §§ 2.3-2.4 of the Collaboration Agreement; second, SRC alleges that EGCC failed to identify when SRC's operating expense reimbursement requests were without approval or which amounts were purportedly improper under § 3.1 of the Collaboration Agreement; and third, SRC argues that EGCC's new theories of liability under § 8 of the Collaboration Agreement fail as a matter of law. (ECF No. 70 at 7). Having already disposed of the arguments regarding § 8 (see *supra* § II.C.2.), this Court will not rehash them here.

### i. *Sections 2.3 and 2.4 of the Collaboration Agreement*

SRC correctly identifies that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). EGCC argues, however, that a counterclaim at the motion to dismiss stage offers more than labels and conclusions if it "states a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc*., 964 F.3d 440, 444 (6th Cir. 2020) "To survive a motion to dismiss, in other words, [counterclaimants] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id*. In making that determination, this Court must "construe the complaint [or counterclaim] in the light most favorable to the plaintiff [or counterclaimant], accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff [or

counterclaimant]." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Rule 8(a)(2) dictates that a counterclaimant must make a "short and plain statement of the claim showing that [it] is entitled to relief." "This 'short and plain statement' requirement, in part, serves a notice function, alerting the defendant not only to the nature of the claim against it, but also to the "grounds upon which [the claim] rests." *Total Quality Logistics, LLC v. EDA Logistics*, No. 1:21-CV-164, 2021 WL 1964699, *3 (S.D. Ohio May 17, 2021). To provide notice of the grounds for relief, the counterclaim must include factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Here, SRC alleges that Count II fails to explain how SRC purportedly breached §§ 2.3-2.4 of the Collaboration Agreement. EGCC, however, need not provide "detailed" factual allegations. *Twombly*, 550 U.S. at 555. Rather, the facts alleged need only "raise a reasonable expectation that discovery will reveal evidence" that supports EGCC's claims. *Id*. at 556. SRC argues that §§ 2.3-2.4 do not demonstrate an actual breach of the Collaboration Agreement. (ECF No. 77 at 5). SRC bases this argument in a factual dispute, asserting that any such breach occurred either prior to September 12, 2022 (the date of EGCC's original Counterclaim) or after. (*Id.*). If before, SRC argues that EGCC's theories fail as a matter of law under the voluntary payment doctrine. If after, SRC argues that EGCC suffered no actual damages since EGCC did not pay any operating expense invoice after September 6, 2022. (ECF No. 77 at 6).

The voluntary payment doctrine under Ohio law provides that "'[i]n the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 894 (S.D. Ohio 2003). The Seventh Circuit, while not binding on this Court, stated this doctrine

simply as, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001). Here, SRC argues that EGCC voluntarily approved of and actually made reimbursements to SRC for operating expenses which EGCC now claims that it overpaid. EGCC pleads, however, that it falls under the "mistake of fact" exception listed in *Scott.* 284 F. Supp. 2d at 894. EGCC points to the allegations in its Counterclaim, arguing that they demonstrate a lack of full knowledge:

> 34. EGCC has paid some reimbursement requests under protest and without waiving its right to seek damages for overpayments of SRC operating expenses.

> 35. On August 2, 2022, EGCC requested an audit of SRC's records under § 7.4 of the Collaboration Agreement to determine the legitimacy of these reimbursement requests. SRC has denied EGCC this audit.

(ECF No. 74 at 6). SRC contends that these allegations do not allege any facts that were not known at the time EGCC reimbursed SRC's operating expenses. (ECF No. 77 at 8). It naturally follows, however, that a party cannot possess knowledge of information it does not have access to. The voluntary payment doctrine is narrowly construed and has many exceptions. *Hazelwood v. Bayview Loan Servicing, LLC*, No. 1:20-CV-726, 2021 WL 664059, at *5 (S.D. Ohio Feb. 19, 2021), *report and recommendation adopted*, No. 1:20CV726, 2021 WL 1019936 (S.D. Ohio Mar. 17, 2021). By requesting an audit, EGCC has sought information – facts – that it does not have knowledge of. Accordingly, EGCC may very well have a valid mistake of fact defense. As factual inquiries are reserved for discovery, this Court finds that EGCC has "raise[d] a reasonable expectation that discovery will reveal evidence" at this stage. *Twombly*, 560 U.S. at 556.

All of this only matters if EGCC did indeed reimburse SRC for operating expenses before September 12, 2022. If after September 12, 2022, SRC argues that EGCC suffered no actual damages. SRC's argument that §§ 2.3-2.4 fails hinges on a factual question: whether the breach occurred prior to or after September 12, 2022. "[D]iscovery, not a motion to dismiss, is the proper

avenue to address any missing specifics about the existence and amount of any such damages." *Total Quality Logistics, LLC*, 2021 WL 1964699 at *5. As a result, SRC's argument is unavailing at this stage.

### ii. *Section 3.1 of the Collaboration Agreement*

Looking next to § 3.1, SRC argues that EGCC fails to identify when SRC's operating expense reimbursement requests were without approval or which amounts were purportedly improper under § 3.1 of the Collaboration Agreement. (ECF No. 70 at 7). This argument similarly fails. The allegations in § 3.1 are not insufficient because they do not list exactly when or how much EGCC was damaged. There is no requirement under federal law to plead any particular or specific amount of damages. *Total Quality Logistics, LLC*, 2021 WL 1964699 at *5 ("There is no requirement that contract damages be pled with detailed specificity. Plaintiff has alleged [that it] ... was damaged as a result [of the breach] and has suffered 'actual and consequential damages as may be proven at trial....' Such allegations are sufficient to state a claim for damages. The parties will have ample opportunity to access specific damage information through the discovery process."). Here, EGCC has pled that that SRC submitted operating expense reimbursement requests that were excessive, not normal and customary and/or for services that were not (or could not) be rendered during the relevant time period. (ECF No. 74 at 4). The mere fact that EGCC does not allege particular or specific operating expense amounts does not bar it from litigating this point. Such information is better assessed at the discovery stage. Accordingly, SRC's Motion to Dismiss, in Part, EGCC's Amended Counterclaim is **DENIED**. (ECF No. 70). EGCC's Amended Counterclaim is **GRANTED in part** as to the portions that were not stricken above. (ECF No. 67).

### III. CONCLUSION

For the reasons stated above, this Court rules as follows:

20

(1) EGCC's Motion to Dismiss (ECF No. 67) Count II of SRC's Second Amended Complaint ("SAC") (ECF No. 66) is **DENIED**.

(2) EGCC's Motion to Strike (ECF No. 67) Paragraphs 26-30 and 54 of SRC's SAC (ECF No. 66) is **DENIED**.

(3) EGCC's Motion to Alter or Amend Order (ECF No. 67) is **DENIED**.

(4) EGCC's Amended Counterclaim (ECF No. 67) is **DENIED in part and GRANTED in part**; denied as to Paragraphs ¶¶ 22, 38-49, 52, 55, 57-58, 62, 64-66 and granted as to the remaining portions.

(5) SRC's Motion to Strike and Dismiss, in Part, EGCC's Amended Counterclaim (ECF No. 70) is **GRANTED in part and DENIED in part**; granted as to the Motion to Strike Paragraphs ¶¶ 22, 38-49, 52, 55, 57-58, 62, 64-66 and denied as to the Motion to Dismiss Count II of the Amended Counterclaim.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 15, 2024**