IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STUDENT RESOURCE CENTER, LLC,** : | |
| : | |
| **Plaintiff,** : | Case No. 2:22-cv-2653 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **EASTERN GATEWAY COMMUNITY** : | Magistrate Judge Chelsey M. Vascura |
| **COLLEGE,** : | |
| : | |
| **Defendant.** : | |

## ORDER

This matter is before this Court on Plaintiff's Motion for Writ of Prejudgment Attachment (ECF No. 106) and the Unopposed Motion to Intervene (ECF No. 114) filed by Defendant Board of County Commissioners of Jefferson County, Ohio (the "Board") pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's Motion for Writ of Prejudgment Attachment (ECF No. 106) is **GRANTED** and the Board's Unopposed Motion to Intervene (ECF No. 114) is **DENIED as moot**.

### I. BACKGROUND

The full factual content of this case is set out in greater detail in this Court's August 15, 2024 Opinion & Order (ECF No. 143). For the purposes of this Opinion & Order, this Court focuses on the facts that gave rise to the Motion for Prejudgment Attachment. (ECF No. 106).

This is a contract case brought by Student Resource Center ("SRC"), a private educational services company, against Eastern Gateway Community College ("EGCC"), a public two-year college based in Steubenville, Ohio. The parties entered a Collaboration Agreement (the "Agreement") in June 2017, the purpose of which is "to develop, market, and offer online courses to members of unions and professional associations," provide academic and career counseling to

students, assist with enrollment and course registration, and recruit students—which they have implemented via the Free College Benefit Program ("the Program"). (ECF Nos. 2-3, Braithwaite aff., ¶ 8; 24 at 16). Through the Program, EGCC provides scholarships to more than 90,000 union-affiliated students, (ECF No. 24, ¶ 7), through a "last-dollar" or "last-mile" model of free college in which a state or government institution will pay the remaining tuition balance after a student's existing federal financial aid award has been exhausted. (*Id*., ¶ 8).

On July 11, 2022, upon SRC's motion, this Court issued a preliminary injunction enjoining EGCC from: (1) terminating the Agreement pursuant to EGCC's Notice of Breach; and (2) breaching the Agreement's non-compete provision by starting and operating a competing business directly with the unions. (ECF No. 14 at 15–16). Shortly thereafter, on July 18, 2022, the Department of Education ("DOE") issued a Cease-and-Desist letter to EGCC stating that the Free College Benefit program violated Title IV's prohibition against assessing higher charges to Title IV scholarship recipients than those charges assessed to non-Title IV recipients. (ECF No. 28, ¶ 85). On August 23, 2022, this Court expanded the preliminary injunction by requiring EGCC to pay SRC approximately $2.36 million of allegedly withheld profit-sharing payments for the semesters prior to December 31, 2021. (*Id*., ¶ 71).

On June 20, 2023, SRC filed a Motion for Leave to File a Second Amended Complaint ("SAC"). (ECF No. 52). The Motion stated that SRC intended to: (1) allege that the Agreement had not terminated in October 2022 upon its filing of the FAC but remains in effect; and (2) amend the FAC with an additional breach of contract claim and unjust enrichment claim to cover alleged unpaid expenses from September 2022 to the present. (ECF No. 58 at 2). On September 25, 2023, this Court addressed multiple outstanding motions by: (1) denying in part EGCC's Motion to Strike the FAC and Dismiss in Part SRC's FAC (ECF No. 33); (2) granting in part and denying in

2

part SRC's Motion to Dismiss EGCC's Counterclaims (ECF No. 34), granting in part as it relates to Counterclaim III for unjust enrichment and Counterclaims I and II as it relates to breach of contract for § 8 of the Agreement and denying in part as it relates to Counterclaims I and II for breach of contract pursuant to § 2.6 of the Agreement; (3) denying EGCC's Motion to Vacate the Preliminary Injunction (ECF No. 39); (4) denying SRC's Motion for Leave to File Sur-Reply (ECF No. 45); and denying (5) SRC's Motion for a Status Conference (ECF No. 48).

On May 15, 2024, EGCC's Board of Trustees voted to dissolve the school on October 31, 2024, and to sell the school's Pugliese Center, located at 110 John Scott Highway, in Steubenville, Ohio and all of the center's assets, to Steubenville City Schools. (ECF No. 106 at 2). This decision gave rise to SRC's present Motion, which now moves this Court to issue an order of prejudgment attachment as to the Pugliese Center property and its assets, and the Steubenville campus and its assets, under Fed. R. Civ. P. 64(a) and Ohio Rev. Code § 2715.01(A)(7) and (9). (ECF No. 106). EGCC responded properly to SRC's Motion and requested a hearing on the matter, which this Court held on June 20, 2024 pursuant to Ohio Rev. Code § 2715.043(A). (ECF No. 112 at 1).

SRC seeks to attach the property before it can be sold or otherwise reverted to Jefferson County. In 1967, the Board of County Commissioners of Jefferson County, Ohio granted the property in question to EGCC's predecessor, the Jefferson County Technical Institute. (ECF No. 106 at 6). The deed conveying the property contains a reverter clause stating, "[T]his conveyance is made to the board of Trustees of the Jefferson County Technical Institute for educational purposes only … and if said premises are not used for educational purposes or if said premises cease to be used for educational purposes, title shall revert to the County of Jefferson, Ohio." (*Id.*). This clause vested a reversionary interest in the Board of County Commissioners, who were granted permission to intervene at the June 20, 2024 hearing. Despite the discussion at the hearing

3

of what effect a prejudgment attachment might have on the Board's reversionary interest, the reverter clause has no effect on the matter before this Court. Indeed, its only purpose in this context might be to show EGCC's ability to dispose of its assets – if the campus property is not used for educational purposes, it will leave EGCC's possession and revert back to Jefferson County. The Jefferson County Auditor values the Pugliese Center land and improvements at $2,015,400. (ECF No. 106 at 2). EGCC claims that it intends to use the proceeds from the sale to pay operating expenses and outstanding debts. (*Id.*).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 64(a) provides: "At the commencement of ... an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of a potential judgment." Pursuant to Rule 64, in attachment proceedings, federal courts in Ohio apply Chapter 2715 of the Ohio Revised Code. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc.*, 787 F. Supp. 766, 768 (S.D. Ohio 1992). "Ohio permits attachment against a defendant's property 'in a civil action for the recovery of money, at or after its commencement,' upon any of the grounds specified in O.R.C. § 2715.01." *Forefront Machining Techs., Inc. v. SARIX SA*, No. 3:19-cv-383, 2020 WL 804858, at *3 (S.D. Ohio 2020).

Under Ohio law, "[a] plaintiff in an action for the recovery of money, upon or at any time after the commencement of the action, may apply to the court by written motion for the attachment of property, other than personal earnings, of the defendant." Ohio Rev. Code § 2715.03. In order to attach a defendant's property, a plaintiff must prove the existence of probable cause – in other words, that it is "likely that [the plaintiff] will obtain judgment against the defendant ... that entitles

4

the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion." Ohio Rev. Code § 2715.011(A).

A motion for prejudgment attachment must include an affidavit from the plaintiff or its agent or attorney setting forth the "nature and amount of the claim; the facts that support at least one ground for an attachment contained in § 2715.01; a description of the property sought and its approximate value; the location of the property; and to the best of plaintiff's knowledge, the use to which the defendant has put the property." *Enable Healthcare, Inc. v. Cleveland Quality Healthnet, LLC*, No. 1:16-cv-2395, 2016 WL 6821980, at *2 (N.D. Ohio 2016); Ohio Rev. Code § 2715.03. Prejudgment attachment under Ohio law also requires a plaintiff to establish probable cause that it is likely he or she will obtain a judgment against the defendant. *See* Ohio Rev. Code § 2715.011(A); *Miller v. Food Concepts International, LP*, No. 2:13-cv-124, 2015 WL 12672728, at *2 (S.D. Ohio 2015). Probable cause is evidenced if "it is likely that [the] plaintiff ...will obtain judgment against the defendant." Ohio Rev. Code § 2715.011(A).

Regarding bond, Ohio Rev. Code § 2715.044 establishes that a plaintiff who filed a motion for attachment and received an order of attachment issued by a court, may be required to post bond to the defendant against whom the motion was filed. The statute states:

> An order of attachment issued by a court shall not be effective until the plaintiff that filed the motion for attachment files with the court a bond to the defendant against whom the motion was filed, executed by the plaintiff's surety, in an amount twice the approximate value of the property to be attached under the order, to the effect that, should judgment be issued against the plaintiff, the plaintiff will return the property taken or pay the value so assessed, at the election of the defendant, and also pay the damages suffered by the defendant as a result of the taking and detention of, and any injury to, the property and the costs of the action. If the plaintiff does not know the approximate value of the property sought to be attached under the order, or if the identity of the property to be attached is not known, the bond shall be in an amount twice that of the plaintiff's claim, as indicated in the plaintiff's affidavit filed pursuant to section 2715.03 of the Revised Code.

5

> In lieu of the bond, the plaintiff may deposit with the clerk of the court cash in an amount equal to twice the approximate value of the property or, if that value is not known or the identity of the property to be attached is not known, equal to twice the amount of the claim of the plaintiff.

Ohio Rev. Code § 2715.044. The statute also provides, however, that "[i]f the plaintiff is indigent, the court may, on motion of the plaintiff or on its own motion, waive the bond required by this section or may set the bond in a lower amount, as fairness requires." (*Id.*).

### III. LAW & ANALYSIS

As with the factual background, this Court notes at the outset of this Opinion & Order that it will only discuss relevant law regarding the issue of prejudgment attachment. A discussion of the law underpinning damages and the broader breach of contract claims may again be found in this Court's August 15, 2024 Opinion & Order (ECF No. 143).

SRC seeks prejudgment attachment to preserve its ability to recover from the rapidly vanishing EGCC. *See Cent. Nat. Bank v. Broadview Sav. & Loan Co.*, 411 N.E. 2d 840, 843 (8th Dist. 1979) ("The basic purpose of allowing a prejudgment attachment is to protect the rights of creditors."). (ECF No. 106 at 9). EGCC opposes the Motion on the basis that SRC's supporting declaration is deficient, that SRC does not have a statutory basis for attachment under Ohio Rev. Code §§ 2715.01(A)(7) or 2715.01(A)(9) and that even if it did, it cannot demonstrate probable cause for the extraordinary relief of prejudgment attachment under Ohio Rev. Code § 2715.043(B). Accordingly, this Court will examine each argument in turn.

#### A. SRC's Supporting Declaration

EGCC first argues that SRC's supporting declaration is deficient and therefore fails to support a finding of prejudgment attachment. (ECF No. 112 at 3-4). EGCC argues that strict compliance with Ohio Rev. Code § 2715.01, *et seq.*, is required for a prejudgment attachment order to be valid. (*Id.*). It is true that under the statute, SRC must support its motion for prejudgment

6

attachment with an affidavit describing the nature and amount of its claim, the facts supporting at least one of the statutory grounds for attachment, a description of the property sought and its approximate value, if known, the location of the property, the use to which the defendant has put the property, if known, a representation that the property is not exempt from attachment or execution, and the name of any third person possessing the property. Ohio Rev. Code § 2715.03(A)-(F). EGCC argues that the declaration submitted by SRC fails to represent that the Pugliese Center and Steubenville campus are not exempt from attachment or execution in compliance with Ohio Rev. Code § 2715.03(E). EGCC also takes issue with the "information and belief" language used in SRC's affidavit, arguing that affidavits based on 'information and belief,' as opposed to facts the affiant knows to be true, are not proper. *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007).

Regarding exemption, SRC argues that § 2715.03(E) requires the affidavit in support of a prejudgment attachment motion to state, "[t]o the best of the plaintiff's knowledge, after reasonable investigation, the use to which the defendant has put the property and that the property is not exempt from attachment or execution." (ECF No. 116 at 1-2). While EGCC argues that SRC's affidavit fails to represent that the Pugliese Center and Steubenville campus are not exempt, EGCC also *makes no argument that either property is actually exempt*. Indeed, Ohio Rev. Code §§ 2329.63 – 2329.66 set forth exemptions for beneficiary funds and certain goods (such as regalia and insignia); property kept by municipal corporations for firefighting; and certain property interests applicable to individuals. Yet, none of those exemptions applies to the property at issue here: real property owned by a community college. SRC's affidavit states that the property sought to be attached is real property owned by a community college used for educational purposes. (ECF No. 116 at 1-2). This statement is within the bounds of § 2715.03(E), yet it identifies a property

7

not exempted by §§ 2329.63 – 2329.66. Accordingly, the affidavit represents that the property is not exempt.

Regarding the "information and belief" basis, EGCC argues that the affidavit fails because it is not based on "personal knowledge." (ECF No. 112 at 5). "Personal knowledge is knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said … It is knowledge of factual truth which does not depend on outside information or hearsay" *Curren v. City of Greenfield*, 4th Dist. No. 11-CA-30, 2012-Ohio-4688, ¶ 9. EGCC argues that SRC's affidavit depends on outside news reporting and hearsay, not on any personal knowledge. SRC responds by arguing that Ohio law does not require the affidavit submitted under § 2715.03 to be based on personal knowledge. (ECF No. 116 at 2). SRC points to *State ex rel. Yost v. FirstEnergy Corp.*, an Ohio Court of Appeals case which held:

> The statute contains no language evincing a requirement that the affidavit be premised on "personal knowledge." Furthermore, the language of three of the sections overtly belies any requirement that the information set forth be based on personal knowledge. Specifically, R.C. 2715.03(C) requires that the affidavit contain "[a] description of the property sought and its approximate value, if known"; R.C. 2715.03(D) requires that the affidavit contain "[t]o the best of the plaintiff's knowledge, the location of the property"; and R.C. 2715.03(E) requires that the affidavit contain "[t]o the best of the plaintiff's knowledge, after reasonable investigation, the use to which the defendant has put the property and that the property is not exempt from attachment or execution." (Emphasis added.) There is no material difference between an affidavit premised on "information and belief" and an affidavit premised on "the best of plaintiff's knowledge," which is what is required by the statute. *Thus, simply put, the plain language of the statute makes clear there is no requirement that the affidavit submitted in support of a motion for prejudgment attachment be based on personal knowledge*.

(emphasis added). 10th Dist. Franklin No. 21-AP-443, 2022-Ohio-3400, ¶ 19, *rev'd on other grounds*, 2024-Ohio-101, ¶ 19. Here, SRC's affidavit need not be based on personal knowledge. Indeed, a modicum of inquiry would reveal to even a layperson that EGCC, a community college, uses its campus for education. EGCC's final argument asserts that the news reports named in the

8

affidavit are not based on the declarant's personal knowledge. Again, as held by *FirstEnergy*, there is no requirement that the affidavit be based on personal knowledge. Further still, this Court may take judicial notice of the contents of the news articles. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 578 & n.9 (6th Cir. 2001). Finally, "[b]ecause R.C. 2715.01 *et seq.* deals with prejudgment attachments, it would be inappropriate to require a plaintiff to prove the grounds under R.C. 2715.01 upon which he seeks attachment." *Swartz v. DiCarlo*, No. 1:12-CV-3112, 2014 WL 1493352, at *4 (N.D. Ohio 2014). Accordingly, SRC's affidavit is sufficient.

### B. Statutory Grounds for Attachment

This Court notes first that in order to succeed on a motion for a prejudgment attachment, the plaintiff "must show the existence of at least one out of eleven statutory bases for attachment" in § 2715.01(A).[1] *FirstEnergy*, 2024-Ohio-101 at ¶18. The statutory grounds for attachment at issue in this case are Ohio Rev. Code § 2715.01(A)(7) and (9). Section 2715.01(A)(7) provides for attachment when the defendant "is about to convert property, in whole or part, into money, for the purpose of placing it beyond the reach of creditors." Section 2715.01(A)(9) meanwhile provides

---

[1] (A) An attachment against the property, other than personal earnings, of a defendant may be had in a civil action for the recovery of money, at or after its commencement, upon any one of the following grounds:
(1) Excepting foreign corporations which by compliance with the law therefore are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation;
(2) That the defendant is not a resident of this state;
(3) That the defendant has absconded with the intent to defraud creditors;
(4) That the defendant has left the county of the defendant's residence to avoid the service of a summons;
(5) That the defendant so conceals self that a summons cannot be served upon the defendant;
(6) That the defendant is about to remove property, in whole or part, out of the jurisdiction of the court, with the intent to defraud creditors;
(7) That the defendant is about to convert property, in whole or part, into money, for the purpose of placing it beyond the reach of creditors;
(8) That the defendant has property or rights in action, which the defendant conceals;
(9) That the defendant has assigned, removed, disposed of, or is about to dispose of, property, in whole or part, with the intent to defraud creditors;
(10) That the defendant has fraudulently or criminally contracted the debt, or incurred the obligations for which suit is about to be or has been brought;
(11) That the claim is for work or labor.

9

for attachment when the defendant "has assigned, removed, disposed of, or is about to dispose of, property, in whole or part, with the intent to defraud creditors." Here, SRC seeks an order of attachment as to the Pugliese Center under § 2715.01(A)(7) and as to the Steubenville campus under § 2715.01(A)(9). (ECF No. 106 at 10).

First regarding § 2715.01(A)(7), EGCC argues that its potential sale of the Pugliese Center property to Steubenville City Schools is not "for purposes of placing it beyond the reach of creditors." (ECF No. 112 at 2). EGCC notes that it is currently $29 million in debt and intends to use the proceeds of the sale to pay its debts. (*Id.*). This, EGCC argues, shows that there is no purpose or intent to place the Pugliese Center property "beyond the reach of creditors." SRC argues that EGCC does intend to place the property beyond SRC's reach. (ECF No. 106 at 5). SRC writes:

> After viewing the video of the EGCC board of trustees May 15, 2024 meeting, SRC's counsel wrote to EGCC's counsel on May 16th, expressing concern that "EGCC is attempting to liquidate and dissipate its assets in an attempt to become judgment proof from SRC's pending claims prior to the Court's ruling," and asking EGCC to "provide assurance to SRC that any proceeds from the sale of assets, including the real property located at 110 John Scott Highway and the Pugliese Training Center, shall be placed in escrow to prevent EGCC from irretrievably transferring assets away from EGCC's creditors, including SRC." (Folland Dec. ¶ 15-17 & Attachment B, Email from J. Bartolozzi to A. Fuller et al., May 16, 2024.) The next day, counsel for EGCC wrote back: "Any proceeds EGCC realizes from the sale will be used to pay ongoing operating expenses and/or outstanding debts. If SRC would like to secure a place in line with EGCC's creditors, it should make a reasonable settlement demand . . . ."

(ECF No. 106 at 5). SRC's argument here is that EGCC expressly admitted its intent to convert the Pugliese Center and its assets, and EGCC's counsel's email to SRC's counsel indicates that EGCC plans to spend this money on operating expenses and servicing old debt. (ECF No. 106 at 11). EGCC argues that because it intends to sell the Pugliese Center property and use the proceeds to pay creditors, it is not placing it beyond the reach of *creditors*. Strictly speaking, EGCC is correct on this point. Chapter 2715, however, aims to protect the *plaintiff* in an action. *Enable*

10

*Healthcare*, 2016 WL 6821980 *2 (noting that the plaintiff failed to "aver that defendant would convert the Shared Savings Payment into money *for the purpose of* placing it beyond the reach of plaintiff") (emphasis in original). Selling the Pugliese Center and telling SRC to "secure a place in line" behind other creditors would place the property beyond the reach of SRC as a plaintiff in this case. Because SRC correctly asserts its rights under § 2715.01(A)(7), it has shown a statutory basis for attachment.

Even if SRC's arguments under § 2715.01(A)(7) failed, its arguments under § 2715.01(A)(9) prevail in short order; and it only needs to show the existence of one out of the eleven statutory bases. *FirstEnergy*, 2024-Ohio-101 at ¶18. Regarding § 2715.01(A)(9), EGCC argues that its sale of the Steubenville campus property does not demonstrate an intent to dispose of the property with the intent to defraud creditors, nor does the Jefferson County Commissioners' reported intent to take title to the Steubenville campus property under the reverter clause contained in the 1967 deed. (ECF No. 112 at 2). SRC argues that the Jefferson County Commissioners have vowed to "take every step to shield the [Steubenville campus] property from EGCC's creditors" and that this vow demonstrates an intent to defraud creditors by EGCC. (ECF No. 112 at 6). The Commissioners' intent, however, cannot be said to be intertwined with EGCC's intent. But the Ohio Court of Appeals has held that no overt act in furtherance of intent is required to prove a basis for attachment under § 2715.01(A)(9). "[I]f the intent to dispose of property is proven[,] that is all that is necessary to bring the plaintiff within the provisions" of § 2715.01(A)(9). *Calabret v. Vivacqua*, 145 N.E. 2d 420, 421 (7th Dist. 1956). Here, SRC has plainly proven EGCC's intent to dispose of the Steubenville campus property. Accordingly, it meets the statutory grounds for attachment under § 2715.01(A)(9). Having met both § 2715.01(A)(7) and (9), SRC has asserted adequate statutory grounds for attachment.

11

### C. Probable Cause that SRC will Obtain Judgment

Turning next to probable cause, prejudgment attachment under Ohio law requires a plaintiff to establish probable cause that it is likely he or she will obtain a judgment against the defendant. Ohio Rev. Code § 2715.011(A). Probable cause is evidenced if "it is likely that [the] plaintiff ...will obtain judgment against the defendant." *Id.* Here, SRC argues that is has established the requisite probable cause. EGCC argues that it is "far from clear" whether SRC will obtain judgment because the Parties "contest several complex legal and factual issues and have offered conflicting evidence in support of their arguments." (ECF No. 112 at 8). EGCC relies on *Zeeb Holdings, L.L.C. v. Johnson*, which found that it was "far from clear" that the plaintiffs would prevail on the underlying claims where the claims were "sharply contested" and "conflicting evidence" existed with respect to the claims. 552 F. Supp. 3d 709, 714 (N.D. Ohio 2021). The flaw in EGCC's argument, however, is twofold: first, none of EGCC's cited cases, all of which are from the Northern District of Ohio, relies on any Ohio authority supporting the application of this "sharply contested" and "conflicting evidence" standard; second, the *Zeeb* Court denied the motion for prejudgment attachment before reaching the question of probable cause because the plaintiff filed no praecipe and the property was located outside of Ohio, making it unattachable. *Zeeb*, 552 F. Supp. 3d at 713. *Zeeb* did not reject the motion merely because the claims were "sharply contested" and "conflicting evidence" existed. *Id.*

In response, SRC argues that its claims make it likely to obtain judgment in this matter. First, SRC alleges that EGCC has refused to make profit-sharing payments it owes to SRC under the Agreement. (ECF No. 106 at 13). Second, SRC alleges that EGCC owes SRC expectation damages for the above breaches of the Agreement and for EGCC's violation of Title IV and the Agreement's non-competition clause. (*Id.*). Both claims may serve to underpin a finding that a

12

plaintiff is likely to prevail in an action. *Stifel Fin. Corp. v. Iannarino*, No. 2:18-CV-1223, 2018 WL 6288020, at *3 (S.D. Ohio Dec. 3, 2018).

In *Stifel Fin. Corp.*, the Court found probable cause where the plaintiff alleged claims that would entitle it to a money judgment and where the alleged claims actually caused money to be due to the plaintiff. *Id.* The defendant in *Stifel Fin. Corp.* had his employment terminated, which caused the underlying note to be immediately due. *Id.* He then refused to pay the remaining principal and interest, which led the Court to find that it was likely plaintiff would obtain a judgment which "entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion." *Id.* Similar circumstances are present here: EGCC's refusal to make the appropriate profit-sharing payments to SRC have caused those payments to become due. It is therefore likely that SRC will obtain a judgment which "entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion."

SRC also argues that prior proceedings in this case show that it is likely to obtain judgment. SRC first points to this Court's July 11, 2022 preliminary injunction, finding that SRC was likely to succeed on its claim that EGCC violated the Agreement's noncompetition clause. (ECF No. 14). SRC then highlights this Court's August 23, 2022 Order expanding the preliminary injunction to include SRC's claim for withheld profit-sharing payments, finding that "SRC is likely to show the College breached its contract by withholding these profit-sharing payments many months past the due date." (ECF No. 23, PAGE ID # 690). In *Williamson v. Recovery Ltd. P'ship*, probable cause was found where plaintiffs had survived motions to dismiss and for summary judgment. No. 2:06-CV-292, 2012 WL 13118448, at *6 (S.D. Ohio 2012).

> Additionally, review of these proceedings shows that Plaintiffs' claims have survived motions to dismiss and for summary judgment … The distance that Plaintiffs have traveled through this proceeding with their claims still intact …

13

>  strongly supports a finding that Plaintiffs are likely to prevail on the merits and/or that it is probable that Plaintiffs will obtain a judgment against Defendants.

*Id.* Here, Plaintiff has survived a partial motion to dismiss and was twice granted preliminary injunction orders in its favor. At this stage in the proceedings, over two years since the first preliminary injunction, it would be difficult not to find probable cause that Plaintiff will obtain judgment. As in *Williamson*, the distance that Plaintiff has traveled through this proceeding with its claims intact strongly supports a finding of probable cause. While this Court agrees with EGCC that it is not *clear* that Plaintiff will prevail, clarity is not the standard. Prejudgment attachment under Ohio law requires probable cause that it is *likely* a plaintiff will prevail. Such a likelihood is present here.

### D. Nominal Bond

Turning briefly to the matter of bond, Ohio Rev. Code § 2715.044 stipulates that "[a]n order of attachment issued by a court shall not be effective until the plaintiff that filed the motion for attachment files with the court a bond to the defendant against whom the motion was filed, executed by the plaintiff's surety." The amount of the bond is to be set "in an amount twice the approximate value of the property to be attached under the order." *Id.* Based on the appraised values identified in SRC's declaration, the amount equal to "twice the approximate value of the property to be attached" would be $29,364,420.[2] (*Id.*). Attachment bond premiums range between 1% and 10% of the bond amount. Brooklyn Ventures, LLC, Plaintiff's Attachment Bonds (August 13, 2024), https://www.suretybonds.com/court/plaintiff-attachment-bond. Levying the 1% figure here would set the cost of the bond to $293,644.20. EGCC argues that SRC should pay the full bond amount at the 10% figure, $2.936 million. (ECF No. 133 at 8). SRC stipulates that it has

---

[2] 2 x ($12,666,810 + $2,015,400).

14

more than $1.39 million in cash on hand. (ECF No. 125 at 7). Ordinarily, SRC could and would pay the lower bond amount. The Sixth Circuit, however, has held that a $500 nominal bond is "eminently reasonable" when the property to be attached remains in the possession of the defendant. *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 628-29 (6th Cir. 2013) (concerning a long-lost shipment of gold coins worth $1.2 – $2.5 million, the district court left the crates in the possession of defendants and issued a nominal $500 bond). Here, as in *Williamson*, SRC is not taking possession of either the Pugliese Center property or the Steubenville campus property, EGCC is retaining possession of both properties. As such, a nominal bond will suffice. While an order of attachment is not "effective" until the plaintiff files a bond, § 2715.044 "does not require that this bond be executed at the time an order is sought." *Enable Healthcare*, 2016 WL 6821980 *2. This Order will therefore become effective upon SRC's filing of the $500 bond.

### E. Motion to Intervene

The Board of County Commissioners of Jefferson County, Ohio seeks leave to intervene in order to appear at the hearing scheduled on June 20, 2024 and protect its interest in the real property at issue in Plaintiff's Motion for Prejudgment Attachment (ECF No. 106). Neither Plaintiff nor co-Defendant opposed the motion. At the hearing, the Board was granted permission to appear and participated in post-hearing briefing. Because the hearing in which the Board seeks to intervene has already happened, the Motion is **DENIED as moot**.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Writ of Prejudgment Attachment (ECF No. 106) is **GRANTED** and the Board's Unopposed Motion to Intervene (ECF No. 114) is **DENIED as moot**. Defendant Eastern Gateway Community College shall not transfer, move, sell, or encumber the Pugliese Center, located at 110 John Scott Highway, in Steubenville, Ohio, or the

15

Steubenville campus property, located at 4000 Sunset Blvd., in Steubenville, Ohio, until further order of the Court. This Order shall not become effective until Plaintiff has submitted a $500.00 bond to the Clerk of Court.

      **IT IS SO ORDERED.**

                                                      **ALGENON L. MARBLEY**
                                                      **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 20, 2024**